UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re*:    CASE NO.: 07-11010-BKC-PGH
    Chapter 7 Proceeding
ERNEST W. WILLIS,

    Debtor.
_____/

**CREDITOR, RED REEF'S RESPONSE TO DEBTOR'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AND CROSS MOTION
FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF APPLICATION
OF 11 U.S.C. §522(o) AND (q) TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION**

    CREDITOR, RED REEF, INC. ("RED REEF"), by and through its undersigned counsel and pursuant to F.R.B.P. 756, and this Court's Order Setting Briefing Schedule on Defendant's Motion For Summary Judgment (C.P. #112) respectfully requests the entry of an Order denying Debtor's Motion For Partial Summary Judgment, and simultaneously moves for the entry of an Order of the Court sustaining that portion of RED REEF'S Objection to Debtor's claimed exemption relating to the Debtor's homestead under 11 U.S.C. §522(o) and (q) and in support therefore states as follows:

**I.    BACKGROUND**

    1.    The Debtor commenced this Voluntary Bankruptcy Proceeding under Chapter 7 by the filing of a Petition on February 16, 2007(C.P. #1).

    2.    On his Schedule "C" the Debtor claimed as exempt homestead real property located at 590 Silver Lane, Boca Raton, Florida.

    3.    Red Reef objected to the Debtor's claim of homestead based upon 11 U.S.C. §§522(o) and (q).  Thereafter the Debtor filed his motion for partial summary judgment on that portion of Red Reef's objection to the homestead based upon §522(q).

A. <u>The 2004 Judgment</u>

4. Red Reef's objection and amended objection to the Debtor's claimed exemptions (the "Objection") are predicated on findings of fact and conclusions of law made by the Circuit Court for the Fifteenth Judicial Circuit, (the "State Court") in and for Palm Beach County (the "2004 Judgment"), a certified copy of which has been filed with this Court [CP 115].  Within the 2004 Judgment the State Court found that the Debtor, along with his spouse, Sunday Willis, and another director of the corporate entity Ocean One North, Inc. ("Ocean One") incurred a debt to Red Reef and then breached their fiduciary duty to Red Reef and otherwise defrauded Red Reef.  The State Court also found that in defrauding Red Reef, the Debtor disposed of $490,345.19 in funds that were properly payable to Red Reef by paying down a mortgage on their homestead property.  This finding by the State Court is final, not the subject of any appeal, and cannot be ignored by the Debtor, as much as he would like to for purposes of this proceeding.

5. Red Reef was a creditor of Ocean One only before it was a creditor of the Debtor.  The Debtor makes much of that fact in its papers and during several arguments before this Court.  The inconvenient truth for the Debtor, however, is that it was the Debtor's own conduct that created the exception to the homestead exemption under §522(o) and (q) and elevated a mere breach of lease claim Red Reef had against a defunct entity into a debt predicated on fraud and .  The State Court found the Debtor's fraudulent conduct was also purposeful and willful, and designed to deprive Red Reef of its claim.

II. **Summary Judgment Standard**

6. Pursuant to Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, summary judgment shall be granted "if the pleadings, depositions,

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

2

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has reaffirmed the vitality of summary judgment as a method for the just, speedy and inexpensive disposition of cases. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

7.     Summary Judgment may be entered only where there are no genuine issues of material fact. See Twiss v. Kury, 25 F.3d 1551, (11th Cir. 1994). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Id. The movant has the burden of meeting Rule 56's standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The nature of the movant's initial burden "varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant bears the burden of proof at trial." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

8.     Once the moving party identifies those portions of the record that demonstrate the absence of a genuine issue of material fact, any party opposing summary judgment must set forth specific facts showing a genuine issue for trial, and may not rely on mere allegations or denials. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256-57. If the record as a whole could not lead a rational finder of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. Matsushita, 475 U.S. at 586-87. In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991).

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

3

9.  Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "go beyond the pleadings," and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file' designate specific facts showing that there is a genuine issue for trial." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324). A non-moving party "must come forward with facts, and not doubts as to the veracity of the moving party's allegations." Claudio v. United States, 907 F. Supp. 581, 584 (E.D.N.Y. 1995). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).

10. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. "Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996). See also Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) ("neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden … pleadings are not summary judgment evidence") Moreover, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Allen v. Tyson Foods, Inc., 121 F.3d 642 (11th Cir. 1997). Thus, in evaluating a motion for summary judgment, the Court must view the record evidence "through the prism of the evidentiary standard of proof that would pertain at trial on the merits." Eli Lily & Co. v . Barr Labs, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

4

**III. THE STATE COURT FINDINGS OF FRAUD BY THE DEBTOR IN BREACHING HIS FIDUCIARY DUTY TO RED REEF BY PAYING DOWN THE MORTGAGE ON HIS HOMESTEAD PRECLUDES THE DEBTOR FROM RELITIGATING THAT ISSUE IN THIS CONTESTED PROCEEDING.**

    A.    <u>Collateral Estoppel or Issue Preclusion</u>

11.    The doctrine of collateral estoppel or issue preclusion prevents a debtor from re-litigating issues that have already been determined in a prior litigation. <u>In re Bilzerian, 153 F.3d 1278 (11th Cir.1998)</u> (Collateral estoppel applied to bar Chapter 7 debtor from challenging Securities and Exchange Commission action to except civil disgorgement award from discharge under fraud discharge exception where debtor's criminal conviction for securities fraud established that he made false statement on which reasonable investor would have relied). <u>See also, generally,</u> In re Halpern, 810 F.2d 1061, 1064 (11th Cir. 1987) (finding that issue preclusion, based upon a state court consent judgment, was properly utilized by the bankruptcy court to reach conclusions about facts which the bankruptcy court then considered as evidence of nondischargeability of the Chapter 7 debtor's debt). The Supreme Court has held that collateral estoppel principles apply in bankruptcy proceedings. <u>See Grogan v. Garner</u>, 498 U.S. 279, 284, 111 S. Ct. 654, 112 L.Ed. 2d 755 (1991). When drafting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (" BAPCPA" ), Congress did not provide a particular standard of review to apply with respect to <u>11 U.S.C. § 522(*o*)</u>. However, as noted in 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 522.08[5][b] (15th ed. rev.), a preponderance of the evidence is the appropriate standard of review:

12.    The court in <u>In re Lacounte</u>, 342 B.R. 809 (Bankr.D.Mont. 2005) analogized the application of the preponderance standard to discharge proceedings to conclude that the same standard applies in objections under §522(o), thus making issue preclusion applicable. The Lacounte court reasoned that in *<u>Grogan v. Garner</u>* [<u>498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)</u>], the

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

5

Supreme Court held that preponderance of the evidence is the appropriate standard of proof for determining exceptions to discharge based on fraud. Because there is nothing in the language of §522(*o*) or its legislative history to suggest that Congress intended to require the more exacting clear-and-convincing standard, the preponderance of the evidence standard should apply in proceedings brought under §522(o). Application of this standard would permit the bankruptcy court to give collateral estoppel effect to elements of claims actually litigated in a prior proceeding that are identical to the elements of an objection under 522(*o*). This reasoning is supported by the holding of the Florida Supreme Court in Wieczoreck v. H&H Builders, Inc., 475 So.2d 227 (Fla. 1985) which states that a preponderance standard is required in proving fraud, whether in law or in equity. As both §522(o) and (q) speak in terms of fraud, the analysis of the Lacounte court on the burden issue, and therefore the applicability of collateral estoppel, is correct.

13. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute… which directs a federal court to refer to the preclusion law of the State in which the judgment was rendered." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985).

14. In this case, the 2004 Judgment was rendered in Florida, and therefore, Florida's collateral estoppel law applies.

15. Under Florida Law, satisfaction of the following elements are required for the application of collateral estoppel:

    a. the issue at stake must be identical to the one involved in the prior litigation;

    b. the issue must have been actually litigated in the prior litigation; and

    c. the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

6

In re Held, 734 F.2d 628, 629 (11th Cir.1984), citing Deweese v. Town of Palm Beach, 688 F.2d 731, 733 (11th Cir. 1982).

4. In this case, Plaintiff has satisfied all three of the elements established under Florida Law for the application of collateral estoppel in that:

    a. The facts upon which Red Reef relies in its Objection regarding application of §522(o) are those findings of fact determined by the State Court in the 2004 Judgment.

    b. The relevant issues were actually litigated in the State Court Case; and

    c. The Findings of Facts and Conclusions of Law set forth in the 2004 Judgment conclusively establish that the Debtor breached its fiduciary duty to Red Reef when he disposed of $490,345.19 by paying down the mortgage on the Debtor's homestead in an attempt to hinder, delay and defraud Red Reef.

