**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

*In re:*                                                              CASE NO.: 07-11010-BKC-PGH
                                                                         Chapter 7 proceeding
ERNEST W.WILLIS,

　　　　Debtor.

_____/

**MOTION OF THE CREDITOR, RED REEF, INC. FOR PARTIAL SUMMARY
JUDGMENT ON ISSUE OF APPLICATION OF 11 U.S.C. §522, 26 U.S.C. §4975 AND
26 U.S.C. §408 TO DEBTOR'S CLAIMED IRA EXEMPTION**

## I.　　BACKGROUND

1.　　The Debtor, Ernest W. Willis, commenced this Voluntary Bankruptcy Proceeding under Chapter 7 by the filing of a Petition on February 16, 2007 (C.P. #1).

2.　　On his schedule "C", the Debtor claimed his IRA accounts at Merrill-Lynch and Fidelity Federal Savings and Loan as exempt. The Creditor, Red Reef Inc., objected to the Debtor's claim of exemption.

3.　　On December 27, 2007, Red Reef, Inc., filed the affidavit of its expert witness, Sharon Quinn Dixon, in regard to its objection to the IRA exemption and in support of this Motion for Partial Summary Judgment.

## II.　　SUMMARY JUDGMENT STANDARD

4.　　Pursuant to Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, summary judgment shall be granted "if the pleadings, depositions,

1

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has reaffirmed the vitality of summary judgment as a method for the just, speedy and inexpensive disposition of cases. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

5.      Summary Judgment may be entered only where there are no genuine issues of material fact. See, Twiss v. Kury, 25 F. 3d 1551 (11th Cir. 1994). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Twiss, supra at 1554. The movant has the burden of meeting Rule 56's standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The nature of the movant's initial burden "varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant bears the burden of proof at trial." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

6.      Once the moving party identifies those portions of the record that demonstrate the absence of a genuine issue of material fact, any party opposing summary judgment must set forth specific facts showing a genuine issue for trial, and may not rely on mere allegations or denials. Celotex, supra 477 U.S. at 324; Anderson, supra 477 U.S. at 256-57. If the record as a whole could not lead a rational finder of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. Matsushita, 475 U.S. at 586-87. In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-

moving party. <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991).

7.    Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "go beyond the pleadings, and by its own affidavits, or  by 'depositions, answers to interrogatories, and admissions on file' designate specific facts showing that there is a genuine issue for trial." <u>Jeffrey v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 594 (11th Cir. 1995) (quoting <u>Celotex</u>, <u>supra,</u> 477 U.S. at 324). A non-moving party "must come forward with facts, and not doubts as to the veracity of the moving party's allegations." <u>Claudio v. United States</u>, 907 F. Supp. 581, 584 (E.D.N.Y. 1995) (The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Claudio</u>, <u>supra</u> at  584.)

8.    Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. <u>Celotex</u>, <u>supra</u>, 477 U.S. at 324. It is axiomatic that "legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." <u>Orson, Inc. v. Miramax Film Corp.</u>,  79 F.3d 1358, 1372 (3d Cir. 1996). <u>See</u> <u>also</u> <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1042, 1047 (5th Cir. 1996) ("neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden ... pleadings are not summary judgment evidence") Moreover, "a mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642 (11th Cir. 1997).

Thus, in evaluating a motion for summary judgment, the Court must view the record evidence "through the prism of the evidentiary standard of proof that would pertain at trial on the merits." Eli Lily & Co. v. Barr Labs, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001) citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III.  EXEMPTION OF IRA ACCOUNT UNDER STATE AND FEDERAL LAW

The exemption for Individual Retirement Accounts (IRA) is provided by Florida State law. Fla. Stat. § 222.21(2)(a) provides, in pertinent part, that:

> any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

An Individual Retirement Account is "created under the authority of 26 U.S.C. §408(a)." Smith v. Winter Park Software, Inc., 504 So. 2d 523, 524 (Fla. 5th DCA 1987). There the Fifth District Court of Appeal recognized that Individual Retirement Accounts are not established by the employer, but rather by the individual employee. It defined an IRA account as:

> a savings account with tax benefits and gratuitous contributions by the [employee] rather than a plan or policy provided by an employer or other party; ... the [employee] has complete control over the account rendering no guarantee until the funds will actually be retained until retirement or disability; and ... an IRA contemplates a contractual arrangement whereby the [employee] deals directly with the depository institution rather than having the funds provided by an employer or other third party. Smith, supra at 524. See also In re Peeler, 37 B.R. 517, 518 (Bkrtcy.M.D.Tenn.1984.)"

Under 26 U.S.C. §4975, various types of transactions by the participant are prohibited and,

4

when the participant engages in them, the IRA account loses its exempt status. 26 U.S.C. §4975 provides, in pertinent part, that:

(c)     Prohibited transaction. (1) General Rule. For purposes of this section, the term "prohibited transaction" means any direct or indirect:

(A)     sale or exchange, or leasing of any property between a plan and a disqualified person;

(B)     lending of money or other extension of credit between a plan and a disqualified person;

(C)     furnishing of goods, services, or facilities between a plan and a disqualified person:

(D)     transfer to, or use by or for the benefit of a disqualified person of the income or assets of a plan;

(E)     act by a disqualified person who is a fiduciary whereby he deals with the income or

assets of a plan in his own interest or for his own account; or

(F)     receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

When a participant or beneficiary violates 26 U.S.C. §4975, the IRA or pension or profit share plan loses its exempt status.  See In re Hughes, 293 B.R. 528, 530 (Bkrtcy. Ct. M.D. Fla. 2003); Hockaden and Associates, Inc. v. Commissioner of Internal Revenue, 800 F.2d 70 (6th Cir.

5

1986).

Fla. Stat. § 221.21(2)(a) expressly makes it a prerequisite to an allowable exemption that the retirement plan be <u>qualified</u> for a tax exemption under Sections 408 of the Internal Revenue Code. <u>See</u> <u>In re Banderas</u>, 236 B.R. 837 (Bkrtcy. Ct. M.D. Fla. 1998).

In <u>Dzikowski v. Blais</u>, 220 B.R. 485, 488 (S.D. Fla. 1997), the court noted that, under Fla. Stat. § 222.21, "<u>qualification</u> implies that the IRA or Profit Sharing Plan has been <u>organized</u> and <u>operated</u> as required by the IRC." <u>Dzikowski</u>, <u>supra</u> at 488.

There are strict requirements for the operation of an IRA account. Contributions to an IRA account are limited to $2,000 per year. <u>See</u> 26 U.S.C. §408 (a)(1). However, amounts, in excess of $2,000, may be contributed to an IRA, if they constitute the proceeds of other exempt pension or retirement plan funds. <u>See</u> 26 U.S.C. § 408 (d )(3) (A)(ii). Monies may be withdrawn from an IRA account, and maintain their exempt status, if they are transferred <u>directly</u> (or rolled over) to another exempt pension plan or retirement account and they are returned within (60) sixty days. <u>See</u> 26 U.S.C. §408(d)(3)(A)(i); <u>Mostafa v. Commissioner of Internal Revenue</u>, T.C. Memo. 2006-106, 2006 WL 1319461 (U.S. Tax Ct. 2006) (the United States Tax Court stated that rollover contributions "are not includible in gross income." <u>Mostafa</u>, <u>supra</u> at 4.) However, this ability to "rollover" funds and retain the exemption is strictly limited to one transaction per year.

See 26 U.S.C. §408(d)(3)(A)(I); Martin v. Commissioner of Internal Revenue, T.C. Memo 1992-332, 1992 WL 122468 (U.S. Tax Ct. 1992).

