UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

ERNEST W. WILLIS,

    Debtor.
_____/

CASE NO.:07-11010-BKC-PGH
Chapter 7 Proceeding

## NOTICE OF FILING AFFIDAVIT OF EXPERT WITNESS SHARON QUINN DIXON, ESQ.

**NOTICE IS HEREBY GIVEN** that creditor RED REEF, INC., by and through its undersigned counsel, gives notice of the filing of the Affidavit of Expert Witness Sharon Quinn Dixon, Esq. in support of *Motion of Creditor, Red Reef, Inc. For Partial Summary Judgment On Issue of Application of 11 U.S.C. §522, 26 U.S.C. §4975 and 26 U.S.C. §408 to Debtor's Claimed IRA Exemption* filed at Court Paper Number: 189, and attaches the original of same hereto.

    Stephen Rakusin, Esquire
    Fla. Bar No.183408
    **THE RAKUSIN LAW FIRM,**
    **A PROFESSIONAL ASSOCIATION**
    Wachovia Tower - Suite 444
    One East Broward Boulevard
    Fort Lauderdale, Florida 33301
    (954) 356-0496 (telephone)
    (954) 356-0416 (facsimile)

    Robert Charbonneau, Esquire
    **EHRENSTEIN CHARBONNEAU CALDERIN**
    Attorneys for Red Reef
    2915 Mellon Financial Center
    1111 Brickell Avenue
    Miami, Florida 33131
    T: 305.722.2002
    F: 305.722.2001
    By:__/s/_____
        Robert Charbonneau
        Fla. Bar No. 968234

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re*:

ERNEST W. WILLIS,

    Debtor.
_____/

CASE NO.: 07-11010-BKC-PGH
Chapter 7 Proceeding

## AFFIDAVIT OF EXPERT WITNESS SHARON QUINN DIXON, ESQ.

**STATE OF FLORIDA**

**COUNTY OF MIAMI-DADE**

BEFORE ME, the undersigned authority, personally appeared SHARON QUINN DIXON, who after being duly sworn, under oath, and asserts that the following facts are true:

1. I am over the age of eighteen (18) years old and have personal knowledge of the matters set forth herein.

2. I am Board Certified by the Florida Bar in the area of tax law. I am in good standing with the Florida Bar and have been licensed to practice law in the State of Florida since 1982.

1

3. I am a shareholder in the law firm Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., which has offices located in Ft. Lauderdale, Miami, and Tampa, Florida.

4. I graduated from Bradley University with a bachelors degree, *summa cum laude*, in 1978.

5. I received my Juris Doctor degree, *cum laude*, from the University of Miami School of Law in 1982.

6. I subsequently received an LL.M. in Taxation from the University of Miami School of Law in 1988.

7. I am a member of the United Way of Miami-Dade Finance Committee and the American Bar Association Tax Section, Employee Benefits Committee.

8. I am a member of the Florida Bar Real Property, Probate and Trust Law Section.

9. I am a member and past president of the South Dade Estate Planning Councils.

10. I am a member and past president of the South Florida Employee Benefits Council.

11. I have practiced law in the following areas:

   a. Qualified retirement plans
   b. Medical and other welfare benefit plans
   c. COBRA and Section 125-Cafeteria Plans
   d. Merger and acquisition due diligence reviews
   e. Tax and ERISA compliance and litigation matters
   f. Incentive and nonqualified stock option plans
   g. Nonqualified deferred compensation and supplemental retirement plans
   h. Estate planning, including wills and trusts
   i. Income and estate planning for retirement benefits

12. I am a frequent lecturer on issues relating to tax and employee benefit laws and have most recently lectured on employee benefit plan due diligence reviews.

13. I have been retained as an expert witness in the following cases: In Re: Lewis J. Hecker, Case No. 99-34954-BKC SHF; In Re: Thomas Nader, Case No.:00-32512-BKC-PGH; Thomas Stead v. Huttig Sash & Door Co., Inc., Case No. 99-319-CIV-ORL-18 (M.D. Fla.) and Thomas Bruce v. Huttig Sash & Door Co., Inc., Case No. 99-6364-Civ-Moore (S.D. Fla.). I presented written expert reports in these four cases. I gave deposition testimony in the *Hecker*, *Stead*, and *Bruce* cases.

