1

1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF FLORIDA

2

3                      Judge Paul G. Hyman, Jr.

4

5

   In Re:

6
                                Case No. 07-11010-BKC-PGH

7

8

   ERNEST W. WILLIS,

9
            Debtor.

10  _____

11  HEARING TO RESOLVE THE PROPRIETY OF THE DEBTOR'S CLAIM OF
    TBE OWNERSHIP IN DEBTOR AND SPOUSE'S RESIDENCE (179)

12  ORDER TO SHOW CAUSE (170)

13

14

15                          January 3, 2008

16

17

    The above entitled cause came on for hearing before the

18  HONORABLE PAUL G. HYMAN, JR., the Chief Judge in the
    UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN

19  DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West
    Palm Beach, Palm Beach County, Florida, on January 3,

20  2008, commencing on or about 11:30 a.m., and the
    following proceedings were had:

21

22

23

24      Reported By:  Jacquelyn Ann Jones, Court Reporter

25              OUELLETTE & MAULDIN COURT REPORTERS
                        (305) 358-8875

2

```
 1
        APPEARANCES:
 2

 3      KEVIN GLEASON, P.A.
        By:  KEVIN C. GLEASON, ESQUIRE
 4      On behalf of the Debtor

 5
        EHRENSTEIN CHARBONNEAU CALDERIN
 6      By:  ROBERT P. CHARBONNEAU, ESQUIRE
        On behalf of Red Reef
 7

 8      THE RAKUSIN LAW FIRM, P.A.
        By:  STEPHEN RAKUSIN, ESQUIRE
 9      Co-counsel on behalf of Red Reef

10
        Also Present:
11
        Ms. Allie Blye
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    THE COURT:  Good morning.  Please be seated.  Willis.
      Appearances for therecord.
 2                MR. CHARBONNEAU:  Yes, Your Honor.  Good

 3    morning.  I'm Robert Charbonneau.  I'm with Ehrenstein,

 4    Charbonneau, Calderin.  And with me is my co-counsel for

 5    this matter, Your Honor, Stephen Rakusin.  And also

 6    present at our counsel table is Allie Blye, who is a law

 7    clerk at Mr. Rakusin's office.

 8                THE COURT:  Good.  Why don't we resolve the

 9    motion for the order.  Mr. Gleason.

10                MR. GLEASON:  Thank you, Your Honor.  Kevin

11    Gleason for Mr. Willis, and to the extent that

12    Mrs. Willis' interests are involved today, I also

13    represent her.

14                THE COURT:  I didn't hear you.

15                MR. GLEASON:  To the extent that Mrs. Willis'

16    interests are involved today, I also represent her.

17                THE COURT:  Okay.  Because of the TBE issue.

18                MR. GLEASON:  Yes, Your Honor.

19                THE COURT:  Let's resolve the order to show

20    cause first, gentlemen.  I would like to know why you

21    didn't comply with my court order.

22                MR. CHARBONNEAU:  Your Honor, I would like to

23    go ahead and, per the agreement with Mr. Gleason, and

24    take the lead on that, attempt to show cause.

25                Your Honor, I was in Washington DC the week
```

1    preceding the October 9th hearing with my 13 year old

2    daughter, she had a field trip.

3           When I was in Washington Mr. Gleason circulated

4    a stipulation of facts to Mr. Bakst and myself.  It was

5    fairly extensive.  I looked at it, and I think Ms. Ries,

6    on behalf of Mr. Bakst's office, and both I and by

7    e-mail, I think Wednesday or Thursday of that week,

8    replied indicating that we both needed more time.

9           Your Honor, I was really uncertain of what was

10   up for hearing on the 29th.  My office regularly checks

11   the judges' calendars every week in order to determine --

12   make sure that we have captured everything on our

13   calendar.

14          And while our own internal calendar showed that

15   the debtor's motion for partial summary judgment under

16   522(q), and our response and cross motions on (o) were

17   up, it wasn't on the Court's calendar.  And in fact, when

18   we showed up for hearing the Court indicated as such to

19   us, it's not on my calendar, I only have the trustee's

20   motion for -- the debtor's motion for summary judgment on

21   the trustee's motion.

22          In any event, I was in Broward Bankruptcy Court

23   the morning of the hearing, if you recall the hearing in

24   the afternoon, and I ran into Mr. Gleason and we agreed

25   to go back to his office to resolve the stipulation.

```
 1            We went back to his office and started working
 2    on the stipulation.  And again, there were a fair amount
 3    of issues -- at least I had a fair amount of issues with
 4    it.  But we both agreed that the State Court judgment was
 5    what it was, and either -- and that was upon which we
 6    were predicating our motion for summary judgment.  And
 7    the Court was or was not going to give it preclusive
 8    effect.
 9            And so Your Honor, what I should have done,
10    since I was out of pocket, is, I should have moved, filed
11    a quick motion, or had my office file a quick motion when
12    I was out of town, to be excused from that portion of the
13    Court's briefing requirements in terms of getting a
14    stipulation together.  I didn't do that.
15            I certainly do apologize to the Court if my
16    failure to do so caused the Court any inconvenience.  I
17    do to let the Court know that in my nearly 16 years of
18    practice I have never, ever been sanctioned, and I hope
19    the Court takes that into consideration if and when it
20    decides to discharge the order against both Mr. Gleason
21    and I.
22            But Your Honor, certainly I will tell you that
23    Mr. Gleason attempted to comply with the order, and I did
24    too, and it was just basically a point of carelessness
25    that I did not seek to be excused from the stipulation
```

1    requirements of the Court's order regarding briefing on

2    summary judgment.

3              THE COURT:  Mr. Gleason, do you disagree with

4    any of that?

5              MR. GLEASON:  No, I do not, Your Honor.

6              THE COURT:  All right.  I'll discharge the

7    order to show cause.  I want you all to understand

8    something.  I take this job seriously, I take my work

9    seriously, and we put a lot of work into this order.  And

10   then for the first time to be told there's a factual

11   dispute, basically said, we wasted our time.  And I don't

12   appreciate it.

13             so that's the whole reason for my procedures,

14   so we don't have these assertions of factual disputes out

15   of the clear blue.  I mean frankly, in your proposed

16   order and motions there was no assertion that there was a

17   factual dispute here concerning the TBE property.