    B.     Uncontroverted Facts

5. A number of findings of fact and conclusions of law relevant to whether the Debtor's claimed exemption to his homestead should be reduced by $490,345.19 based upon his fraudulent conduct were made by the State Court. Those findings and conclusions are set forth in the certified copy of the 2004 Judgment, filed in support of Red Reef's cross motion for summary judgment, a certified copy of which has been filed with this Court [CP 115. The State Court findings of fact alone establish sufficient bases to sustain Red Reef's objection to Debtor's claimed exemption to the homestead based upon §522(o). .

6. The following facts, as established by the State Court in the 2004 Judgment and by this Court in the Injunction are uncontroverted:

    *a.* Willis was a banker for approximately 25-30 years, ultimately serving as President and CEO of Nationwide Savings. *See, 2004 Judgment.*

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

7

b.  In 1988 Willis went into the real estate property management business with his wife, Sunday Willis ("Mrs. Willis"). In 1989 they formed Beacon Property Management, Inc ("Beacon"). *Id.*

c.  Willis was also a director of Ocean One North, Inc. ("Ocean One"), a Florida corporation, as well as Ocean One's Vice President, Secretary and Treasurer. *Id.*

d.  Ocean One owned certain real property in Palm Beach County (the "Ocean One Property"). *Id.*

e.  On or about February 16, 1996, Red Reef entered into a lease agreement with Ocean One to lease space in the Ocean One Property as a bar/restaurant. However, Red Reef was never able to occupy the Ocean One Property. *Id.*

f.  On June 3, 1996 Willis signed a ratification of Red Reef's lease with Ocean One (the "Ratification"). The Ratification states that "Ernest Willis being an officer and shareholder of Ocean One North, Inc. does hereby ratify, approve, and confirm the validity of that certain lease executed by... Landlord, and Red Reef, Inc., as Tenant, on February 16, 1996...and in signification of such approval, ratification and confirmation and of the undersigned's assent to the terms of said lease." *Id.*

g.  Ocean One continued to breach the lease with Red Reef, and on November 13, 1996, Red Reef filed a lawsuit for specific performance against Ocean One in the State Court (the "Red Reef Lease Litigation"). *Id.*

h.  Commencing in 1996, Ocean One was also in litigation with another tenant of the Ocean One Property, an entity known as PNR, Inc. ("PNR"). PNR leased space in the Ocean One Property and operated a bar/restaurant called 'Goodfellas.' The litigation commenced by PNR against Ocean One involved claims of breach of lease, wrongful eviction and loss of occupancy of premises (the "PNR Litigation"). *Id.*

i.  At the time the Red Reef Lease Litigation and the PNR Litigation was commenced against Ocean One, Ocean One's sole asset was the Ocean One Property. *Id.*

j.  On or about March 6, 1998 Ocean One entered into an Agreement of Purchase and Sale (the "Sale Agreement") with Jean Francois Roy (the "Buyer") for the sale of the Ocean One Property for the purchase price of $3,100,000.00. *Id.*

k.  While the Ocean One Property was owned by Ocean One, the Sale Agreement was signed by the Debtor and Sunday Willis both individually, and in their capacities as directors of Ocean One. *Id.*

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

8

l. As reflected in the Closing Settlement Statement (the "Closing Statement") of the sale of the Ocean One Property, Ocean One did not receive any sale proceeds even though it was the corporate owner and seller under the Sale Agreement for the property. Instead, all of the proceeds went to pay expenses of sale, closing costs or were distributed to the individual officers, directors and shareholders of Ocean One, including the Debtor. *Id.*

m. As reflected in the Closing Statement the Debtor and Mrs. Willis personally received a disbursement in the sum of $1,200,000.00 from the sale of the Ocean One Property. This disbursement was paid to the Debtor's personal lawyer, Harry Ross. Mr. Ross, in turn, gave the Debtor two checks which Willis, along with Mrs. Willis, deposited into their joint account at SunTrust Bank, N.A. *Id.*

n. At the time of the closing Ocean One was insolvent. *Id.*

o. At the time of the Closing, Ocean One's business affairs were being wound up. *Id.*

p. The officers, directors and shareholders of Ocean One, including the Debtor, had actual knowledge of Ocean One's insolvent condition. *Id.*