Furthermore, the return of the rollover funds must be accomplished within (60) sixty days of the first rollover. See Welander v. Commissioner of Internal Revenue, 92 T.C. No. 51, 92 T.C. 866 (United States Tax Court 1989) (if the individual rolls over the distribution into another IRA within 60 days after he receives the distribution, "then such amount is not includible in gross income. Section 408(d)(3); section 1.408-4(b), Income Tax Regs." Welander, supra at 866.

In Lemishow v. Commissioner of Internal Revenue, ll0 T.C. No.11, 110 T.C. 110 (U.S. Tax Ct.1998), the United States Tax Court stated that:

> this exception permitted property distributed to be sold and the proceeds contributed during the 60-day period. The narrow scope of this section is reflected in Staff of Joint Comm. on Taxation, General Explanation of the Revenue Act of 1978, Pub.L. 95-600, at 110 (J. Comm.Print 1979). See also Rev.Rul. 87-77, 1987-2 C.B.115. Lemishow, supra at 113.

In the absence of the retention of exempt status, distributions from an IRA account are taxable. Generally, distributions from an IRA are includable in the distributee's gross income. See 26 U.S.C. §408(d)(1); Lemishow v. Commissioner, 110 T.C. 110, 112, 1998 WL 130156 (1998); Mostafa v. Commissioner of Internal Revenue, T.C. Memo.2006-106,2006 WL 1319461 (U.S) Tax Ct. 2006).

20 U.S.C. §408(d)(1) provides generally that "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee, as the case may be, in the manner provided under section 72". See also Alpern v. Commissioner of

Internal Revenue, T.C. Memo 2000-246, 2000 WL 1101038 (U.S. Tax Ct. 2000).

## IV.  THE FACTS WHICH ARE UNCONTROVERTED

The following facts are uncontroverted:

Ernest W. Willis was a banker for approximately 25 to 30 years, ultimately serving as President and CEO of Nationwide Savings. In 1989, Ernest W. Willis went into the Real Estate Property Management business with his wife, Sunday Willis ("Mrs. Willis"). In 1989, they formed Beacon Property Management, Inc. ("Beacon").

Mr. Willis was a stockholder of Ocean One North, Inc.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 20, lines 5 to 7.  Mr. Willis and his wife, Sunday, held fifty (50) percent of the stock while Mr. Matthew Giacomino and his wife held the other fifty (50) percent.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 20, lines 8 to 14.  Mr. Willis claimed  that he did not operate the partnership but admitted that he did oversee its financial matters.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 20, lines 15 to 20. Ocean One North, Inc. owned a valuable parcel of real estate at the corner of A1A and Palmetto Park, Boca Raton.  It was the sole asset of the corporation.

During the period 1993 through 2006, Ernest Willis  only had a single IRA account at Merrill Lynch.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 63, line 20 to page 64, line 1.  Initially, it was Account No 751-74781. On March 30, 1993, the Merrill Lynch IRA was opened when Smith Barney transferred $80,011, into the Merrill Lynch account. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 84, lines 4 to 17. See Rule 2004 Examination of Ernest Willis, December 11, 2007, page 29, Lines 5 to12.  In

8

2004, the account number was changed.[1]

Mr. Willis and his wife, Sunday Willis, also maintained a joint brokerage account at Merrill Lynch.  It was account no. 751-30595. It was not exempt.  It will be referred to as the non-IRA account or CMA (cash management account).

As a result of various disputes between the Willises and the Giacominos, in late 1993 Ernest Willis had to gather funds and pay off the first mortgage on the Ocean One Property to avoid foreclosure.

In 1993, the mortgage, held by Peoples Southwest Limited Real Estate Partnership, on the sole asset of Ocean One North, Inc., came due.  Ernest Willis was required to raise more than $790,000 to pay off the mortgage. The mortgage had actually been placed on the property by a prior lender before Ernest Willis became involved with Ocean One North, Inc. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 24, lines 1 to 6.  The mortgage was assigned to Peoples Southwest Limited Real Estate Partnership (hereinafter "People Southwest"), before Ernest Willis' involvement with Ocean One North, Inc.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 24, lines 1 to 13.

In 1993, Mr. Willis was having trouble obtaining the money to pay off the mortgage since he had not anticipated paying the entire Peoples Southwest mortgage. Mr. Giacomino was initially supposed to pay one-half.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007,

---

[1] Mr. Willis testified that the new non-IRA account number was 684-10594 and that the new IRA account was 684-79317.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 81, lines 8 to 18.  Mr. Willis did understand that they were the same account as the prior account and the assets were being transferred to new account numbers.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 82, lines 7 to 10.

9

page 48, lines 13 to 20.

Mr. Giacomino had, at first, tried to settle the loan obligation . See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 24, lines 20 to 22.  However, Mr. Giacomino had, in fact, reneged on the settlement agreement. Consequently Mr. Willis had to come up with all of the money.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 25, line 6 to page 26, line 14.

Mr. Willis agreed to give a $50,000 deposit to Peoples Southwest a part of this agreement.  Ultimately, he paid a total $792,500.00  to pay off the loan and to obtain an assignment of the loan from Peoples Southwest to himself.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 25, line 13 to page 26, line 2.

In order to have sufficient funds in his Merrill Lynch IRA account, with which to satisfy by the People Southwest mortgage, Ernest Willis started to consolidate a number of his smaller IRA accounts at other financial institutions  by rolling them directly into the Merrill Lynch IRA account. See Plaintiff's Composite Exhibit 21 (IS 72307-0022 to 00320) to the Rule 2004 Examination of Ernest Willis.  In a four month period at the end of 1993, Mr. Willis consolidated various other IRA accounts into his Merrill Lynch IRA  account.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 83, line 18 to page 90, line 8.

In the four-month period, prior to December 13, 1993,  Ernest Willis transferred more than $550,000.00 into the Merrill Lynch IRA account, including, but not limited to, the following transfers:

(a)     on September 24, 1993, $79,612.03 was transferred from an IRA account at Home Federal Trust.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page  88, lines 6 to 11; contribution ticket (IS 72307 00287) , Plaintiff's Composite Exhibit 21.

(b)     on October 27, 1993,  $103,957.18 was transferred from a Sun Bank IRA Account. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11,2007, page 87,line 25 to page 88, line 5;

(c)     on October 27, 1993, $54,000.00 was transferred to Merrill Lynch.   <u>See</u> contribution ticket (IS 72307 00294) Plaintiff's Composite Exhibit 210;  Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 88, lines 20 to 23;

(d)     on November 29, 1993, $17,654.56 was transferred to Merrill Lynch. Plaintiff's Composite Exhibit 21 (IS 72307-00297). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 89, lines 12 to 19;

(e)     on November 30, 1993, $55,978.06 was transferred from an IRA account at Pointe Federal Savings Bank. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 85, line 25  page 8, line 11. (IS 72307-00252);

(f)     on December 1, 1993, $31,551.04 was transferred from a Pointe Federal IRA account. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 86, line 15 to page 87, line 1;

(g)     on December 1, 1993, Ernest Willis requested the transfer of $30,624.94 in funds from a Barnett Bank IRA account. Plaintiff's Composite Exhibit 21 Bates stamped (IS 72307-00236).  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 85, lines 3 to 13;

(h)     on December 2, 1993, $4,000.00 was transferred from Stifel Nicolaus.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 84, lines 18 to 25; Plaintiff's Composite Exhibit 21 (IS 72307-00225);

(i)     on December 10, 1993, $34,277.92 was transferred from an IRA at AmTrust. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 85, lines 14 to 24;

(j)    in December of 1993, $138,372.73 was transferred from IRA accounts at Great Western Bank (Plaintiff's Composite Exhibit 21 (IS 72307-00273). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 87, lines 2 to 24.