14. I am listed in The Best Lawyers in America for the years 2005-2008, Chambers USA: America's Leading Lawyers for Business for the years 2005-2007, Florida Super Lawyers 2007, and Florida Trend's Florida Legal Elite in 2006.

15. I am rated AV rated by Martindale-Hubbell.

16. I am the author of the following publications: *Whose Lawyers Are We? How the Attorney-Client Privilege Applies to Employee Benefit Plans*, Panel Publishers 401(k) Advisor, April 2002; *Egelhoff Prompts New Look at Beneficiary Provision*, Panel Publishers 401(k) Advisor, November 2001; *Lessening the Sting of the COBRA Bite*, PEO Insider, July 2000; Co-Author, *ERISA 404(c): A Trap for the Unwary*, PEO Insider, March 1999; *May the PEO's Client Grant Incentive Stock Options to Worksite Employees?*, PEO Insider, July 1998; *Health Reform Act Increases Administrative Burden on Group Health Plans*, The ProEmp Journal, November 1996; Co-Author, *Protecting Client Assets*, Journal of Accountancy, December 1995.

17. I have made several presentations between the years 1995 through 2007. A list of such presentations is attached as an Exhibit hereto.

18. I have been retained by The Rakusin Law Firm to analyze certain IRA records of Ernest W. Willis (sometimes, the "Debtor") and determine whether the Debtor's IRA is exempt from taxation.

3

19. In preparing my opinion, I reviewed the following documents that I received from The Rakusin Law Firm:

    a. Brokerage accounts summaries for the Ernest Willis IRA account;
    b. Analysis of the IRA account transactions of Merrill Lynch;
    c. Records bates stamped numbers IS72307-00001 to IS 72307-00320 (1 disc);
    d. Certain records for the non-IRA (684-10592 and 751-30595) and IRA (684-79307 and 751-74781) accounts for Ernest Willis (1 disc);
    e. Ernest Willis' deposition transcripts dated May 24, 2007 and December 11, 2007;
    f. Transcript of trial testimony of Ernest Willis, dated February 18, 2004.

### Engagement

20. I was informed by attorney Stephen Rakusin that the Debtor listed his individual retirement account ("IRA") with Merrill Lynch Pierce Feiner & Smith ("Merrill Lynch") on a schedule to his federal bankruptcy filing indicating the Debtor's position that his IRA account with Merrill Lynch is exempt from the claims of his creditors under applicable Florida law. I was retained to analyze whether the Debtor's IRA account with Merrill Lynch is exempt from taxation under Section 408 of the Internal Revenue Code of 1986, as amended (the "Code").

### Summary of Relevant Facts

21. Ernest W. Willis established the IRA with Merrill Lynch (the "Merrill Lynch IRA") no later than late-1993. In late 1993, Mr. Willis effected transfers to his Merrill Lynch IRA directly from other IRA accounts that he maintained with other financial institutions.

22. In December 1993, Mr. Willis and/or his wife, Sunday Willis, directed that Merrill Lynch transfer $700,000 from the Merrill Lynch IRA to an account with Sun Bank maintained in their joint names. In mid-December 1993, Mr. Willis acquired rights as assignee under a note and mortgage owned by Ocean One North, Inc., a Florida corporation of which Mr. Willis owned fifty percent (50%) of the issued and outstanding stock ("Ocean One"), in exchange for payment of approximately $800,000.

4

23. On June 6, 1997, Mr. Willis directed Merrill Lynch to transfer $180,000 to another account at Merrill Lynch owned jointly by Mr. Willis and his wife (the "Merrill Lynch joint account"). On August 8, 1997, 63 days later, there was a deposit to Mr. Willis' Merrill Lynch IRA in the amount of $180,000 that is noted on Merrill Lynch records as "Rollover Deposit." On June 9, 1997, there were two deposits totally $240,000 to the Merrill Lynch IRA for which the Merrill Lynch records indicate "Rollover Deposit."