18             MR. CHARBONNEAU:  Well, Your Honor, again, I'm

19   very apologetic to inconvenience the Court.  And I'm

20   afraid in making that assertion we have made more of the

21   TBE issue than I think is really necessary.

22             I know Mr. Rakusin, my co-counsel, feels very

23   strongly about that particular issue.  We're making that

24   presentation today.  But as we get into the motion for

25   rehearing and reclarification, I think I'm going to make

7

1    it very clear to the Court that while a finding of no TBE

2    ownership would be absolutely one hundred percent

3    dispositive in favor of Red Reef, we don't need to get

4    there.  And if the Court wants to get into that now, we

5    can.

6           THE COURT:  Well, let's deal with the TBE

7    property.  From my review of the stipulation, review

8    of the case law, it's clear that they're entitled to TBE

9    based on the stipulation of facts.  Now tell me why

10    that's not the case.

11           MR. GLEASON:  Judge, may I hand up a proposed

12    order on the order to show cause?

13           THE COURT:  Sure.

14           As far as I can see, there's cases right on

15    point.

16           MR. CHARBONNEAU:  Your Honor, could I ask the

17    Court to indulge me for a moment and hear argument on the

18    balance of the motion for rehearing?

19           THE COURT:  No.  The TBE issue, I think is

20    intertwined with the underlying issue, and that issue has

21    to be resolved, in my opinion, to resolve the issue.

22           So if you're trying to skirt that issue, the

23    answer is no, because I think that issue is intertwined.

24    I can't decide the issue without deciding the TBE

25    issue.

1          MR. CHARBONNEAU:  Okay.  Your Honor, then at

2     this point I'm going to turn the podium over to Mr.

3     Rakusin on that one.

4          THE COURT:  Okay.

5          MR. RAKUSIN:  Your Honor, if I may, I just

6     received a copy of the Shuler (phonetic), case that Mr.

7     Charbonneau gave to me, and the only thing I don't have

8     is the actual language of 689.11 as it sits today.

9          THE COURT:  I've got it here if you want me to

10    print it out.

11         MR. GLEASON:  I just handed a copy to Mr.

12    Rakusin, Your Honor.

13         THE COURT:  And again, that's surprising to me.

14    I don't understand why you wouldn't have the statute,

15    since that's the critical issue.

16         MR. RAKUSIN:  Your Honor, the only question I

17    would have, and that is, when I look at the 689.11

18    language, while it does permit the establishment of a

19    tenancy by the entireties in 689.11(1)(a) or (b), by

20    simply allowing a conveyance from one spouse to the

21    other, the problem is in paragraph 2 -- excuse me,

22    paragraph 3, it says, provided that nothing herein shall

23    be construed as validating any deed made for the purpose,

24    or that operates to defraud a creditor or to avoid

25    payment of any legal debt or claim.

1           And so the issue would be whether it's valid

2    against creditors in general.  The point of the T by E

3    status is generally that usually the instrument has to

4    originate in the same title.  Here Mr. Willis clearly

5    didn't have title.

6           There is some indication that, and one of the

7    points I noticed when I looked at the Caughten (phonetic)

8    case, Shuler v. Caughten, is that that case is a case

9    that deals with the devise and whether the property

10   actually devises.

11          As it relates to the creditor cases, even

12   after, I'll point out, even after Andrews, which us a pre

13   -- priority provision of 689.11 apparently, that case

14   deals with a situation where they talk about the fact

15   that title has to originate in the same instrument.

16          After the statute was amended, and after

17   Shuler, in the creditor's realm, the cases still

18   continued to talk about the fact that the title still has

19   to originate in the same instrument.

20          So my suggestion is that there's a distinction

21   there as it relates to creditors.  This may be good

22   against family members, it may be good for a devise, but

23   there's several post 1976 cases that still uphold that

24   fifth unity, which is that the title has to originate

25   in the same instrument.

1          THE COURT:  Do those cases relate to devises

2     subsequent to the statute being inactive?

3          MR. RAKUSIN:  Most of them just generally use

4     the language.  Like for example, the case I'm thinking of

5     is Becktell.  And in Becktell they talk about the five

6     unities.  But then they go back to cite the First

7     National Bank of Leesburg.

8          So the answer is no, they don't specifically

9     deal with the same issue.  But First National Bank of

10    Leesburg is also a post 1957 case.  And the same language

11    was used in the Tharpe (phonetic) case, which is a '99

12    bankruptcy case, I believe.

13          And then there's a case -- there's several

14    other cases that have used that language.  But the point

15    of the matter is, that as it relates to creditors, there

16    generally should be a distinction, because clearly, the

17    purpose of it as it relates to creditors is that the

18    tenancy by the entireties would create a common law

19    exemption, not a statutory exemption under 22, but a

20    common law exemption.

21          I believe that the language in the statute

22    doesn't indicate that this should create an exemption for

23    the claims of creditors.

24          THE COURT:  Refresh my recollection, what's the

25    date of your client's claim?

1              MR. RAKUSIN:  My client had a claim arising in

2    the mid 90's.

3              THE COURT:  That's what I thought, mid 90's.

4    After this conveyance occurred.

5              MR. RAKUSIN:  Absolutely, Judge.  We were not

6    around at the time of that conveyance.

7              THE COURT:  Okay.  That's what I thought.

8              Mr. Gleason, on the TBE issue.

9              MR. GLEASON:  Yes, Your Honor.  Thank you.

10             Judge, of course, 689 is not even discussed

11   in the motion.  The motion is completely totally devoid

12   of any factual or legal basis for the relief sought.

13             Not only is the statute ignored, but there's a

14   case from the 5th DCA, 1998, that indicates that the

15   spouse who is not on legal title, still has to join

16   in the conveyance to the T by E entity, and that's 715

17   South 2d 310, a 1998 opinion called Nordman,

18   N-o-r-d-m-a-n, versus McCormick.

19             Your Honor found a case that came out when I

20   was five months old.  I'm 50.  I found an unbroken string

21   of cases that say there's not a legal or factual basis

22   cited in the motion.

23             And one of the hardest things to research is

24   something that you know intuitively, or that you learned

25   in law school, and that no one has ever questioned, it is

1    absolutely black letter law, the cases that they cite.

2            Beal Bank, that says in Florida tenancy by

3    entireties is not available to one creditor.  So it's

4    Mr. Rakusin's suggestion that if ever during the course

5    of the marriage a creditor arises, that the tenancy by

6    the entireties is then void ab initio.  He doesn't have a

7    case for that.  And Beal Bank does speak in terms of the

8    unities.  All the cases speak in terms of the unities.