q. The officers, directors and shareholders of Ocean One, including the Debtor, had actual knowledge of pending litigation claims against Ocean One. *Id.*

r. At the time of the Closing, the Buyer required Ocean One to provide him with tenant estoppel letters. However, no tenant estoppel letters were obtained from Red Reef. In fact, at no time did any officer, director or shareholder of Ocean One ever notify Red Reef, or attempt to notify Red Reef, of the pending sale to Buyer. Rather, an Indemnification Agreement (the "Indemnification Agreement") was entered into on April 27, 1998, in favor of the Buyer by Ocean One and Matthew Giacomino, one of the directors and shareholders of Ocean One. *Id.*

s. While Ocean One indemnified the Buyer, little to no money was left by the Debtor, or the other officers and directors of Ocean One, in the company to pay these claims. *Id.*

t. The testimony of the Debtor regarding his evaluation of the claims of creditors against Ocean One, and the reasons why the Debtor took corporate assets for his own personal benefit to be not credible. *Id.*

u. Red Reef and PNR recovered judgments against Ocean One totaling over $2,500,000.00. *Id.*

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

9

    v. The Debtor, along with the other officer and director of Ocean One, diverted $2,400,000.00 of assets of Ocean One to their own personal use and benefit while leaving claims of creditors, including Red Reef, unpaid. *Id.*

    w. The Debtor, along with the other officer and director of Ocean One, diverted $2,400,000.00 of assets of Ocean One to their own personal use and benefit without establishing any reserves whatsoever in Ocean One for payment of known, existing claims of creditors, including Red Reef. *Id.*

    x. The Debtor used $490,345.19 of the sale proceeds from the Ocean One Property to extinguish a mortgage on his home at 590 Silver Lane, Boca Raton, Florida. *Id.*

    y. Ocean One was dissolved on September 24, 1999. *Id.*

    z. The terms of the Sale Agreement resulted from discussions between the principals of Ocean One, including the Debtor, in which they agreed to distribute all of the sale proceeds, net of expenses and closing costs, to themselves, personally. *Id.*

18. 11 U.S.C. §522(o) provides that a Debtor's interest in real property that is claimed as a homestead shall be reduced to the extent that such value is attributable to any portion of any property that the Debtor disposed of in the ten (10) year period ending on the date of the filing of the Petition with the intent to hinder, delay or defraud a creditor and that the Debtor could not otherwise exempt.

19. 11 U.S.C. §522(q) provides that the Debtor may not exempt any amount of an interest in his homestead in excess of $125,000.00 if the Debtor has been found to engage in, inter alia, fraud, deceit, or manipulation in a fiduciary capacity.

20. While the Fourth District Court of Appeal ultimately reversed that portion of the State Court's Judgment with respect to the imposition of an equitable lien on the Debtor's homestead due to an alleged lack of evidence supporting Red Reef's tracing argument, the Court left undisturbed the finding that the Debtor and Sunday Willis in fact converted property of Ocean One which properly

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

10

belonged to Ocean One's creditors, including Red Reef, to their own use and benefit in paying down the mortgage on their homestead. Accordingly, the Debtor may only exempt $125,000.00 of value in their homestead. Alternatively, the Debtors should not be able to exempt equity in their homestead up to Four Hundred and Ninety Thousand, Three Hundred and Forty-Five Dollars and Nineteen Cents ($490,345.19).

WHEREFORE creditor Red Reef respectfully requests denial of Debtor's motion for partial summary judgment on that portion of Red Reef's objection to claimed exemption in the homestead predicated upon 11 U.S.C. §522(q), and requests partial summary judgment in its favor based upon Red Reef's objection to the Debtor's homestead under 11 U.S.C. §522(o) and (q), and for any other, further relief this Court deems equitable and just.

*I HEREBY CERTIFY* that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center
1111 Brickell Avenue, Suite 2915
Miami, FL 33131
(305) 722-2002 Telephone
(305) 722-2001 Facsimile

By: /s/_____
ROBERT CHARBONNEAU
Florida Bar No.: 968234

**EHRENSTEIN CHARBONNEAU CALDERIN**
Mellon Financial Center ●·1111 Brickell Avenue, Suite 2915·● Miami, FL 33131 ●·T. 305.722.2001 ● F. 305.722.2001

11