Mr. Willis thought it was conceivable that the reason he was requesting money from Great Western Bank was to close out the Peoples Southwest mortgage. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 50, lines 13 to 17.  Mr. Willis was trying to resolve matters with Peoples Southwest while he was trying to consolidate all his other IRA accounts into his Merrill Lynch IRA account.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 89, lines 20 to 25 and page 90, lines 1 to 2.

By December of 1993, Ernest Willis had accumulated enough funds in his IRA account to take out the Peoples Southwest mortgage. In December of 1993, Mr. Willis executed a Settlement Agreement with Peoples Southwest Limited Real Estate Partnership. <u>See</u> Plaintiff's Exhibit 9 to the Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 24, lines 16 to 25. Mr. Willis also signed an Escrow Agreement with Peoples Southwest, General Electric Capital Corp., and Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quintel, P.A. <u>See</u> Plaintiff's Exhibit 12 to the Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 31, lines 8 to 15.  The escrow agreement provided for the payment of the purchase price of the mortgage. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 31, lines 16 to 18. As provided in the Escrow Agreement an additional $742,500.00 had to be paid in federal funds to  Greenberg Traurig as the Escrow Agent for Peoples Southeast.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 32, lines 5 to 15.  Mr. Willis had to transfer the funds to the

12

Escrow Account maintained by Greenberg Traurig at Sun Bank.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 32, lines 16 to 21.

In December of 1993, Mr. Willis sent an authorization letter to Merrill Lynch to transfer $700,000 in funds from his Merrill Lynch IRA account no. 751-74781 to a Sun Bank account which Sunday Willis and he maintained. See Plaintiff's Exhibit 11 to the Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 29, lines 17 to 25.  Plaintiff's Exhibit 17, a Merrill Lynch Distribution Form signed by Ernest Willis.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 42, lines 20 to 25.

Mr. Willis sent a fax cover sheet dated December 13, 1993 to Irving Silver at Merrill Lynch. See Plaintiff's Exhibit 13 to the Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 35, line 23 to page 36, line 4.  Mr. Willis enclosed wire transfer instructions on December 13, 1993, from his Beacon Property Management office. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 36, lines 10 to 19.

Mr. Willis, maintained that the Sun Bank account with his wife, Sunday. It was Account Number 0399545854415.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 33, lines 13 to 17.  The $700,000 was first transferred  from Merrill Lynch to the Sun Bank account, which Ernest Willis personally maintained with his wife at Sun Bank.  In turn, the moneys were transferred at Sun Bank from the Willis' personal account to the Escrow Account maintained by  Greenberg Traurig.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 33, line 18 page 34, line 1.

On December 13, 1993, there was a Loan Closing pursuant to the Settlement Agreement. <u>See</u> Plaintiff's Exhibit 14 (Closing Statement between Peoples Southwest Real Estate Limited Partnership and Ernest Willis along with a release). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 36, line 25 to page 37, line 6. At the closing, Mr. Willis personally received the assignment of the mortgage from Peoples Southwest. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 34, lines 2 to 8; page 37, lines 15 to 19. <u>See</u> <u>also</u> Plaintiff's Exhibit 8.

After the closing, Ernest Willis attempted to place the mortgage and note into his IRA. <u>See</u> Plaintiff's Composite Exhibit 18 to the 2004 Examination of Ernest W. Willis, December 11, 2007. Yet, when asked why he would want to put a note into his IRA in 1993, Mr. Willis testified "it might have seemed like something to do." <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 46, lines 3 to 9.

On December 14, 1993, Irving Silver, the account manager at Merrill Lynch, sent a fax to Harry Ross, Esq., the attorney for Ernest Willis. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 46, lines 13 to 19. <u>See also</u> Exhibit 19A ( IS 72307-00077). According to Exhibit 19A, Merrill Lynch informed Harry Ross that it needed a legal opinion for Ernest Willis sent to ML Retirement Plan Operations in order to put the note of Ocean One North, Inc. and Matthew Giacomino into Mr. Willis' IRA account. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 47, lines 5 to 9. Mr. Willis did not think he was ever successful at placing the Ocean One North note into his IRA. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 48, lines 3 to 7.

14

In 1997 and 1998, Ernest Willis operated the Merrill Lynch IRA as if it was his own personal "piggy-bank". He repeatedly utilized or loaned himself the IRA funds and frequently repaid or returned some of the moneys to the IRA account. [2]

From January 1, 1997 through December 1997, in the Merrill Lynch IRA account, the total distributions were $1,454,000.00. Ernest Willis had contributed $902,000 as referred in Plaintiff's Composite Exhibit 22 (ML 070307-00063). See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 101, lines 1 to 12.

Between July 1, 1997, and June 30, 1997 Ernest Willis had received $650,000 in distributions from his IRA and had contributed $470,000 to his IRA. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 93, lines 6 to 16. The $650,000 in distributions included a $180,000 distribution on June 6, 1997. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 93, lines 17 to 21. [3]

### The $230,00.00 withdrawal on February 5, 1997

Neither the Debtor or Merrill Lynch produced copies of the IRA account statements for the months of January through May of 1997. However, Irving Silver, his account manager, did produce a request for a distribution of funds on February 5, 1997 for $230,000.00. See Plaintiff's

---

[2] Plaintiff's Composite Exhibit 22 contained Merrill Lynch documents ML 070307-00001 through ML 070307- 01227. It was presented to Mr. Willis and he identified them as records from Merrill Lynch. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 90, lines 16 to 25 and page 91, lines 1 to 5.

[3] Plaintiff's Composite Exhibit 22 (ML 070307-00003) to Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 92, lines 21 to 25 and page 93, lines 1 to 5. Ernest Willis contributed $240,000 in June. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 94, lines 15 to 17. The total contributions prior to May 30, 1997 were $230,000. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 94, line 18 to page 95, line 15.

Composite Exhibit 21, (IS 12307-00059) to the Rule 2004 Examination of Ernest Willis, December 11, 2007.   Mr. Willis signed the transfer form in the amount of $230,000, dated February 5, 1997. Plaintiff's Composite Exhibit 21 (IS 72307-00089). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 67, lines 12 to 20. Merrill Lynch did not transfer the funds directly to another trustee.  Instead, the funds were paid to the non-IRA account in the name of Ernest and Sunday Willis. They were the title holders of the non-IRA account No. 751-30595 at Merrill Lynch.    <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 67, line 21 to page 68, line 3.  Once the money was placed in his non-IRA account at Merrill Lynch in the name of Sunday Willis and himself,  Mr. Willis had complete and unfettered control of the CMA account which contained the $230,000.   <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 57, lines 15 to 23.

When asked why he would take $230,000 out of his IRA on February 5, 1997 Mr. Willis could not remember. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 55, lines 1 to 3.   Mr. Willis vaguely  remembered that at the time he was involved in a lawsuit with Mr. Giacomino in 1997. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 55, lines 4 to 10. Mr. Willis paid bills for Ocean One North Property and made loans to the corporation while the sale was pending.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 55, lines 15 to 25.

### Account Activity in June of 1997

The following activities occurred during the May 31, 1997 through June 30, 1997 time frame for the Merrill Lynch IRA account No. 751-74781:

(a)     On June 6, 1997, Ernest Willis made a withdrawal and transferred $180,000.00 to his non- exempt account (no.75130595). (L07030700011);

(b)     On June 9, 1997, Ernest Willis made a rollover deposit of $180,0000 (ML07030700011);

(c)     On June 9, 1997, Ernest Willis made another rollover deposit of $60,000. (ML07030700011);

(d)     On June 9, 1997, Ernest Willis  received $180,000 from ML Retirement Services and redeemed $180,000 on that same day.  (ML07030700011);

(e)     On June 10, 1997, Ernest Willis Made a fund delivery for $240,000 from ML Retirement Reserves. (ML07030700011);

(f)     On June 10, 1997, Ernest Willis made a subscription to the ML retirement Reserves for $240,000. (ML07030700011).