24. On August 8, 1997, Mr. Willis directed Merrill Lynch to transfer $252,000 to the Merrill Lynch joint account. On October 8, 1997, i.e., 61 days later, there was a deposit to Mr. Willis' Merrill Lynch IRA in the amount of $252,000 that is noted on Merrill Lynch records as "1997 Nondeductible Contribution."

25. On October 8, 1997, Mr. Willis directed Merrill Lynch to transfer $270,000 to the Merrill Lynch joint account. On December 9, 1997, i.e., 62 days later, there was a deposit to Mr. Willis' Merrill Lynch IRA in the amount of $270,000 that is noted on Merrill Lynch records as "Transfer Deposit." On November 18, 1997 there was a deposit to the Merrill Lynch IRA in the amount of $115,733 that is noted on the Merrill Lynch records as "Transfer Deposit."

26. On December 8, 1997, Mr. Willis directed Merrill Lynch to transfer $282,000 to the Merrill Lynch joint account. On February 9, 1998, i.e., 62 days later, there was a deposit to Mr. Willis' Merrill Lynch IRA in the amount of $282,000 that is noted on Merrill Lynch records as "Transfer Deposit."

27. On February 6, 1998, Mr. Willis directed Merrill Lynch to transfer $285,000 to the Merrill Lynch joint account. On April 8, 1998, 61 days later, there was a deposit to Mr. Willis Merrill Lynch IRA in the amount of $285,000 that is noted on the Merrill Lynch records as "Rollover

5

Deposit." On March 9, 1998, there was a deposit to Mr. Willis' Merrill Lynch IRA in the amount of $66,475 that is noted on Merrill Lynch records as "Transfer Deposit.

28. Mr. Willis testified to his understanding of the rules of the Internal Revenue Code of 1986, as amended (the "Code") concerning distributions from an IRA and rollover of distributed funds as follows: "That you could take the money out of your IRA for a period of not more than 60 days and put it back into the IRA and have no penalty." Ernest W. Willis December 11, 2007 Deposition Transcript at page 62. Mr. Willis also testified that the general purpose of taking funds from the Merrill Lynch IRA and transferring the funds back to the Merrill Lynch IRA during 1997 and 1998 was so that he would have "use of the funds." Ernest W. Willis December 11, 2007 Deposition Transcript at page 99. Mr. Willis acknowledged that during 1997 and through April 1998, he needed money for Ocean One, and he "made loans to the corporation to float it while [he was] trying to get the property sold." Ernest W. Willis December 11, 2007 Deposition Transcript at page 55.

29. Mr. Willis testified that he has not filed federal income tax returns for the period 1995-2006. Ernest W. Willis December 11, 2007 Deposition Transcript at page 13. Mr. Willis thus has not yet reported to the Internal Revenue Service any taxable income attributable to distributions from the Merrill Lynch IRA since at least 1995.

## Discussion of Applicable Law

30. Every IRA, by its terms, must meet certain requirements in order for the IRA to be considered "qualified" under Section 408 of Code. The first requirement of an IRA involves contributions limits. Code Section 408(a)(1) stated, before tax law changes enacted in 2001 (none of which is relevant here): "Except in the case of a rollover contribution described in subsection

6

(d)(3)..., no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000 on behalf of any individual."

31. Code Section 408(d)(3) provides the rules for what is known as a "rollover" contribution. If all the rules described in Code Section 408(d) are followed with respect to an attempted rollover contribution, then the original distribution to the IRA account holder will not be a taxable distribution and the rollover contribution will be permitted under Code Section 408(a)(1), even though exceeds the usual annual contribution limit to an IRA (which was $2,000 during the period 1993 -1998). In order to satisfy the rules of Code Section 408(d), the rollover contribution must be deposited within 60 days of a distribution to the IRA account holder. In addition to the 60-day requirement, Code Section 408(d)(3) also requires that the IRA account holder not have rolled over an earlier distribution from the IRA during the one-year period beginning on the date of the distribution.[1]

32. Code Section 4975(c)(1) prohibits certain transactions between an IRA and a "disqualified person," which is defined in Code Section 4975(e)(1) to include the IRA account holder and certain persons and entities to whom the IRA account holder is closely related.[2] Disqualified persons include any corporation or partnership of which the IRA account holder owns, directly or indirectly, 50% or more of the outstanding capital or profits interest.