9    But we have a statutory definition of the unity.

10           Mr. and Mrs. Willis took title from the same

11   instrument, a quitclaim deed from Mr. Willis, who was a

12   single man when he purchased the property, into the

13   tenancy by entireties estate.  T by E estate has a single

14   source document, and authorized specifically by statute.

15   It can't be clearer.

16           THE COURT:  Okay.  Let's assume that I agree

17   that the property is properly TBE property.  I'll take a

18   look at the cases again.  But let's assume that's the

19   case.  Let me hear the argument on the motion to

20   reconsider.

21           MR. CHARBONNEAU:  Thank you, Your Honor.  And

22   for purposes of this argument, that's exactly what I

23   intended to do.

24           THE COURT:  By the way, I want to make sure

25   that there are no additional factual disputes concerning

1    the TBE issue as I have defined it.

2              MR. CHARBONNEAU:  Your Honor, the parties

3    worked on this week a stipulation that was filed --

4              THE COURT:  I've got it.

5              MR. CHARBONNEAU:  -- and I am not aware --

6              THE COURT:  No additional factual disputes.

7              MR. CHARBONNEAU:  Can I confer with my

8    co-counsel to be a hundred percent certain, Your Honor?

9              THE COURT:  Good idea.

10             MR. RAKUSIN:  Your Honor, there are none.

11             THE COURT:  Okay.

12             MR. CHARBONNEAU:  And Your Honor, I appreciate

13   the opportunity to make the argument, because that is

14   exactly what I intended to do, is to ask the Court to

15   assume for purposes of the primary argument --

16             THE COURT:  I want to make sure you understand,

17   no matter what I rule, I'm going to rule on the TBE in

18   this order.  I think they are intertwined, and that issue

19   has to be decided in order to rule on the underlying

20   motion.  And I understand you disagree with that, that

21   you find it somewhat irrelevant, but that's as I

22   understand the issue.

23             MR. CHARBONNEAU:  I'm going to modify the

24   position that I took in colloquy prior to Mr. Rakusin

25   taking the podium.

1          THE COURT:  Okay.  I just want to make sure

2    there's no more factual disputes, and we all understand,

3    I'm going to rule on the TBE issue.  I understand you all

4    may disagree with whatever legal finding I make, but I

5    want to make sure there's no more assertions of fact on

6    those issues.

7          MR. CHARBONNEAU:  It is Red Reef's position

8    that if the Court were to find that the property was not

9    held as TBE, that that would be 110 percent dispositive

10   on the application of 522(o) and (q) to the homestead

11   exemption.

12          However, it is also our position that if the

13   Court found that the property was properly titled in TBE,

14   that finding would be irrelevant to the application of

15   522(o) and (q), stated I think a little differently

16   from --

17          THE COURT:  We're on the same page.  I

18   understand your position.

19          MR. CHARBONNEAU:  Okay.  And you know, in a

20   way, although it was a factual issue that we felt

21   necessary to preserve, I'm sorry it has taken front and

22   center for the first part of this hearing, because I

23   really do think the more meaty analysis comes from the

24   statutory interpretation, and the interplay between

25   subsections (o) and (q), and (b)(3)(A) and (b)(3)(B).

1        I think Your Honor, this is because a number of

2   courts, Judge Genaman (phonetic) at least in Hinton, and

3   I believe also Judge Olson in Schwartz, and maybe this

4   Court, I think depending on how this hearing comes out,

5   have been leaning toward the statutory interpretation

6   that whether intentionally or not, Congress intended to

7   limit the effect of at least (o) to debtors that have

8   elected under (b)(3)(A), leaving (b)(3)(B) undisturbed.

9        So that if property is held as tenants by the

10  entireties, then the limitations of (o) at least, would

11  not be applicable.  That is what Hinton found, and I

12  believe that's what Judge Olson found in Schwartz.

13       We don't have to get there for (q), because (q)

14  preamble language is significantly different from (o),

15  where (o) speaks in terms of for purposes of (b)(3)(A),

16  (q) uses that same language that Judge Mark and the Court

17  in McNab, I forget the judge's name, have intellectual

18  argument with, you know, for debtors electing under.  We

19  can get to that in a moment.

20       522(o) says that for purposes of subsection --

21  excuse me, section 522(b)(3)(A), and the argument goes in

22  subsection(o), did not mention subsection (b)(3)(B), so

23  that the ability of a debtor to claim as exempt or immune

24  by the entirety under applicable non-bankruptcy law is

25  preserved.

1          In Hinton Your Honor, Judge Genaman found that

2     due to an absence of joined debt, the debtor and his

3     spouse were able to defeat the trustee's efforts, and

4     actually the trustee in that case was Mr. Dilbert, to

5     limit his homestead under section 522(o).

6          The key difference here is that we have the Red

7     Reef debt.  We have the Red Reef debt that is liquidated

8     by the State Court, and it is against both Mr. Willis and

9     Mrs. Willis joint and several.

10         If you assume for purposes of our argument, as

11    we agreed to at the beginning of this part of the

12    hearing, that the property is properly titled by TBE,

13    then the fiction of TBE goes that the debtor is seized of

14    the whole, and doesn't have joint interest like you would

15    in tenants in common, or even joint tenants with rights

16    of survivorship.

17         As the Tharpe Court noted, following the 3rd --

18    a Middle District case, following the 3rd and 4th

19    Circuits, while a debtor's interest in TBE property is

20    immune from creditors of only one of the spouses, it

21    doesn't operate as an immunity from the claims of joint

22    creditors.

23         And the debtor -- even if you take that

24    argument away, the debtor's interest in TBE property is

25    property of the estate under 541, according to the Tharpe

1    decision, and I think it's at a fairly black letter

2    proposition that a debtor's interest in TBE property

3    recognizes that it sees that the entire estate is still

4    property of the estate for 541 purposes.

5              This appears to be consistent with the overall

6    legislative thinking within the Code, because 363(h)

7    specifically says that a trustee can liquidate by way of

8    partition, among other things, entireties property if the

9    estate has an interest in that TBE property.

10             THE COURT:  Now, that's absent it being the

11   debtor's homestead.

12             MR. CHARBONNEAU:  Well, that's right.  We're

13   getting to that.  We're talking a multi-step analysis.

14   But that's right, the debtor still has an independent

15   exemption under Article 4, section 10 for homestead.