### The $180,000.00 Withdrawal on June 6, 1997

On June 6, 1997, Ernest Willis moved to withdraw $180,000.00, from his IRA. _See_ Plaintiff's Composite Exhibit 21(IS 72307-00090 ); _See_ Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 57, lines 1 to 5.  Mr. Willis requested that Merrill Lynch take $180,000 out of his IRA  and transfer it to his non-exempt account Merrill Lynch account no. 751-

30595. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 57, lines 8 to 12.  Mr. Willis filled out the transfer form for $180,000, in his own handwriting.  He had checked Part II as the account owner reason for withdrawal "early/premature distribution no known exception." <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 66, line 24 to page 67, line 4. Merrill Lynch did <u>not</u> transfer the funds directly to a trustee. Instead, it was given to Ernest and Sunday Willis.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 67, lines 5 to 11.  Ernest Willis then had complete and unfettered control of the funds which were then in his CMA account.  <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 57, lines 15 to 23.

In the IRA account, No. 751-74781, maintained by Ernest Willis at Merrill Lynch, the account statement for the period August 1, 1997 through August 29, 1997, reflects that the initial balance on the account was $739,771.00 and by August 29, 1997, the ending balance had decreased to $669,986.00. (ML07030700021).

### The $252,000.00 withdrawal of August 8, 1997

The following activities occurred during the August 1, 1997 through August 29, 2007 time frame for the Merrill Lynch Account No. 751-74781:

(a)     On August 8, 1997, Ernest Willis made a rollover deposit for $180,000. ML07030700027;

(b)     On August 8, 1997, Ernest Willis made a withdrawal and transferred $252,000.00 to his non-exempt account no. 75130595. (ML07030700027)

18

On August 8, 1997, Ernest Willis requested a distribution of $252,00.00. It was transferred to his non-exempt account no. 751-30595. Plaintiff's Composite Exhibit 22 (ML 070307-00027). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 96, lines 4 to 11.

Mr. Willis transferred the funds on August 8, 1997. However,   the $252,000.00 was, in turn, returned or contributed to the IRA account on October 8, 1997. <u>See</u> Plaintiff's Composite Exhibit 22, (ML070307-00043) to the Rule 2004 Examination of Ernest Willis, December 11, 2007, page 97, lines 7-23.   Sixty-One (61) days had elapsed between the distribution and the contribution for the identical sum of money. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 97, line 24 to page 98, line 2.

<u>**The $270,000.00 Withdrawal on October 8, 1997**</u>

On October 8, 1997, Ernest Willis requested a $270,000.00 distribution from his IRA account  which, he withdrew and, in turn, deposited in his non-IRA account. <u>See</u> Plaintiff's Composite Exhibit 21 (IS 72307-00098). <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 57, line 24 to page 58, line 6. The moneys were transferred out of Mr. Willis' IRA account into his non-IRA account at Merrill Lynch.   <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 96, lines 17 to 25 and page 97, line 6.

 Mr. Willis testified that he filled out the transfer form in the amount of $270,000, on October 8, 1997, Plaintiff's Composite Exhibit 21 (IS 72307-00098), in his own handwriting. <u>See</u> Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 66, lines 7 to 13.  Mr. Willis had checked Part II as the "account owner reason for withdrawal early/premature distribution no known exception." <u>See</u> Rule 2004 Examination of Ernest W. Willis, December

11, 2007, page 66, lines 12 to 15. He testified that Merrill Lynch did not transfer the funds to a

trustee but rather to Ernest and Sunday Willis. See Rule 2004 Examination of Ernest W. Willis,

December 11, 2007, page 66, lines 16 to 23.

On December 9, 1997, Mr. Willis returned the $270,000 to his IRA account. Composite

Exhibit 22 (ML 070307-00062), See Rule 2004 Examination of Ernest W. Willis, December 11,

2007, page 98, line 3 to Page 99 line 8. The money was returned 62 days after it was withdrawn.

### The $282,000.00 Withdrawal on December 8, 1997

On December 8, 1997, Mr. Willis made a distribution request, in his own handwriting, for

$282,000, Plaintiff's Composite Exhibit 21 (IS 72307-00104). He had checked Part II as the

"account owner reason for withdrawal early/premature distribution no known exception." See

Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 65, lines 4 to 7. He had

not checked "normal". See Rule 2004 Examination of Ernest W. Willis, December 11, 2007,

page 65, lines 8 to 10. The funds were placed into a non-exempt, non-IRA account number 751-

30595 for Ernest and Sunday Willis. See Plaintiff's Composite Exhibit 22 (ML 070307-00062) to

the Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 59, lines 2 to 18; page

64 line 24 to page 65, line 3. Mr. Willis had complete and unfettered control of the funds after

they were transferred to his non-IRA CMA account. See Rule 2004 Examination of Ernest W.

Willis, December 11, 2007, page 59, line 19 to page 60, line 1.

## The $285,000.00 Withdrawal on February 6, 1998

Mr. Willis made a distribution request for $285,000, on February 6, 1998. Plaintiff's Composite Exhibit 21 (IS 72307-00106) which was then placed into a non-exempt, non-IRA account number 751-30595 for Ernest and Sunday Willis. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 59, lines 23 to 25 and page 60, lines 1 to 13. Ernest Willis then had complete and unfettered control of the funds once they were placed in the non-IRA account. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 60, lines 14 to 21.

Mr. Willis filled out the transfer form in the amount of $285,000, Plaintiff's Composite Exhibit 21 (IS 72307-00106), in his own handwriting. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 64, lines 2 to 9.   Mr. Willis had checked Part II as the "account owner reason for withdrawal early/premature distribution no known exception." See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 64, lines 10 to 19.  The moneys were not returned to the IRA account until April 8, 1998. See Plaintiff's Composite Exhibit "22" (ML 070307 00089).  This was 61 days after the initial distribution.

In the IRA account, No. 751-74781, maintained by Ernest Willis at Merrill Lynch, the account statement for the period of February 28, 1998 through March 31, 1998, reflects that the initial balance on the account was $780,404.00 and by March 31, 1998, the ending balance had increased to $854,008.00 (ML07030700074).

In the IRA account, No. 751-74781, maintained by Ernest Willis at Merrill Lynch, the account statement for the period April 1, 1998 through April 30, 1998, reflects that the initial

balance on the account was $854,008.00 and by April 30, 1998, the ending balance had increased to $859, 631.00.  (ML07030700084).

After April 30, 1998, Mr. Willis received more than $1,000,000 from the sale of the Ocean One North property. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 106, lines 19 to 25.  He stopped making substantial withdrawals from his IRA account for the remainder of 1998.  See Plaintiff's Composite Exhibit 22 (ML 070307-00664). Ernest Willis made no further distributions from his IRA account after the April 30, 1998 sale of the property. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 108, lines 11 to 16.

### THE PURPOSE OF THE WITHDRAWAL FROM THE IRA ACCOUNT

Ernest Willis was less than candid and forthright regarding the IRA transfers during his Rule 2004 Examination Mr. Willis testified that he was moving money in and out of his account. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 101, lines 13 to 18. He said he was "making use of the money." See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 101, lines 19 to 20.  However, when asked if it was for investment purposes he responded that he was not sure.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 101, lines 21 to 23.