Among the transactions prohibited by Code Section 4975 is any *direct or indirect* (emphasis added):

---

[1] The rules of Code Section 408(d) described here essentially are the same today as they were in 1993 - 1998.

[2] Receipt by the IRA account holder of a benefit to which he is entitled under the IRA is not a prohibited transaction, pursuant to Code Section 4975(d)(9).

7

- sale or exchange of property between an IRA and a disqualified person;
- lending of money from a IRA to a disqualified person; and
- use by a disqualified person of the income or assets of the IRA.

33. Code Section 408(e)(1) states, as it has for many years, including the period 1993 – 1998, that "an individual retirement account is exempt from taxation unless it ceases to be an individual retirement account by reason of paragraph (2) . . . ." Code Section 408(e)(2) states, as it has for many years, including the period 1993 – 1998, that, if a prohibited transaction occurs between an IRA and a disqualified person, then the account "ceases to be an individual retirement account as of the first day of such taxable year."

34. Code Section 4973 imposes an excise tax on excess contributions to an IRA equal to six percent (6%) for each year that an excess contribution remains in the IRA. An excess contribution generally is a contribution that exceeds all applicable limits of the Code for contributions to an IRA.

35. Many cases, revenue rulings and private letter rulings expand on the Code's rules governing IRAs. I reviewed and relied on various rulings and cases in the course of my analysis of this matter.

### Opinions

36. The acquisition by Mr. Willis in December 1993 of the note and mortgage issued by Ocean One, a disqualified person with respect to Mr. Willis' Merrill Lynch IRA, constituted use by Mr. Willis, also a disqualified person with respect to the Merrill Lynch IRA, of the income or assets of the Merrill Lynch IRA, which is a prohibited transaction, within the meaning of Code Section 4975. As a result, the IRA ceased to be exempt from taxation, pursuant to Code Section 408(e)(1), as of January 1, 1993.

37. The multiple payments from the Merrill Lynch IRA to Mr. Willis in 1997, coupled with the multiple transfers and contributions to the Merrill Lynch IRA during 1997, constituted (a) loans by the Merrill Lynch IRA to Mr. Willis and/or Ocean One and/or (b) use by Mr. Willis and/or Ocean One of the income or assets of the Merrill Lynch IRA, both of which are prohibited transactions, within the meaning of Code Section 4975. As a result, to the extent that the Merrill Lynch IRA had not already ceased to be exempt from taxation effective January 1, 1993, the IRA ceased to be exempt from taxation, pursuant to Code Section 408(e)(1), as of January 1, 1997.

38. The multiple payments from the Merrill Lynch IRA to Mr. Willis in 1998, coupled with the multiple transfers and contributions to the Merrill Lynch IRA during 1998 constituted (a) loans by the Merrill Lynch IRA to Mr. Willis and/or Ocean One and/or (b) use by Mr. Willis and/or Ocean One of the income or assets of the Merrill Lynch IRA, both of which are prohibited transactions, within the meaning of Code Section 4975. As a result, to the extent that the Merrill Lynch IRA had not already ceased to be exempt from taxation effective January 1, 1993 or January 1, 1997, the IRA ceased to be exempt from taxation, pursuant to Code Section 408(e)(1), as of January 1, 1998.

39. To the extent that the Merrill Lynch IRA had not already ceased to be exempt from taxation effective January 1, 1993, January 1, 1997 or January 1, 1998, the contributions to the Merrill Lynch IRA on August 8, 1997, October 8, 1997, November 18, 1997, December 8, 1997, February

9, 2008, March 9, 1998, April 8, 1998 and June 5, 1998 did not comply with the rollover rules described in Code Section 408(d) and were excess contributions to the Merrill Lynch IRA.