16             If there's joint debt, then TBE immunity

17   doesn't shield the property.  This concept carries over

18   into the Bankruptcy Court where cases like Marzone

19   (phonetic) have said if you've got entireties property,

20   and there is the existence of the joint debtor, the

21   trustee can administer the property up to the amount of

22   the joint debt.  That's exactly what we have here, Your

23   Honor.

24             Again, for arguments sake only, if we have TBE

25   property, and we have the existence of liquidated joint

1    debt against the debtor and his spouse, and we have this

2    judgment that makes very specific findings about the

3    debtor's transferring improperly to their homestead, with

4    the intent to -- the actual intent to hinder, delay and

5    defraud creditors, including Red Reef, you have all the

6    elements necessary for the application of (o).

7           So if you find that there is joint debt, which

8    clearly there is, we filed it in court paper 115, a

9    certified copy of the judgment, there's no question of

10   that, the question then becomes, is it proper to limit

11   the debtor's homestead under (o).  Under the Court's

12   analysis we look at 522(o) and it says, subject to

13   (b)(3)(A).

14          So we go to (b)(3)(B).  (b)(3)(B) specifically

15   says that they can, a debtor can still exempt property as

16   a joint tenant by the entirety to the extent that such

17   interest as a tenant by the entirety, or joint tenant, is

18   exempt from process under applicable non-bankruptcy law.

19   So that's clearing up the case, because we have a joint

20   debt.

21          So (o) does not implicate (b)(3)(B).  We stay

22   with (b)(3)(A), and that is how we limit the debtor's

23   homestead, under (o).

24          Having limited the debtor's homestead under

25   (o), finding -- making a finding that there's a

1    preclusive effect of the same State Court judgment that

2    creates the joint debt, that's how we get to the argument

3    that the homestead is not properly claimed, or should be

4    limited under (o).

5            The TBE issue really is a tempest, and I don't

6    mean any disrespect to any counsel sitting at this table

7    because it is a legitimate issue, but for purposes of

8    interpreting and applying (o) to subsection (b)(3)(B), it

9    is, I would submit, a tempest in a teapot.

10           THE COURT:  Can I ask a question?

11           MR. CHARBONNEAU:  Yes, sir.

12           THE COURT:  Put aside the limitation issue.

13   Under (b)(3)(B), the plain reading of the statute, aren't

14   they entitled to this exemption under state law, aren't

15   they entitled to interest as tenants by the entirety, to

16   the extent that such interest as tenants by the entirety

17   for joint tenants is exempt from process under applicable

18   non-bankruptcy law?

19           If this bankruptcy had not been filed, would

20   they not have been entitled to exempt this property, or

21   this property be exempt from process under applicable

22   non-bankruptcy law?

23           MR. CHARBONNEAU:  If you take away the

24   homestead issue for a moment, the answer is, not with

25   respect to Red Reef's debt.  Because if Red Reef -- as

```
 1    Red Reef has a joint debt against both the husband and
 2    the wife, then I would submit to the Court that
 3    applicable non-bankruptcy law, which is the common law
 4    of the state that creates the entireties immunity, is not
 5    applicable as it relates to Red Reef's debt.
 6              THE COURT:  So how do you take away the
 7    homestead issue?
 8              MR. CHARBONNEAU:  Ah, because --
 9              THE COURT:  Using your words.
10              MR. CHARBONNEAU:  Yes. -- because -- well, you
11    take away the homestead issue because Mr. Willis filed a
12    voluntary petition before this court.  The limitations
13    under (o) and (q) and frankly, (p) as well, although we
14    didn't raise that, are not implicated in State Court levy
15    and execution proceedings.  And there's the interesting,
16    intellectual discussion of, if you throw a debtor into an
17    involuntary whether those subsections are implicated
18    because they have not elected them.
19              But here we have Mr. Willis having voluntarily
20    elected that statutory scheme that Congress enacted in
21    '04 or '05.  And so --
22              THE COURT:  Explain that statement.  What do
23    you mean by that?  Because he didn't elect to claim the
24    property as exempt as homestead.
25              MR. CHARBONNEAU:  No.  What he's done is, by
```

1  submitting himself voluntarily to the jurisdiction of

2  this Court, he has deemed to have elected to -- he is

3  deemed to have elected the Congressional limitations on

4  his homestead, as found in (o) and (q), by filing the

5  voluntary petition.

6          Interesting argument, he doesn't have those

7  limitations outside of bankruptcy.  But he is in

8  bankruptcy, and he's here voluntarily.

9          And so the question is, if the facts are there,

10 does (o) and (q) get implicated.  And I think if I read

11 the Court's original order correctly, it hinted at

12 Schwartz, which sort of go the same way, the question is,

13 the question is, whether you limit the state

14 constitutional homestead under (o) and (q) where property

15 is claimed as tenants by the entirety, is finding the

16 first question is, whether there's joint debt.

17         Clearly, there's joint debt.  So (o) is not

18 limited by the effect of (b)(3)(B).  (b)(3)(A) is where

19 we remain.  So that's with (o).

20         (q) is a little easier.  Not much, but a little

21 easier.

22         THE COURT:  Nothing is easy in this case.

23         MR. CHARBONNEAU:  (q) says, I'm going to get

24 it, because every time I try and paraphrase this thing I

25 get it wrong, (q) says as a result of electing under

1    subsection (b)(3)(A) --

2              THE COURT:  Which is claiming it as exempt

3    under Florida constitutional law.

4              MR. CHARBONNEAU:  Right.  Right.

5              And we got into the whole hubbub right after

6    enactment with McNab, where the Court in Arizona said,

7    well, you know, taking what I think is a very narrow,

8    very mechanistic interpretation said, this only applies

9    to Texas and Arizona and Florida, and I think maybe one

10   or two other states, that are opt-out for their

11   exemptions, therefore Congress did not mean for this

12   limitation to apply, therefore I'm not going to apply

13   it.

14             And Judge Mark, in his decision, found at 331

15   BR 483 said, you know, with all due respect, bankruptcy

16   judge in Arizona, I know you don't like the law, not

17   too many of us do, but if you look at the plain language

18   of the statute, and the overwhelming body of material,

19   some of which we cited in our proposed order, concerning

20   the legislative intent behind the amendment to the

21   statute as it relates to homestead, there's no question

22   that you take the $125,000 cap and apply it.

23             So with (q) we don't even need to go to the

24   extra -- the first step of determining whether the debtor

25   has the right to claim property as under (b)(2)(B) first,

1    as we do in (o).  (q), you just say, as a result of

2    electing under Subsection (b)(3)(A), according to Kaplan,

3    and a couple of other cases that follow it, he has, by

4    filing this petition, and then it becomes a fact issue of

5    whether there's been a prior determination and an order

6    finding fraud, deceit or -- well, fraud, deceit, and then

7    or manipulation in a fiduciary capacity.