In 1998, Mr. Willis made total distributions of $568,000 and his total contributions were $285,000.  See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 103, lines 7 to 18.  The total distributions from the IRA account in 1997 and 1998 were over $2,000,000.00 See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 103, lines 19 to 23.

Mr. Willis admitted that for the year of 1997 and four months of 1998 he had distributions

22

which totaled two and a half times the balance which he had in his IRA account. See Rule 2004

Examination of Ernest W. Willis, December 11, 2007, page 104, lines 12 to 19. Mr. Willis

admitted that he took $2,000,000 from his IRA from January 1997 through April 1998 to cover

his personal and business expenses. See Rule 2004 Examination of Ernest W. Willis, December

11, 2007, page 105, line 15 to 25 to page 106, line14.

Ernest Willis testified in his Rule 2004 Examination on December 11, 2007, as follows:

(Commencing at page 101, line 13).

Q.    Sir, what did you take $1,454,000.00 out of your account in the year 1997 for?
A.    I don't know. It was out and in and out and in.

Q.    Why did you do that?
A.    But it wasn't all at one time.

Q.    Okay, So why did you do that?
A.    So I'd have the use of the money, I guess. See Rule 2004 Examination of
       Ernest Willis, dated December 11, 2007, page 101, lines 13 to 20.

Ernest Willis also testified in his Rule 2004 Examination on December 11, 2007, as follows:

(Commencing at page 105, line 15).

Q.    I'm just going into the factors which contributed to you taking out
       approximately $2,000,000.00 out of the IRA account between January 1,
       1997 and April 30, 1998. Isn't it true one of the factors was, you needed
       money for personal expenses?
A.    Yes.

Q.    Isn't it true one of the factors that you needed money for was keeping Ocean
       One North a float until you could get to a closing and a sale?
A.    Yes. See Rule 2004 Examination of Ernest Willis, dated December 11, 2007,
       page 105, lines 15 to 25.

23

Lastly, Ernest Willis testified as to the personal use of the IRA proceeds in his Rule 2004 Examination on December 11, 2007, as follows:

(Commencing at page 106 line 15).

> Q      But the point is, you were trying to get the money out so you could use the money; isn't that true?
> A.     Part of it, yes.  See Rule 2004 Examination of Ernest Willis, dated December 11, 2007, page 106, lines 15 to 18.

## NO TAX RETURNS FILED REFLECTING IRA INCOME

It is undisputed that Ernest Willis has not declared whether income tax is owed on any of the 1997 and 1998 IRA transactions.  This is because Ernest Willis has not filed any income tax returns for at least the past 12 years.  Mr. Willis had no banking or IRS documents reflecting that the IRA is exempt and he does not possess any tax returns reflecting IRA income. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 9, lines 12 to  18; page 13, line 22 to page 14 line 1.

The last time Ernest Willis filed a 1040 tax return with the federal government was sometime in the mid 1990's, approximately 1995. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007,    page 11, line 25 to page 12, line 5; page 3, line 5-8, page 13, lines 9 to 17.

All of his tax return filing extensions have expired. Mr. Willis could give no reason for not filing tax returns for all of those years. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 13, lines 15 to 21.

24

WHEREFORE, the Creditor, Red Reef, Inc., respectfully requests that the Court enter a partial summary judgment in its favor sustaining the objection to the Debtor's claimed IRA exemption and order turnover of the IRA accounts to the Trustee.

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CREDITOR, RED ROOF, INC. FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF APPLICATION OF 11 U.S.C.§522, 26 U.S.C. § 4975 AND 26 U.S.C.§408 TO DEBTORS CLAIMED IRA EXEMPTION

### A. BURDEN OF PROOF

The burden is on the Trustee or Creditor to establish that the IRA account is disqualified. See In re Ehnle,124 B.R. 361 Bkrtcy Ct. M.D. Fla. 1991 In re Banderas, 236 B.R. 837 Bkrtcy. Ct.M.D. Fla.1998).

However, in Dzikowski v. Blais, 220 B.R. 485 (S.D. Fla.1997), the court noted that "Rule 9017 of the Federal Rules of Bankruptcy Procedures provides that the Federal Rules of Evidence apply in cases under the Bankruptcy Code". Dzikowski, Supra at 491. It has been noted that Rule 301 of the Federal Rules of Evidence provides: "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden proof ...which remains...upon party on whom it was originally cast." Dzikowski, supra at 491.[4]

---

[4] The burden of proving that a valid rollover occurred is on the debtor. For example, in Mostafa v. Commissioner of Internal Revenue, TC. Memo. 2006-106, 2006 WL 1319461 (U.S. Tax Ct. 2006), the United States Tax Court noted that:

> On brief, petitioner argues that she rolled over an additional $3,653 into her T. Rowe Price IRA on March 26, 1996. Petitioner did not introduce any evidence to substantiate the alleged rollover, nor is it consistent with the facts. The only IRA distribution she received before the alleged rollover was $47,000 on

## B. THE DEBTOR ENGAGED IN PROHIBITED TRANSACTION UNDER 26 U.S.C.§4975

As recognized in the affidavit of Sharon Quinn Dixon, Plaintiff's expert witness, the Debtor cannot obtain an exemption in the IRA accounts since he engaged in numerous prohibited transactions in violation of 26 U.S.C. §4975.  26 U.S.C.A. § 4975 (c) defines a  "prohibited transaction" as any <u>direct</u> <u>or</u> <u>indirect</u>;

(A) <u>sale</u> or exchange, or leasing of any property between a plan and a disqualified person;

(B)    <u>lending of money or other extension of credit</u> between a plan and a disqualified person;

(C)    furnishing of goods, services, or facilities between a plan and a disqualified person;

(D)    <u>transfer to, or use by or for</u> the benefit of a disqualified person of the income or assets  of a plan;

(E)    act by a disqualified person who is a fiduciary whereby he <u>deals with the income or assets of a plan in his own interest</u> or for his own account; or

(F)    receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

Under 26 U.S.C. §4975, a participant or beneficiary of a IRA or pension or profit share is prohibited from using fund assets for personal benefit or loans.  <u>See</u> <u>In re Banderas,</u> 236 B.R. 837 (Bkrtcy. Ct. M.D. Fla. 1998); <u>In re Hughes</u>, 293 B.R. 528 (Bkrtcy. Ct. M.D. Fla. 2003); <u>Wood v.</u>

---

February 26, 1996.  Thus, she only had $7000 available to roll over (the amount of the alleged Star Bank rollover), and we do not consider the alleged T. Rowe Price rollover further.  <u>Mostafa</u>, <u>supra</u> at 4 .

Commissioner of International Revenue, 955 F.2d 908 (4th Cir 1992); Hockaden and Associates,

Inc., v. Commissioner of Internal Revenue, 800 F.2d 70 (6th Cir. 1986);

In re Banderas, 236 B.R. 837 (Bkrtcy. Ct. M. D. Fla. 1998), the court held that a

Benefit Plan and IRA were not exempt where, in a five-year period, the debtor obtained five loans

from the Defined Benefit Plan. The loans were exchanged for promissory notes, but the record did

not reflect that any of the loans were fully repaid.  There, the debtor also had the Defined Benefit

Plan purchase two notes and mortgages which encumbered two houses built for speculation by

Archway Builders.  The debtor was the principal and sole stockholder of that corporation.

The Banderas found that "the assets of the IRA and the assets of the Profit Sharing Plan

are not qualified for a tax exemption under IRC § 401, and in turn, by  Florida Statute § 222.21

(2)(a)." Banderas, supra at 841.  It noted that:

> the difficulty with the Debtor's claim of exemption stems from the undisputed
> fact that the funds in the IRA account were the funds rolled over from the Debtor's
> Profit Sharing Plan.  This fact leads to the ultimate question of whether the Profit
> Sharing Plan and the funds in the plan lost their tax exemption granted by the
> Internal Revenue Code because the Plan did not meet the requirements for
> qualification under the applicable Statute and Regulations. Banderas, supra at 840-
> 841.