Dated: December 26, 2007

/SHARON QUINN DIXON

**SWORN TO AND SUBSCRIBED** before me by Sharon Quinn Dixon, who after having been duly sworn stated under oath that the above statements are true and correct and who is personally known to me ~~or has produced~~ _____ ~~as identification~~ and who did take an oath on this 26th day of December, 2007.

Notary Public,
State of Florida at Large

My Commission Expires:

Carole I. Amster
Commission # DD267971
Expires: Jan. 8, 2008
Aaron Notary
1-800-350-5151

EXHIBIT TO AFFIDAVIT OF
SHARON QUINN DIXON
DATED DECEMBER 26, 2007

**Presentations (1995 - Present- most recent first):**

*Avoiding the Morning After: Tax Planning When Buying and Selling a Business" - Employee Benefits Liabilities in Mergers and Acquisitions*, The Florida Bar Tax Section- Orlando, Florida, October 19, 2007

*Highlights of Code Section 409A*, CapTrust Retirement Plan Consulting Helping Your Retirement Plan Blossom, Fort Lauderdale, Florida, September 19, 2007

*You Cant Play in the Employee Sandbox Without Understanding the Acronyms*, Stearns Weaver, et al. Sixteenth Annual Employment Law Seminar, Miami, Florida May 9, 2007

*Update on Employee Benefits For Tax Exempt Organizations*, The Florida Bar - Southeastern Non-Profit Symposium, Coral Gables, Florida, April 26, 2007

*The Role of the Trust Protector*, Miami Beach Estate Planning Group, January 9, 2007,

*"Must Knows" for Year End Benefits Planning*, Stearns Weaver, et. al. Breakfast seminar, October 17, 2006,

*Congress Has Done it Again - Key Provisions of the Pension Protection Act of 2006,*, CapTrust, Retirement Plan Consulting, Coral Gables, Florida, August 17, 2006

*HIPAA Privacy and Estate Planning* - Yes it *Does* Mean Something to You! May, 18, 2006, SunTrust Bank

*Dealing with the Details of Divorce & Death in Employee Benefit Plans,* - May 16, 2006, Stearns Weaver, et al. Sixteenth Annual Employment Law Seminar

*Effect of Section 409A's Nonqualified Deferred Compensation Rules on Section 457(f) Plans*, ASPPA Benefit Conference of the South, Atlanta, Georgia, March 20, 2006

*HIPAA Privacy and Estate Planning*, Greater Miami Estate Planning Council, October 20, 2005

*HIPAA Privacy and Estate Planning*, Miami Beach Estate Planning Group, July 12, 2005

*The Misnomer That is ERISA and Other Fun Facts About COBRA and Cafeteria Plans!*, South Florida Compensation and Benefits Association, June 9, 2005

*The Three Things You Absolutely Need to Know about ERISA, COBRA and Cafeteria Plans Are ...?*, co-presenter, Stearns Weaver, et al. Fifteenth Annual Employment Law Seminar, May 11, 2005

*The Best Vehicles to Get You Where You're Going,* co-presenter, Planned Giving Council of Miami-Dade and Leave a Legacy Sweet Charity Seminar, March 16, 2005

*IRAs in the Estate Plan,* Florida Institute of Certified Public Accountants Estate and Financial Planning Conference, December 2, 2004

*So You Think You Don't Need a Lawyer?,* Women's Chamber of Commerce, October 20, 2004

*COBRA's Latest Bite - Be Prepared for New Rules Effective 2005,* Stearns Weaver, et al. Breakfast Seminar, August 25, 2004; Hospitality Human Resources Association of Broward County, September 1, 2004; reviewed by The South Florida Business Journal, see "Lawyers' tips help avoid COBRA's bite for businesses," Broward Edition, September 20, 2004

*No Good Deed Goes Unpunished – Avoid Losing Benefits for the Inactive Employee,* Stearns Weaver, et al. Fourteenth Annual Employment Law Seminar, May 13, 2004