8            THE COURT:  Well, let's go back.  Are you

9    saying that under (q) that if the debtor did not claim it

10   as exempt as homestead, the (q) limitation is still

11   applicable?

12           MR. CHARBONNEAU:  No.  No.  If the debtor

13   doesn't claim it as homestead, doesn't claim it as

14   exempt, is that what the Court is asking me?

15           THE COURT:  Because in this case the debtor

16   hasn't claimed it as exempt as homestead.

17           MR. CHARBONNEAU:  He has just claimed it as

18   immune.

19           THE COURT:  Right.  That's right.  So I'm

20   trying to figure out why (q) frankly, it is even an issue

21   in this case, since he has not --

22           MR. CHARBONNEAU:  That's an excellent point.

23   It wouldn't be a cap at all.

24           THE COURT:  Okay.  So I guess I understand your

25   argument then.

1            MR. CHARBONNEAU:  So again, I apologize for

2    injecting the fact issue.  I wanted to preserve the

3    issue, but as we've gotten into the statutory

4    interpretation, while I agree with the Court, if you find

5    that TBE is not properly claimed -- excuse me, is not

6    properly formed, it's all over, we don't even get to all

7    these statutory interpretations.

8            But if the Court finds that there is a proper

9    TBE estate, the existence of Red Reef's joint debt,

10   and the factual findings that are contained within the

11   judgment that is the source of that joint debt,

12   collaterally applied to estop any argument otherwise,

13   I think require the application of the limitation,

14   certainly under (o) to any claim of immunity as a TBE.

15           Let me make one quick point, because I know the

16   Court and the debtor have gotten hung up on the issue of,

17   well, but you can't attack Mrs. Willis' homestead.  And

18   we're not.

19           What we're trying to do is ask the Court to

20   limit any immunity or exemption that the debtor has

21   claimed with respect to his homestead, which he

22   voluntarily has submitted to the jurisdiction of this

23   Court, and therefore, based on the facts of record, is

24   subject to limitation.

25           We're not trying to do violence to Mrs. Willis'

1  homestead at all.  What we're trying to do, assuming that

2  we are successful in this argument, is then have

3  Mr. Bakst, on behalf of Ms. Menotte, come in and

4  liquidate the estate's interest under 363(h), only to the

5  extent of the amount that the State Court found was

6  improperly transferred.

7          My understanding from looking at the schedules

8  is that there is a significant amount of equity in this

9  property.

10          THE COURT:  Where do you come up with that

11  analysis?  In other words, you're limited -- you either

12  limit it or have a right to invade her homestead to the

13  extent of the alleged fraudulent conveyance into the

14  homestead.

15          MR. CHARBONNEAU:  Correct, Your Honor.

16          If Mrs. Willis were allowed to say, well, okay,

17  you win on (o), (q) may not even be applied because my

18  husband didn't claim it as exempt under Article 10,

19  Section 4 --

20          THE COURT:  To me it's more of a practical

21  issue.  Even if you win here, you still can't get to the

22  property, because she's not in bankruptcy and the (o) and

23  (q) limitations are inapplicable, therefore, she's

24  entitled to the exemption.

25          MR. CHARBONNEAU:  No.

 1            THE COURT:  That's their argument.

 2            MR. CHARBONNEAU:  With all due respect, Your

 3    Honor, that's their argument, and it's very easily

 4    overcome.

 5            I think when Congress enacted the Code during

 6    the Carter administration, one of the things that they

 7    did was enacted 363(h).  And when you read 363(h) it

 8    provides the trustee significant amount of power to

 9    liquidate the estate's interest in property, even if it

10    is held as tenants by the entirety, it's in there.

11            The argument that the co-owner has a homestead

12    interest in the property to be liquidated, therefore it

13    shouldn't be liquidated, I think is really of no moment,

14    and allows the homestead protection, which is a shield,

15    at that point to be used as a sword.

16            THE COURT:  That I don't disagree with.  I'm

17    trying to figure out why it is you have a claim in the

18    wife's interest --

19            MR. CHARBONNEAU:  We don't.

20            THE COURT:  You're right.  Why you have a claim

21    in the property equal to the amount of the alleged

22    fraudulent conveyance, versus a half interest, or

23    whatever the factual determination is, as to the

24    husband's interest is.

25            MR. CHARBONNEAU:  And I think we go back to the

1    reasoning of the Tharpe decision, which says that Mr.

2    Willis, assuming the Court finds the proper TBE

3    ownership, is seized of the whole.  The existence --

4                THE COURT:  As is the wife.

5                MR. CHARBONNEAU:  Correct.  It's a fiction.

6    And the fiction is pierced with the existence of joint

7    debt.

8                THE COURT:  To the extent of the joint debt.

9                MR. CHARBONNEAU:  Correct.

10               THE COURT:  Unless it's homestead if you're not

11   in bankruptcy.  If you're not in bankruptcy, even joint

12   debt can't get to the property; correct?

13               MR. CHARBONNEAU:  If it's homestead.

14               However, however, the court, the Florida

15   Supreme Court in 1978, in the case of Tullus, that's

16   T-u-l-l-u-s, I think the Court knows this decision, said

17   that Florida constitutional provisions permit the

18   partitioning for sale of homestead property upon suit by

19   one of the owners of the property, if such partition and

20   for sale isn't necessary to protect the beneficial

21   enjoyment of the owners in common to the extent of their

22   interest in the property.

23               THE COURT:  That was my point.  Why is the

24   debtor's interest in the property measured by the amount

25   of the alleged fraudulent conveyance?  They pay off the

1    mortgage, in essence.

2           MR. CHARBONNEAU:  Well, I think it is one of my

3    -- this is one of those inconvenient consequences of TBE

4    ownership.  If the debtor's estate -- excuse me, if the

5    debtor is seized of the whole, and therefore his whole

6    interest is property of the estate under 541, which

7    I think is probably, not black letter, but a pretty well

8    reasoned line of case authority, then if you follow that

9    logic all the way to its conclusion to the extent that

10   there's joint debt, the estate has the right to satisfy

11   that joint debt from property of the estate.  The

12   property of the estate is a fee interest in the homestead

13   -- excuse me, in the real property, because of the

14   existence of a joint debt.