In Wood v. Commissioner of Internal Revenue, 955 F.2d 908 (4th Cir. 1992), the Fourth

Circuit Court of Appeals recognized that:

> the prohibited transaction provisions of § 4975 are part of a remedial scheme
> designed to protect the retirement security of plan participants and beneficiaries by
> prohibiting certain types of transactions which are particularly subject to abuse.
> Wood,  supra at 914.

In Wood, supra, the court concluded that "since the concededly disqualified person , the

27

taxpayer, transferred non-cash property to the plan to satisfy his statutory funding obligation, he

engaged in a 'sale or exchange' under § 4975." <u>Wood</u>, <u>supra</u> at 914. It reasoned that:

> thus, the prohibition against sales or exchanges of property between a plan and a
> disqualified person is intended to avoid the potential for over valuations of
> property to the detriment of the plan, precisely as occurred in this case when Wood
> purported to discharge a $114,000 obligation with third-party promissory notes
> having a value of only $94,430. <u>Wood, supra</u> at 912.

In <u>Hockaden and Associates, Inc., v. Commissioner of Internal Revenue</u>, 800 F. 2d 70 (6th

Cir. 1986), the Sixth Circuit Court of Appeals upheld a tax court decision that vitiated the tax-

exempt status.   <u>Hockaden</u> involved a series of unpaid loans (totaling $93,750) made to the

taxpayer from an employee profit-sharing plan during a four year period.  The Sixth Circuit Court

of Appeals noted that:

> both the Internal Revenue Code and ERISA, in almost identical language, prohibit
> the lending of money or extension of credit between a plan and a disqualified
> person. The term 'disqualified person' includes a 'fiduciary' and an "employer any
> of whose employees are covered by the plan.  <u>Hockaden,  supra</u> at 71.

It concluded that the "taxpayer" is liable here because as a disqualified person, he engaged

in an extension of credit which results in a prohibited transaction subject to the excise tax."

<u>Hockaden,  supra</u> at 72.

26 U.S.C. §4975 has been invoked to defeat the exemption and disqualify an entire IRA in

<u>In re Hughes</u>, 293 B.R 528 (Bkrtcy. Ct. M. D. Fla. 2003). There,  the court found that "the matter

before this court is not whether or not the prohibited transaction produced the adverse tax

consequences... Instead this is a challenge to the debtor's right to an exemption." <u>Hughes</u>, <u>supra</u>

<u>at 530</u>.  The court examined the interplay between 26 U.S.C. §4975 and 26 U.S.C. §408. It  found

that "it is clear that the two statutory provisions are not interrelated. 26 U.S.C. § 4975 is entitled: 'Tax on prohibited transactions' and has a provision which imposes an excise tax unless the prohibited transaction is not corrected within the taxable period, which is a 100 percent tax of the amount involved. The disqualified person who participated in the prohibited transaction must pay this amount." Hughes, supra at 530. The court stated that:

> the challenge is based on the contention of the Trustee that by virtue of the fact that the Debtor engaged in a prohibited transaction, as described in 6 U.S.C. § 4975(c)(1)(B), the account lost its IRA status by virtue of 26 U.S.C. §408(e)(2)(A), which provides that in any taxable year an individual who engages in a prohibited transaction will disqualify the account as an IRA account. Hughes, supra at 529.

In Hughes, supra , on May 14, 2002, the debtor borrowed $27,000 from his IRA account and gave it to Audio Video Excellence, Inc.  The debtor was the principal if not the sole stockholder of the corporation.  On July 12, 2002, the corporation repaid the amount, which was then placed back into the IRA account.  The Hughes court held that the IRA lost its exempt statues under Fla.Stat. §222.21.  The court concluded that, even though the debtor actually repaid the money lent from his IRA account to his corporation, this did not have the legal effect of 'reinstating' the IRA status of the funds in the account. According to the court, the repayment merely relieved the holder of the account, who engaged in a prohibited transaction, from the penalty of excise taxes imposed by 26 U.S.C. § 4975(a)." Hughes, supra at 530.  The Hughes court reasoned that:

> whether or not an account qualifies as a tax exempt IRA account is dealt with in 26 U.S.C. § 408, specifically sub clause (e)(2)(A). This sub clause provides if during the taxable year, the individual holder of the account engages in any transaction which is prohibited by 26 U.S.C. § 4975, such account ceases to be an individual retirement account as of the first day of such

taxable year (emphasis supplied). Hughes, supra at 530.

In Hughes, supra, the court found that " there are indeed no genuine issues of material fact and that the Trustee is entitled as a matter of law to an Order sustaining his Objection to the claim of exemption. Thus, the Trustee is entitled to an Order determining that the funds in the Schwab IRA account no. 4560-0258 are subject to administration by the Trustee." Hughes, supra at 530.

## C.    PROPERLY OPERATED IRA IS LIMITED TO ONE ROLL OVER PER YEAR

Under "U.S.C. 26 §408(d)(3)(b), an IRA loses its exempt status to the extent that a debtor engages in more than one rollover in any given year. See Holding v. Cook, 2007 WL 2948398 (C.D. Ill.2007) Bhattacharyya v. Commissioner of Internal Revenue, T.C. Memo 2007-19, 2007 WL 247821 (U.S. Ct. 2007); Alpern v. Commissioner of Internal Revenue , T.C. Memo 2000-246, 2000 WL 1101038 (U.S. Tax Ct. 2000); Martin v. Commissioner of Internal Revenue, T.C. Memo 1992-332, 1192 WL 122468 (U.S. Tax Ct.1992).

In Alpern v. Commissioner of Internal Revenue, T.C. Memo 2000-246, 2000 WL 1101038 (U.S. Tax Ct. 2000), the United States Tax Court found that 26 U.S.C. §408 was violated by the owner of an IRA where he made multiple rollovers in a single year.  The Alpern court reasoned that:

> for this purpose, all IRA's are treated as one contract, all distributions during any taxable year are treated as one distribution, and the value of the contract, the income on the contract, and the investment in the contract are computed as of the close of the calendar year in which the taxable year in which the taxable year begins. Alpern, supra, at 5.

In Holding v. Cook, 2007 WL 2948398 (C.D.11. 2007), the United States District Court for the Central District of Illinois recognized that:

> the Internal Revenue Code allows only one tax-free rollover in a twelve month period. 26 U.S.C. Section 408(d)(3)(B).  Thus, only the first transfer was tax-free. The other transfers were subject to certain taxes, which plaintiff had to disclose and pay.  Holding, supra at 3.

In Holding,  supra between April and July of 2005, six distributions/redemptions  were made from an IRA account as follows:

(a)     April 18, 2005 $100,000

(b)     April 20, 2005 $100,000

(c)     April 20, 2005 $100,000

(d)     April 24, 2005 $100,000

(e)     July 26, 2005        $100,000

(f)     July 29, 2005        $ 80,496

The Holding Court took the view that only the first rollover of $100,000 was tax exempt. All of the remaining transfers totaling $480,496 violated 26 U.S.C. §408 (d)(3)(b).

Moreover, in Bhattacharyya v. Commissioner of Internal Revenue, T.C. memo. 2007-19, 2007 WL 247821 (U.S. Tax Ct.2007), the United States Tax Court condemned multiple rollovers.  It noted that:

> Respondent argues that $749,930 is included in petitioner's gross income. The record establishes, and petitioners do not dispute, that during November and December 2000, petitioners received distributions from the Fidelity IRA totaling $160,000 and from the U.S. Bancorp IRA totaling $589,930.  Respondent has met his burden of establishing a prima facie case that petitioners received

IRA distributions totaling $749,930.  Petitioners bear burden of coming forward with evidence that all or a portion of the IRA distributions are <u>not</u> included in the gross income.  <u>Bhattacharyya</u>, <u>supra</u> at 28.