*Privacy Issues in the Workplace,* Greater Miami Society for Human Resources Management, May 4, 2004

*FAQs for 401(k) Plans - Fiduciary Liability,* South Florida Hospitality Human Resources Association, August 13, 2003

*Leapfrogging Life Insurance – From Ira to Qualified Plan to ILIT Does it Work?,* Miami Beach Estate Planning Group, August 12, 2003

*The 401(k) Treadmill - Keeping Pace with Emerging Trends; Fiduciary Issues Affecting 401(k) Plans,* International Society of Certified Employee Benefit Specialists, July 16, 2003

*Just the FAQs Ma'am: Answers to Frequently Asked Questions About 401(k), Cafeteria, Severance, and other Benefit Plans,* Stearns Weaver, et al. Thirteenth Annual Employment Law Seminar, May 7, 2003

*Are You HIP? Implementation of Employee Health Information Privacy Rules Under HIPAA,* Stearns Weaver, et al seminar, December 3, 2002; February 5, 2003

2

*Nuts and Bolts of 401(k) Plans in Florida,* Lorman Education Services, Dania Beach, Florida November 12, 2002; West Palm Beach, Florida November 21, 2002; Miami, Florida December 5, 2002

*ERISA Does Mean Something to You – Fiduciary Considerations for Every Professional,* Greater Miami Estate Planning Council, October 17, 2002

*Wake up Call for Employers – They Are Responsible for Their 401(k) Plan Investments!,* Miami-Dade Financial Planning Association, September 10, 2002

*Lessons From Enron for Your 401(k) Plan; Enron Prompts Review of ERISA 404(c) Compliance Requirements; Enron Fuels Focus on the Role of Employer Stock in Retirement Plans,* Stearns Weaver, et al. Twelfth Annual Employment Law Seminar, May 7, 2002

*Whose Lawyers Are We? How the Attorney-Client Privilege Applies to Employee Benefit Plans,* Stearns Weaver, et. al. Eleventh Annual Employment Law Seminar, May 8, 2001, Miami, Florida

*Estate Planning for Retirement Benefits Becomes Almost Sane Under New IRS Regulations,* Fiduciary Trust International Fiduciary Forum, April 25, 2001, Miami, Florida

*Retirement Plans, QDROs, IRAs and Their Tax Consequences,* Lorman Education Services' Minimizing the Tax Consequences of Divorce in Florida seminar, September 28, 2000, Miami, Florida

*New Twists on Personal Services Income,* Greater Miami Tax Institute, July 12, 2000, Miami, Florida

*So You Think You Are Not Responsible For Your Employees' 401(k) Plan Investment Choices? Think Again - Review of ERISA 404(c) Compliance Requirements,* Stearns Weaver, et. al. Tenth Annual Employment Law Seminar, May 2, 2000, Miami, Florida

*Electronic Communications, Transactions and Record Retention by Employee Benefit Plans,* Stearns Weaver, et. al. Tenth Annual Employment Law Seminar, May 2, 2000, Miami, Florida

*HIPAA and ADA Issues Affecting the Professional Employer Organization's Prospective Client Due Diligence and Client Termination,* National Association of Professional Employer Organizations, NAPEO Spring CEO Forum, April 26-27, 2000, Atlanta Georgia.

*COBRA Issues Affecting Professional Employer Organizations,* National Association of Professional Employer Organizations, Legal & Legislative Conference 2000, March 15, 2000, Washington, D.C.

3

*Retirement Plans, QDROs, IRAs and Their Tax Consequences*, Dade County Bar Association, January 25, 2000, Miami, Florida.

*Estate Planning for Retirement Benefits - The Good, The Bad and The Very Ugly*, Dade County Bar Association New Tax Lawyers Committee, September 1, 1999, Miami, Florida.

*Retirement Plans, QDROs, IRAs and Their Tax Consequences*, Professional Education Systems, Inc. Florida Tax Consequences of Divorce Seminar, June 8-9, 1999, Miami and West Palm Beach, Florida.