15          The only way to satisfy that joint debt is to

16   liquidate the estate's interest in the property that was

17   formerly the creditors of an immune as TBE.  The only

18   statutory mechanism that I'm aware that the estate can

19   use to do that, is 363(h).

20          THE COURT:  Okay.  I understand your argument.

21   I'm just trying to figure out from the practical sense

22   how you think it would work out.

23          MR. CHARBONNEAU:  There was also some other

24   arguments that we made in our proposed findings to the

25   Court with respect to exemptions, and exemptions on

1    property where you had a husband and wife, and they're

2    found in 522 as well.  Can I get my documents?

3              THE COURT:  Sure.  Absolutely.  Now is your

4    last bite at the apple.

5              MR. CHARBONNEAU:  That's right.  I'm taking my

6    time.

7              THE COURT:  While you're looking that up, can

8    you give me the cites of the cases you cited.

9              MR. RAKUSIN:  Yes, Judge.

10             THE COURT:  Or if you have a copy of the cases,

11   I'll just take a copy of the cases.

12             MR. RAKUSIN:  I'm going to see if I've got

13   those here, Judge.

14             THE COURT:  Okay.  Just the cites would be

15   fine.

16             MR. CHARBONNEAU:  I'll give Mr. Rakusin a

17   minute.

18             THE COURT:  Go ahead.

19             MR. CHARBONNEAU:  With respect to the argument

20   raised by -- that would be raised by Mrs. Willis, that

21   it's her homestead and you can't sell it out from under

22   her, notwithstanding the arguments that we raised in

23   Tullus in 363(h), I think -- I don't think it's really

24   subject to much dispute that the property, Mr. Willis'

25   interest in the estate -- excuse me, yeah, in the estate,

1    the TBE estate, is property of the estate, whether you

2    find that it's TBE or not.

3           522(l) provides, and I'm going to quote for a

4    moment, the debtor shall file a list of property that the

5    debtor claims as exempt under Subsection (b) of this

6    section, which we've been discussing, if the debtor does

7    not file such a list, a dependant of the debtor may file

8    such a list, or may claim property as exempt from

9    property of the estate on behalf of the debtor.

10          And nothing, Your Honor, in 522(l), or the

11   legislative history, suggests that Mrs. Willis, as the

12   non-debtor spouse, may supplement the exemptions claimed

13   by the debtor with state law or further federal

14   exemptions for that proposition we did cite in the Homan

15   (phonetic) decision, which is out of the 9th Circuit BAP,

16   a 1900 case.

17          The Homan Court reasoned that even if the

18   non-debtor spouse could supplement exemption to claims by

19   the debtor, they would have to be consistent with the

20   exemption scheme elected by the debtor, and the Homan

21   Court stated, and I'm going to quote for a moment,

22   "Congress designed Section 522(b) to encourage spouses to

23   file jointly.  It was apparently thought that the joint

24   administration of spousal petitions would promote more

25   efficient administration of bankruptcy cases and prevent

1   individual debtor spouses from manipulating the exemption

2   laws by mixing state and federal exemptions.

3        By seeking to mix a state homestead exemption

4   with unrelated federal exemptions, claimed by Daniel,

5   that was the debtor in that case, Carolyn, who is the

6   non-debtor spouse, seeks to do as a non-debtor spouse

7   what she would be prohibited from doing as a joint debtor

8   spouse.

9        We will not approve such an effort as it would

10  plainly work to discourage spouses from engaging in the

11  preferred system of joint administration.  The technical

12  argument that the non-debtor spouse falls beyond the

13  literal terms of Section 522(b) is unpersuasive.

14       I think it's a fairly compelling argument here.

15  There is one set of -- there's one -- there's a joint

16  debt.  There's one set of federal exemptions.  Those are

17  the exemptions that Mr. Willis has sought to claim.  He's

18  done so.

19       There are mechanisms in place for, assuming

20  that the Court makes the proper findings of collateral

21  estoppel with respect to the 2004 judgment, at least as

22  it relates to the necessary finding for Row (phonetic),

23  there's necessary mechanisms in place, statutory, for the

24  liquidation of the estate's interest in the property,

25  which is, it is, even if you find TBE, seized of the

1    whole.

2            If you don't find TBE, then I guess they're

3    seized of only half interest.  But if you do find TBE,

4    the estate is seized of the whole.

5            THE COURT:  And so is the wife.

6            MR. CHARBONNEAU:  Right.  Well, that's the

7    problem with legal fictions, which is why so many states

8    don't recognize entireties immunity anymore.

9            So we have a proper mechanism under 363(h) to

10    liquidate the debt.  We've got substantive, besides

11    procedural law, we've got substantive law from the

12    Florida Supreme Court saying that an individual's

13    homestead can be partitioned and effectively sold out

14    from under them in order to liquidate the non-exempt,

15    non-immune portion for the benefit of the other holder.

16    That would be the estate in this instance.

17            And we've got statutory scheme, further

18    statutory scheme set up in 522(l), interpreted by

19    decisional authority, that says, you can't ask -- you

20    know, having submitted yourself as one spouse to the

21    jurisdiction of this Court, you can't ask me to apply

22    this set of rules to this property of the estate, but

23    this set of rules to your interest because you're outside

24    of bankruptcy.

25            And so, Your Honor, the legal fiction, while

1    certainly advantageous in many situations, may end up

2    prejudicing Mrs. Willis as a non-debtor spouse in this

3    instance, but I can't help that.

4         363(h) clearly contemplates the ability to

5    liquidate entireties property.  No one is attempting to

6    limit her homestead.  She has the right to claim her

7    homestead, and I'm sure if someone were going to try and

8    levy and attach against her outside of bankruptcy, she

9    would do so.

10        But in this forum, the debtor's in the Boca

11   Raton property, our view, is not exempt.  We don't think

12   the entireties immunity applies because of the joint

13   debtor, for all the reasons that I've previously argued

14   to this Court.  And there is a mechanism in place to

15   liquidate the estate's interest in the property.

16        THE COURT:  Well, the 363(h) issue is not

17   before me, but I think there are issues there that will

18   have to be resolved if I sustain the objection dealing

19   with what is the wife's interest and what is the debtor's

20   interest in tenants by the entirety property.

21        Because if it's an interest in the whole,

22   I think there's an issue there concerning well, her whole

23   is her homestead, she can't be deprived of her whole

24   interest in the homestead.  But it's not an issue before

25   me.