In <u>Bhattacharyya, supra</u>, the United States Tax Court found that the distributions from the Fidelity IRA, and the U.S. Bancorp IRA totaling $749,930.00, were to be included in the petitioner's gross income.

Long before Ernest Willis engaged in multiple rollovers in 1997 and 1978 , they were deemed nonexempt and  taxable by the Courts.  For example, in <u>Martin v. Commissioner of Internal Revenue</u>, T.C. Memo 1992-332, 1992 WL 122468 (U.S. Tax Ct. 1992), the court stated the rule that rollovers are not taxable income if they are made within sixty (60) days.  However, the <u>Martin</u> court also recognized that the rollover exception can only be invoked once per year.  It pointed out that:

> Section 408(d)(3)(B) provides that the section 408(d)(3)(A)(i) rollover exemption <u>can</u> <u>only</u> <u>be</u> <u>used</u> <u>once</u> <u>during</u> <u>any</u> <u>1-year</u> <u>period</u>.  Thus, all subsequent distributions received during the year are taxable under section 408(d)(1).  <u>Martin</u>, <u>supra</u> at 3.

The facts in the <u>Martin</u> case illustrate the multiple rollover prohibition.  There, the debtor made the following transactions by taking distributions from his E.F. Hutton IRA account, by checks payable to him, and, in turn, depositing them in an IRA account at Merrill Lynch:

|     | **Amount** | **Date** |
| --- | --- | --- |
| (a) | $111,615.57 | February 5, 1987 |
| (b) | $164,596.13 | May 8, 1987 |
| (c) | $ 10,000.00 | September 3, 1987 |

The United States Tax Court found that:

> the February 5, 1987 check that petitioner received from E.F.
> Hutton <u>was</u> <u>payable</u> <u>to</u> <u>him</u> rather than Merrill Lynch. ... <u>Petitioner</u>
> <u>obtained</u> <u>dominion</u> <u>and</u> <u>control</u> <u>over</u> <u>funds</u> <u>at</u> <u>the</u> <u>time</u> <u>he</u> <u>received</u>
> <u>the</u> <u>check</u> <u>payable</u> <u>to</u> <u>him.</u>  He exercised that dominion by placing
> dispose of, spend, or pledge as collateral the $111,615.57 in any
> manner he pleased.  Consequently, it is our view that petitioner's
> February 5, 1987, transfer does not fall within the ambit of Rev.
> Rul. 78-406, supra because (1) the transfer was not made between
> two trustees, and (2) the $111,615.57 was distributed directly to
> petitioner.  <u>Martin,</u> <u>supra</u> at  3.[5]

In <u>Martin,</u> <u>supra</u>, the court specifically recognized that the issuance of a check from one IRA

to the individual, which was, in turn, placed in a new IRA was subject to the one rollover rule.  In

<u>Martin</u>, <u>supra</u>, the United States Tax Court held that:

> since the February 5, 1987, distribution was nontaxable IRA
> rollover, the two subsequent 1987 distributions, on May 8
> ($164,596.13) and September 3 ($10,000), are taxable because the
> section 408(d)(3)(A) exemption <u>was</u> <u>not</u> <u>available</u> <u>for</u> <u>these</u>
> <u>withdrawals.</u>  <u>Martin,</u> <u>supra</u> at 3.

**D.    IRA ROLLOVER MUST BE RETURNED IN 60 DAYS**

Ernest Willis also lost his entitlement to exempt funds in the IRA account to the extent he

failed to return them to the IRA account within sixty (60) days.  It is well-settled that IRA funds

lose their exempt status when the rollover contribution occurs more than sixty (60) days after the

---

[5] In <u>Martin v. Commissioner of Internal Revenue</u>, T.C. Memo 1992-331, 1992 WL
122468 (U.S. Tax Ct. 1992), the United States Tax Court stated that "as a general rule, checks
are considered income during the year in which they are received.  The receipt of a check is
tantamount to the receipt of cash, even if the check is not deposited or otherwise negotiated,
provided that its receipt is not subject to "substantial limitations" and there is no reason to
suppose that it will be dishonored."  <u>Martin</u>, <u>supra</u> at 335.

distribution, in violation of 26 U.S.C. §408(d)(1) and (d)(3); Sec. 1.408-4(b)(1) and (2) Income Tax <u>Regs.</u>; <u>Mostafa v. Commissioner of Internal Revenue</u>, T.C. Memo. 2006-106, 2006 WL 1319461 (U.S. Tax Ct. 2006); <u>Sternberg v. Internal Revenue Service</u>, 119 Fed. Appx. 338, 2005 WL 78775 (2d Cir. 2005); <u>Dirks v. Commissioner of Internal Revenue</u>, T.C. Memo 2004-138, 2004 WL 1277976 (U.S. Tax Ct. 2004); <u>Metcalf v. Commissioner of Revenue</u>, 62 Fed. Appx. 811 (9th Cir. 2003); <u>Welander v. Commissioner of Internal Revenue</u>, 92 T.C. No. 51, 92 T.C. 866 (United States Tax Ct. 1989).

In <u>Metcalf v. Commissioner of Internal Revenue</u>, 62 Fed. Appx. 811 (9th Cir. 2003), the Ninth Circuit Court of Appeals held that a taxpayer's claim for overpayment was properly denied by the United States Tax Court "because Metcalf's 1996 IRA distribution was taxable as income when Metcalf failed to roll over the distribution into another IRA account <u>within</u> 60 <u>days</u> of receipt. *See* 26 U.S.C. § 408(d)(1)(3)." <u>Metcalf</u>, <u>supra</u> at 811-812.

In <u>Welander v. Commissioner of Internal Revenue</u>, 92 T.C. No. 51, 92 T.C. 866 (United States Tax Court 1989), the court encountered the argument that since the 60-day rollover period did <u>not</u> expire for a transaction in 1985, that the transaction would not be taxable until 1986. The United States Tax Court rejected this argument. It stated that:

> unfortunately, petitioner's argument, does not follow the clear language of the statute. The general rule is that the IRA distributions are taxable in the year received. Section 408(d)(1). An exception to this rule is effective when the distribution is rolled over into another IRA within 60 days. This exception only applies if the distribution is actually PAID into another account. Section 408(d)(3)(A). If not, then the exception never applies and the general rules prevails." <u>Welander</u>, <u>supra</u>, at 866.

34

In <u>Mostafa  v. Commissioner of Internal Revenue</u>, T.C. Memo. 2006-106, 2006 WL 1319461 (U.S. Tax Ct. 2006), the taxpayer received a distribution from a First Star Bank IRA on February 26, 1996.  A contribution was made to the second Star Bank IRA on April 30, 1996, some 64 days later. <u>Mostafa</u>, <u>supra</u> at 2.  In <u>Mostafa</u>, <u>supra</u>, the United States Tax Court held that:

> the only facts in the record show that the <u>contribution was made more than 60 days after the date of distribution</u>. For this reason, the distribution does <u>not</u> qualify as a rollover distribution, and it must be included in the petitioner's gross income. See sec. 408 (d)(1), (3). <u>Mostafa</u>, <u>supra</u> at 2.

The <u>Mostafa</u> court recognized that to qualify as a rollover contribution, the IRA contribution must be rolled over into an IRA or other qualified plan within 60 days of the distribution. Sec 408 (d)(3); <u>Mishow v. Commissioner</u>, supra at 112, Sec. 1.408-4(b)(1) and (2), Income Tax Regs. <u>Mostafa</u>, <u>supra</u> at 2.