*401(k) Plan Update, Including Safe Harbor, Discrimination Testing, Correction of Errors, Plans Loans and Employer Fiduciary Problems*, Stearns Weaver, et al. Ninth Annual Employment Law Seminar, May 18, 1999, Miami, Florida.

*Qualified Plan Update - Revisiting Qualification, Income and Estate Planning Issues*, South Dade Estate Planning Council, March 25, 1999, Coral Gables, Florida.

*The PEO As Successor for FICA/FUTA Purposes - Precursor to Other Successor Liability?*, National Association of Professional Employer Organizations 1999 Attorney Day, March 10, 1999, Washington, D.C.

*S Corporation ESOPs*, Greater Miami Tax Institute, February 10, 1999, Miami, Florida.

*Rules, Rules and More Rules - Employee Benefit Regulatory Update*, Stearns Weaver, et. al. Eighth Annual Employment Law Seminar, May 7, 1998, Miami, Florida.

*The FICA/FUTA Successor Squeeze - Do PEOs Fit?*, National Association of Professional Employer Organizations 1998 Attorney Day, March 11, 1998, Washington, D.C.

*Charitable Contributions Using Qualified Plans and IRAs*, Planned Giving Council of Dade County, February 10, 1998, Miami, Florida.

*Charitable Bequests Involving Retirement Funds*, Florida Institute of Certified Public Accountants, November 14, 1997, Palm Beach, Florida.

*What do Microsoft, Varity and the Small Business and Health Insurance Reform Acts Mean to Your Employee Benefits Plan?*, Stearns Weaver, et. al Seventh Annual Employment Law Seminar, April 15, 1997, Miami, Florida.

*TAM 9604001-One Year Later and Still No Closer to an Answer*, Society of Certified Life Underwriters and Chartered Financial Consultants, February 7, 1997, Miami, Florida.

4

*Evaluate Employee Benefit Plan Compliance Under the Tax Code and ERISA Before the IRS or DOL Comes Knocking*, International Banking Operations Association, November 21, 1996, Miami, Florida.

*The IRS Doesn't Always Have Soft Spot for Spouses-Advance Planning Considerations for Retirement Funds*, Florida Institute of Certified Public Accountants Estate Planning Conference, November 8, 1996, Fort Lauderdale, Florida.

*Evaluate Employee Benefit Plan Compliance Under the Tax Code and ERISA Before the IRS or DOL Comes Knocking*, Stearns Weaver, et. al. Six Annual Employment Law Seminar, May 1, 1996, Miami, Florida.

*Too Much, Too Soon, Too Little, Too Late - Wading Through the Morass of Rules Affecting Estate Planning for Pension and IRA Benefits*, Florida Bar Real Property Probate and Trust Law Section, April 23-24, 1996, Fort Lauderdale and Tampa, Florida.

*Non-Qualified Deferred Compensation: SERPs, Excess Benefit and Top Hat Plans*, Florida Institute of Certified Life Underwriters, March 24, 1996, Miami, Florida.

*Don't Let Benefits Become Burdens - Dealing with Employees' Special Circumstances in Administering PEO 401(k) Plans*, National Association of Professional Employer Organizations 1995 Annual Convention, September 22, 1995, Colorado Springs, Colorado.

*IRAs and Qualified Pension Plans: A Practical Guide*, Florida Bar Real Property Probate and Trust Law Section 1995 Attorneys/Trust Officer Liaison Conference, June 9, 1995, Palm Beach, Florida.

*Estate Planning for Retirement Benefits*, Florida Institute of Certified Public Accountants, Florida State University Accounting Conference, May 18, 1995, Tallahassee, Florida.

*Don't Let Benefits Become Burdens - Dealing with Employees' Special Circumstances in Administering Benefit Plans*, Stearns Weaver, et al. Fifth Annual Employment Law Seminar, April 11, 1995, Miami, Florida.

*Non-Qualified Deferred Compensation: SERPS, Excess Benefit and Top Hat Plans*, American Society of Certified Life Underwriters and Charter Financial Consultants, March 29, 1995, Miami, Florida.

5