1          MR. CHARBONNEAU:  Right.  And maybe if and when

2     that issue comes, we look to family law for guidance in

3     the situation.  I don't know right now, I think there is

4     a mechanism in place under 363(h) to at least address it.

5          THE COURT:  Mr. Gleason.

6          And the real issue I have, Mr. Gleason, is, how

7     does one claim TBE property is exempt from joint

8     creditors if it's not claimed as exempt under the Florida

9     Constitution.  That's the issue, the other side of the

10    issue.

11         MR. GLEASON:  Judge, Florida law provides that

12    property which is available to a joint creditor is

13    available for administration in this court.  This

14    property is not available to this joint creditor, because

15    the one half undivided joint tenant has not filed, and

16    it's her homestead.

17         THE COURT:  That's the 363(h) issue.

18         MR. GLEASON:  Well, I don't necessarily think

19    they are separate.  Your Honor asked me how the property

20    is protected, and that's the answer, is that they can't

21    get to it, the 4th DCA found that it was properly their

22    homestead, would not breach it for this creditor, and so

23    there's nothing in the Bankruptcy Code that enhances the

24    powers of the trustee.

25         Notwithstanding the time that was spent on

1    363(h), it doesn't happen in Florida, and here's why.

2          The Tharpe Court and this movant were rather

3    fascinated by the Marisi (phonetic) case from New York.

4    Well, tenancy by the entireties is a word that has

5    different meanings in different states.  New York does

6    not protect tenants by the entireties.

7          A creditor of one spouse in New York can get

8    tenancy by the entireties property.  So to use a New York

9    case is the only way that this entirety argument can be

10   supported.

11         The Tharpe case was decided in 1999.  In 2004

12   the 11th Circuit Court of Appeals in the Musolini case,

13   at 391 F 3d, 1295, held that a Chapter 13 debtor filing

14   only tenancy by the entireties property, there is no

15   interest in the estate whatsoever.  And that case is five

16   years after Tharpe.  And Judge Genaman recognized it in

17   her later opinion, in Hinton, she cites the Musolini

18   case.  So Tharpe has been overruled.

19         And to the extent that there was any suggestion

20   based upon Farese, which Judge Genaman cited in the

21   Tharpe case, New York case, where New York doesn't

22   recognize it.  How do we know that?  Because Judge Olson

23   said that in his Robity (phonetic) case.  That's a case

24   where people moved to Florida from New York, on page 9 of

25   7, he observes that under New York law a creditor of a

1    single spouse could have reached the funds that were

2    tenants by entirety protected in Florida.  Same word,

3    different meaning, different state.

4            So the entire argument is based upon their

5    fiction drawn from New York law that the estate has a

6    scintilla of interest in tenancy by the entireties

7    property.  Unfortunately, they don't discuss the 11th

8    Circuit, they don't discuss that Tharpe was overruled by

9    Musolini.  They don't discuss that Judge Genaman

10   recognized the Musolini case five years after her Tharpe

11   case.

12           And so the whole house of cards comes tumbling

13   down because we are in Florida.

14           THE COURT:  Wait.  Let's go back.

15           Their argument on the 522 issue is basically if

16   this property were not exempt, joint creditors could

17   reach the property.  Do you disagree with that basic

18   proposition?

19           MR. GLEASON:  No, Your Honor.  We have -- the

20   estate includes non-homestead property, Your Honor has

21   already ruled on it, we haven't fought that issue, that's

22   black letter law.

23           THE COURT:  And so their argument is, the only

24   way the property is exempt from process is asserting that

25   it is homestead property, and by the debtor asserting

1   it's homestead property, otherwise, it's not exempt from

2   process under state law.

3           MR. GLEASON:  There again, it's a bait and

4   switch upon words.

5           Tenancy by the entireties is not exempt.  It's

6   immune.  It's different.  And for them to continue to use

7   the word, exemption, it does, it seduces you right into

8   522, and you know what, that's not where it is.  Because

9   522 deals with exemptions.  And tenancy by the entireties

10  is not an exemption.  It's an immunity.

11          And it could be both.  It could be a belt and

12  suspenders.  There's no reason why it can't be both Mr.

13  Willis' homestead and Mr. Willis' tenancy by the

14  entireties interest.  Because you see --

15          THE COURT:  But the only reason it's exempt

16  from process is because he claims it is a homestead;

17  correct?

18          MR. GLEASON:  Yes, and she claims it as

19  homestead.

20          THE COURT:  Right.  I understand.

21          MR. GLEASON:  It is the marital homestead.  It

22  is exempt from process because it is both tenancy by the

23  entireties and homestead.  If it was non-homestead, then

24  it would be subject to execution.

25          And so it is the belt and suspenders here that

1    saves the property, the marital residence.  And there's

2    no reason why we should be talking about 363(h) today.

3    It's the trustee's right, not the creditor's right.

4              THE COURT:  As I indicate, that's not an issue

5    before me.

6              MR. GLEASON:  Okay.  Well, the issue being

7    before you is their motion.  I started mine out the same

8    way the Court did.  I worked backwards.  The end of the

9    tail of their motion is, it's not homestead, for all

10   these reasons that are supportable.  You work backwards

11   and you get back into the 522(o) and (q), that will

12   presume that the estate has an interest in this property.

13   Well, the 11th Circuit says it doesn't, both in Beal Bank

14   and in Musolini.

15              In Florida tenancy by the entireties means

16   something different than it does in other states.  And in

17   Florida the consistent holding of binding authority in

18   this court is that there's not a scintilla of interest in

19   the estate in tenancy by entireties property.

20              Now, in Tharpe the debtor's husband died within

21   30 days after the filing of the case.  Well, nobody

22   happened to mention that 541 would have included in the

23   estate any interest that the debtor acquired by the death

24   of someone.  So that would have been an ultimate ground

25   for a finding in Tharpe that the trustee had the right to

1   tenancy by the entireties property.  It didn't deal with

2   homestead property.

3         So you know, Tharpe is a completely a red

4   herring in this analysis.  It has nothing to do with

5   these facts.  Nor do any of the other cases they cite.

6         The important cases are not discussed.  The

7   binding authority it says, there is no interest in the

8   estate in tenancy by the entireties property where one

9   spouse files.

10         THE COURT:  Anything else?

11         MR. GLEASON:  Did Your Honor want me to go --

12   I'll either address your issues, or just go right through

13   the whole --

14         THE COURT:  To me the issue is, the three --

15   the 522(b)(3)(B) issue, whether that provision ends up

16   dragging you back into the (b)(3)(A)/(o) and (q)

17   issues.