In <u>Dirks v. Commissioner of Internal Revenue</u>, T.C. Memo 2004-138, 2004 WL 1277976 (U.S. Tax Ct. 2004), the debtor conceded that he missed the 60-day deadline for paying the funds into a second IRA account.  However, he argued that he acted in good faith.  The United States Tax Court stated rejected this argument, noting that:

> we disagree with petitioner's argument that he acted reasonably and in good faith with respect to the subject matter of the deficiency. Petitioner is a seasoned attorney who filed his 2000 tax return with the knowledge and understanding of the relevant provision of section 408. The fact that he may have intended earnestly to meet the 60-day rule did not excuse him from not reporting the withdrawals as income when he failed to meet that rule. Nor do we believe that reasonableness and good faith may be found in petitioner's litigating position that he substantially complied with the 60-day rule by paying the amount of withdrawals into the second IRA contemporaneously with the closing of his escrow. <u>Dirks</u>, <u>supra</u> at 5.

In <u>Dirks</u>, <u>supra</u>, the United States Tax Court stated that the 60-day rollover deadline is a

"fundamental element of the statutory requirements for an IRA rollover contribution" and a "clear statutory prerequisite".  <u>Dirks</u>, <u>supra</u> at 3.  The <u>Dirks</u> court reasoned that:

> all fixed deadlines seem harsh because all can be missed by a whisker-by a day (<u>United States v. Locke</u>, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)) or for that matter by an hour or a minute. They are arbitrary by nature...The legal system lives on fixed deadlines; their occasional harshness is redeemed by the clarity which they impart to legal obligation...there is not general judicial power to relieve from deadlines fixed by legislatures...(<u>Prussner v. United States</u>, 896 F.2d at 222-223.] <u>Dirks</u>, <u>supra</u> at 4.

In <u>Dirks</u>, <u>supra</u>, the United States Tax Court concluded that:

> we are not at liberty in this case to ignore the 60-day deadline that Congress has prescribed clearly and unequivocally in section 408(d)(3)(A)(I). Any modification to that deadline is a legislative and not a judicial function. See <u>J.E. Riley Inv. Co. v. Commissioner</u>, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); <u>Xi v. United States</u>, 298 F.3d 832, 839 (9th Cir.2002); <u>Prussner v. United States</u>, supra at 2220223; <u>Kern v. Granquist</u>, 291 F.2d 20, 33 (9th Cir.1961). <u>Dirks</u> supra at 4.

## E.    <u>AN IRA IS NOT EXEMPT WHEN IT IS FUNDED BY A ROLLOVER FROM ANOTHER NON-EXEMPT IRA</u>

When the proceeds of an IRA account include funds which are rolled over from a non exempt pension plan, the IRA is also not exempt under Fla.Stat. §722.21, 26 U.S.C. §4975 and 26 U.S.C. §401.  <u>See</u> <u>In re Hughes</u>, 293 B.R. 528 (Bkrtcy. Ct. M. D. Fla. 2003).

In <u>re Banderas</u>, 236 B.R. 837 (Bkrtcy. Ct. M. D. Fla. 1998), on January 3, 1997, the Debtor created an IRA account with a $794,713.12 rollover from his Profit Sharing Plan.  In <u>Banderas</u>, <u>supra,</u> the United States Bankruptcy Court for the Middle District of Florida held that:

> an individual retirement account is <u>not</u> tax exempt under the Internal Revenue Code, however, even if it is otherwise qualified under the Internal Revenue Code, if the funds in the IRA were transferred from a non-qualified plan. <u>Banderas</u>, <u>supra</u>, at 840. <u>See also</u>, <u>Baetens</u> v. C.I.R., 777 F.2d 1160, 1167 (6th Cir. 1985).

In the instant case, the debtor funded $50,000 of his Fidelity Federal IRA with funds from his improperly operated and disqualified IRA account at Merrill Lynch.

Mr. Willis identified a $50,000 IRA transfer request that was, Plaintiff's Composite Exhibit 21 Bates stamped IS 72307-00137, from his Merrill Lynch IRA account 751-74781 to Fidelity Federal Bank. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 71, lines 18 to 25 and page 72, lines 1 to 2.   He testified that all the money used to fund the Fidelity Federal IRA was funded by his account at Merrill Lynch. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 72, lines 3 to 6.

Mr. Willis testified that he believes he now has $140,000 in his Fidelity Federal account. See Rule 2004 Examination of Ernest W. Willis, December 11, 2007, page 72, lines 7 to 9.

### G.  UNDER 26 U.S.C. §4975 THE ENTIRE IRA IS NOT QUALIFIED

Under 26 U.S.C. §4975, a violation renders the entire IRA or Pension Plan as non-qualifying. The federal courts have recognized that when the IRA account is utilized, in violation of 26 U.S.C. §4975, the entire exemption is forfeited.  For example, in, In re Hughes, 293 B.R 528 (Bkrtcy. Ct. M. D. Fla. 2003), the United States Bankruptcy Court for the Middle District of Florida found that:

> whether or not an account qualifies as a tax exempt IRA account is dealt with in 26 U.S.C. §408, specifically sub clause (e)(2)(A). This sub clause provides if during the taxable year, the individual holder of the account engages in any transaction which is prohibited by 26 U.S.C. § 4975, *such* *account* *ceases* *to* *be* *an* *individual* *retirement* *account* *as* *of* *the* *first* *day* *of* *such* *taxable* *year* (emphasis supplied). Hughes, supra at 530.

In <u>Hughes</u>, <u>supra</u>, the court held that there was no genuine issues of material fact and that the Trustee is "entitled as a matter of law to an Order sustaining his objection to the claim of exemption. All of the funds were treated as non-exempt.  The Trustee was entitled to an Order "determining that the funds in the Schwab IRA account no. 4560-0258 are subject to administration by the Trustee." <u>Hughes</u>, <u>supra</u> at 530.

However, in <u>Beardsley v. Admiral Insurance Company</u>, 647 So.2d 327 (Fla. 3rd DCA 1994), the Third District Court of Appeal Court of Appeal noted that "the commingling of a non-exempt deposit with an exempt account will automatically cause the entire account to lose its exempt status." <u>Beardsley</u>, <u>supra</u>, at 329. There, the Third District Court of Appeal took the view that even when non-exempt funds are commingled with exempt funds in a bank account, "<u>it is impossible to separate out exempt from non-exempt funds, the general rule is that an exemption cannot lie</u>.  <u>Beardsley , supra,</u> at 329.

## CONCLUSION

For the reasons stated above, based on the undisputed material facts, this Court should enter a partial summary judgment, in favor of the Plaintiff on the issue that the IRA account at Merrill Lynch and Fidelity Federal Bank and Trust are not exempt under Florida Statute §222.21, 26 U.S.C. §4975 and 26 U.S.C. §408.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

**THE RAKUSIN LAW FIRM,**
**A PROFESSIONAL ASSOCIATION**
Stephen Rakusin, Esq.
Fla. Bar No. 183408
Wachovia Tower
One East Broward Blvd., Suite 444
Fort Lauderdale, Fl  33301
(954) 356-0496 Telephone
(954) 356-0416 Facsimile

**EHRENSTEIN CHARBONNEAU**
**CALDERIN**
Mellon Financial Center
1111 Brickell Avenue, Suite 2915
Miami, FL 33131
(305) 722-2002 Telephone
(305) 722-2001 Facsimile


By:____/s/_____
ROBERT CHARBONNEAU
Florida Bar No.: 968234

39