18         MR. GLEASON:  Then let me just leave Your Honor

19   with one quote.  I will compare and contrast.

20         The motion states on page 3 that, the second

21   sentence in paragraph 6, "As such on the petition date

22   the debtor had a one hundred percent interest in the

23   asserted homestead, and thus did his bankruptcy estate

24   under 541(a)".

25         The 11th Circuit says, Beal Bank, at page 53,

1   "Thus property held by husband and wife as tenants by the

2   entireties belongs to neither spouse, individually, but

3   each spouse is seized of the whole".  It is the exact

4   opposite of their argument.  The 11th Circuit says it is

5   not owned by Mr. Willis at all, zero.

6           THE COURT:  Thank you.  Mr. Charbonneau or Mr.

7   Rakusin, anything else?

8           MR. CHARBONNEAU:  Your Honor, Mr. Rakusin is

9   going to give you the cases and then I have just, I think

10  two or three points, and then we're finished.

11          THE COURT:  Yes, sir.

12          MR. RAKUSIN:  Your Honor, the cases I'd like to

13  give you -- make a point is that, First National Bank of

14  Leesburg, the Hector Supply Company, a 1971 Florida

15  Supreme Court case at 254 Southern 2d, 777, where at 781

16  they say viable tenancy by the entireties with regard to

17  either realty or personalty, must possess always and at

18  the same time the following characteristics of form.  And

19  then they recite the entities.  That same language was

20  carried into Beal Bank SSB.

21          The Alman (phonetic) and Associates, which is

22  780 Southern 2d, 45, a 2001 Florida Supreme Court case,

23  where they use that and then cite to five or six other

24  cases, and I'll just give the Court copies.

25          THE COURT:  Thank you.  Mr. Charbonneau.

1          MR. CHARBONNEAU:  Yes, Your Honor, just a

2    couple of quick points.

3          So the record is perfectly clear, the 4th DCA,

4    which affirmed in part and reversed in part the trial

5    court in Palm Beach County, didn't make any kind of

6    finding with respect to the nature of the debtor's and

7    Mrs. Willis' asserted interest in the homestead.

8          What the 4th DCA found was that the trial court

9    granted to Red Reef an equitable lien in the property

10   based on insufficient tracing evidence.  No passing

11   whatsoever substantively on the status of the homestead.

12   I just want the Court to be clear on that.

13          THE COURT:  I read the opinion.

14          MR. CHARBONNEAU:  Okay.

15          Your Honor, we do not intend to create

16   confusion with semantics.  Whether it's exemption or

17   immunity, Your Honor, I am not certain.  I was always

18   raised -- Mr. Sanger, way back when, raised me that the

19   homestead is an exemption, and the entirety, because it's

20   common law, is an immunity.

21          I use the terms almost interchangeably, Your

22   Honor, because the Code does.  522 (b)(3)(B) speaks of

23   the entireties exemption, not me.  So I don't mean to

24   confuse anyone with semantics.  Because I think the

25   practical affect is almost the same.

1          We agree, Your Honor, that it is the debtor's

2     homestead and Mrs. Willis' homestead.  We just think that

3     it's the homestead subject to the joint debt of Red Reef,

4     based on the nature of the debt, the fact that it's

5     joint, and because Mr. Willis chose to submit himself to

6     the equitable jurisdiction of this Court, and therefore

7     the limitations of (o).  (q) is a separate analysis.

8     I think it's much easier.

9          Finally, with respect to TBE property, Your

10    Honor, I'm going to quote very briefly from Monzone,

11    which is, while it's not 11th Circuit, it's a very widely

12    regarded followed opinion as it relates to the ability of

13    the trustee to administer TBE property.

14         And Judge Mark says, entireties property is

15    not, he emphasizes not, exempt from process to satisfy

16    joint debts of both spouses.  He cites the Stanley Powers

17    case for that proposition.  And he goes on to say, courts

18    have generally recognized that Section 522 (b)(2)(B) read

19    in conjunction with applicable Florida law, preclude the

20    debtor from exempting, he uses exempt, a portion of his

21    entireties property where joint creditors of both spouses

22    exist at the time of the filing.

23         I think the argument is simple, Your Honor.  If

24    we can defeat the homestead in this court, then the

25    entireties immunity goes away, at least with respect to

1   the debtor's interest in the Boca Raton property.

2           As the Court has indicated, technically the

3   issue of what that interest is and how we liquidate it is

4   not before the Court today.

5           THE COURT:  Okay.  Thank you.

6           MR. CHARBONNEAU:  Thank you, Your Honor.

7           THE COURT:  I'll enter an appropriate order.

8           MR. CHARBONNEAU:  Your Honor, I appreciate the

9   time and consideration today.  And I do want to extend

10  again to the Court, to the Court's clerk, and anyone else

11  deserving it, my sincerest apologies for the issue

12  concerning the stipulation.

13          THE COURT:  That's fine.  Thank you.  You are

14  forgiven, and as you know, I'm not one to hold a

15  grudge.

16          MR. CHARBONNEAU:  Thank you, Your Honor.

17          MR. GLEASON:  Judge, will you require any

18  briefing?

19          THE COURT:  No.  Unless there's something you

20  haven't argued in the proposed orders and today.

21          MR. GLEASON:  I would just make one point on

22  the voluntary petition, that Mr. Willis didn't have --

23  does not have the right under state law to convey his

24  property without his wife joined.

25          So the fact that he filed a voluntary petition

44

1    does not somehow waive rights that he never had.

2              THE COURT:  Well, that gets back to, in my

3    opinion, the 363(h) issue, which I'm not ruling on, in

4    this order at least.

5              Good.   Thank you.

6         (The proceedings were concluded at 12:33 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

45

1                    C E R T I F I C A T E

2

3    The State of Florida        )

4    County of Palm Beach        )

5

6              I, JACQUELYN ANN JONES, Court Reporter, certify

7    that I was authorized to and did stenographically report

8    the foregoing hearing; and that the transcript is a true

9    record of my stenographic notes.

10             I further certify that I am not a relative,

11   employee, attorney or counsel of any of the parties, nor

12   am I a relative or employee of any of the parties'

13   attorney or counsel connected with the action, nor am I

14   financially interested in the action.

15

16             In witness whereof I have hereunto set my hand

17   and seal this  8th  day of  March, 2008.

18

19             _____

20                    JACQUELYN ANN JONES

21                  Commission No. CC 995956

22                   Expires Feb 18, 2009

23

24

25