UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re:                          www.flsb.uscourts.gov
ERNEST WILLIS                              CASE NO. 07-11010-BKC-PGH
_____Debtor_____/            Chapter 7

**DEBTOR'S RESPONSE TO
MOTION FOR PROTECTIVE ORDER WITH RESPECT TO REQUEST
FOR ADMISSIONS BY DEBTOR AND FOR SANCTIONS**

ERNEST WILLIS, Debtor, responds to Red Reef's Motion for Protective Order

with Respect to Request for Admissions Propounded by Debtor [DE 410], set for hearing

on September 16, 2008 at 9:30 a.m., and requests sanctions under BR 7026, and BR

7037, and other relief more fully described below, and says:

1.      In direct contravention of applicable rules, and this Court's oft-stated directive, the

        Motion for Protective Order was filed without any conference with your

        undersigned.  The Motion does not recite such a conference, nor any attempt at

        such conference, and should be denied for that reason alone.

2.      This Court has previously directed Red Reef to prepare and file a stipulation of

        facts by February 4, 2008. [DE 196] The deadline for filing the stipulation was

        extended, with the last extensions being requested by Red Reef [DE 257- motion,

        258 - order, DE 279 - motion, DE 284 - order].  Undersigned counsel and Mr.

        Willis expended several hours reducing the proposed stipulation from 92

        paragraphs to 57 paragraphs, with no loss of substance. [DE 335, page 5, lines 19 -

1

21].

3.  Rather than file a stipulation as ordered, Red Reef filed a "unilateral" stipulation [DE 287], in which it was stated, "Debtor, ERNEST W. WILLIS ("WILLIS"), has refused to agree to the following facts despite repeated attempts thereby necessitating this unilateral stipulation."

4.  After failing and refusing to file the stipulation, Red Reef propounded 134 requests for admissions upon Mr. Willis. [DE 288].

5.  The Court granted Mr. Willis' motion for a protective order and did not require Mr. Willis to respond to the request for admissions. [DE 310 - motion, DE 335 Transcript].

6.  Red Reef has never submitted the stipulation as ordered.

7.  On June 19, 2008, your undersigned sent a letter to counsel for Red Reef, requesting a stipulation as to relevant facts regarding the IRA Accounts at issue in this case.   A copy of the letter is attached as Exhibit A.  Red Reef never agreed to such stipulation.

8.  On July 8, 2008, a set of requests for admissions was delivered to counsel for the Trustee, who had joined in the very same objections to exemptions as Red Reef, and is using the same "expert" , Sharon Dixon, Esq.

9.  The Trustee had no difficulty completing 48 requests in the usual time allotted. [DE 401].

10. In her response, the Trustee indicated that "based on the expert, Sharon Dixon's review of the Amtrust Bank IRA account documentation later provided by the Debtor or obtained through discovery and, her report not providing specific findings as to the Amtrust Bank IRA account, the Trustee has determined not to pursue her objection to the Debtor's claim of exemption in the Amtrust Bank IRA accounts and will be withdrawing her objection as to the claimed exemption of the Amtrust Bank IRA." [DE 401 page 4 in response to paragraph 4].

11. The Trustee further indicated that "based on the expert, Sharon Dixon's review of the Fidelity Federal IRA account documentation later provided by the Debtor or obtained through discovery and, her report not providing specific findings as to the Fidelity Federal IRA account, the Trustee has determined not to pursue her objection to the Debtor's claim of exemption in the Fidelity Federal IRA accounts and will be withdrawing her objection as to the claimed exemption of the Fidelity Federal IRA."  [DE 401 page 9 in response to paragraph 16].

12. A discovery cutoff date of August 11, 2008 was established by Order dated June 13, 2008. [DE 343].

13. Five weeks after the request for stipulations detailed on Exhibit A, and five days before the discovery cutoff, your undersigned personally hand-delivered the Debtor's First Request for Admissions to Red Reef, Inc. (hereinafter 1st RFA) to the offices of counsel for Red Reef.  A copy of the 1st RFA is attached hereto as

Exhibit B.

14. The 1st RFA consists of 85 questions, each of which is capable of admission or denial with one word, "admitted" or "denied."

15. Requests one through seven test the timing of discovery to ascertain whether Red Reef complied with the provisions of B.R. 9011, since it did the majority of its discovery after filing its shotgun objections.

16. Requests 7 through 17, ten questions, parse the components of 11 U.S.C. §522(b)(3)(C), (4), to determine what characteristics, if any, render the Amtrust Bank IRA non-exempt.

17. As an example, request number 9 seeks admission that, "The Amtrust Bank IRA is a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007."

18. Red Reef set Amtrust Bank for a 2004 examination, *duces tecum*. [DE 101]. Presumably, Red Reef has been in possession of the Amtrust documents for over one year now, as the examination date was September 3, 2007.  Among the specific documents requested of Amtrust was "7. All IRS qualifications [sic] letters for all IRAs, 401K accounts, pension plans, deferred compensation plans, or other retirement type accounts owned by (including but not limited to) ERNEST W. WILLIS AND/OR SUNDAY WILLIS." [DE 101, page 8, paragraph 7].

4

19.    Red Reef knows whether or not the Amtrust IRA received a favorable

determination letter which was effective as of the petition date.  Red Reef simply

does not want to say.  Red Reef wants to force Mr. Willis to duplicate the

discovery conducted by Red Reef.

20.    Requests 18 through 23 inquire specifically regarding the evidence Red Reef had

in its possession when it filed its objection the Amtrust Bank IRA, seeking

compliance with B.R. 9011.

21.    The same pattern is repeated for the other two IRA accounts at issue here[1], asking

the same questions about each account.

22.    Red Reef knows whether or not the Fidelity IRA received a favorable

determination letter from the IRS which was effective as of the petition date.

Again, Red Reef just does not want to admit that it was lead the Trustee, this Court,

and Mr. Willis on a "wild goose chase" which it knew it should have abandoned a

year ago.

23.    In December, 2008, Red Reef filed the so-called "expert" Affidavit of an attorney,

one Sharon Dixon, in which the only allegedly defective IRA is the Merrill Lynch

IRA.

24.    Ms. Dixon's "Affidavit" misstates the undisputed facts, as more fully developed in

---

[1] Red Reef has objected to the claimed exemptions in the: Amtrust Bank IRA; Fidelity Federal IRA; and  Merrill Lynch IRA, each of the foregoing having been listed on, DE 13, at B-12, and at DE 349.

the recently-filed Motion in Limine [DE 416], scheduled to be heard along with

Red Reef's Motion for Protective Order.

25.    It is time for Red Reef to show its cards.

26.    Red Reef has now pushed its response date past the date for preparation of the

expert report on behalf of Mr. Willis, which is undoubtedly by design.

Wherefore, Ernest Willis, requests an order denying Red Reef's Motion for

Protective Order with Respect to Request for Admissions Propounded by Debtor [DE

410], awarding sanction pursuant to BR 7026, and BR 7037, re-scheduling the pretrial

conference and all related deadlines, removing the restrictions on discovery imposed on

Mr. Willis, directing Red Reef to respond to the requests for admissions, with simple

admissions, denials, or objections, no later than 5:00 p.m. on September 17, 2008,

shortening the time for Red Reef to respond to future discovery requests by Mr. Willis to

5 calendar days with service by fax authorized for Mr. Willis and directed for Red Reef,

shortening the time for hearing on any motions to compel filed on behalf of Mr. Willis to

the Court's next available telephonic or in-person hearing date and time, and requiring

Red Reef's "initial disclosures" to be amended on or before September 22, 2008 at 5:00

p.m. to include only documents and witnesses reasonably anticipated to be used at trial.

## CERTIFICATE OF SERVICE

I certify that I conferred with opposing counsel, Mr. Charbonneau, before filing this opposition.

The following parties were served by Notice of Electronic Filing on September 12, 2008:

Robert P. Charbonneau
Michael Bakst

Respectfully submitted,

**KEVIN GLEASON, P.A.**
4121 N. 31st Ave.
Hollywood, FL 33021-2011
Attorneys for Mr. Willis
(954) 893-7670 Phone
(954)-893-7675 Fax
By: s/Kevin C. Gleason
  Kevin C. Gleason, Esq.
  Florida Bar No. 369500

# KEVIN GLEASON, P.A.

4121 N. 31st Avenue
Hollywood, FL 33021-2011

Broward 954-893-7670                                                                        Palm Beach 561-994-1030
Telecopier 954-893-7675

June 19, 2008

Robert P Charbonneau  Esq.
Ehrenstein Charbonneau & Calderin
800 Brickell Ave Ste 902
Miami, Florida 331312966
Via Fax only to: 305.7222001

Re: Willis

Dear Bob:

Thanks for yours of yesterday. I dropped off the proposed stipulation and a form of note and mortgage to Mr. Willis about 10 days ago. I did not want to pressure him on either issue because the stipulation relates to a pretrial which is not scheduled until August.

However, I see your point about compressing the hearing tomorrow based upon a stipulation.

Will your client stipulate as follows?
1.    The Merrill-Lynch IRA received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.
2.    The Amtrust Bank IRA received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.
3.    The Fidelity Federal IRA received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.
4.    All of Mr. Willis' distributions from his IRAs qualified as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986.
5.     or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.
6.    All of Mr. Willis' distributions from his IRAs were distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.
7.    All of Mr. Willis' challenged distributions from his IRAs were re-deposited not later than 60 days after the distribution of such amount.

Thank you.
Very truly yours,
**KEVIN GLEASON, P.A.**

By Kevin C. Gleason
email: BankruptcyLawyer@aol.com                          tc: H. Ries, Esq.; Mr. Willis

Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                   www.flsb.uscourts.gov

ERNEST W. WILLIS                                      CASE NO.: 07-11010-PGH
_____Debtor._____/                              Chapter 7

**DEBTOR'S FIRST REQUEST FOR ADMISSIONS TO RED REEF, INC.**

Debtor, Ernest Willis, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, made

applicable herein by Rules 7026 and 7036 of the Federal Rules of Bankruptcy Procedure, hereby requests

that Red Reef, Inc., answer under oath each of the following Admissions.  Red Reef's answers shall be

served upon Kevin Gleason, P.A., 4121 N. 31st Avenue, Hollywood, FL 33021.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing was served on August 6, 2008 , by hand upon
Ehrenstein Charbonneau & Calderin, 800 Brickell Ave Ste 902, Miami, Florida 331312966

Respectfully submitted,
**KEVIN GLEASON, P.A.**
4121 N. 31st Ave.
Hollywood, FL 33021-2011
Attorneys for Ernest Willis
(954) 893-7670 Phone
(954)-893-7675 Fax


By:_____
   Kevin C. Gleason, Esq.
   Florida Bar No. 369500
   BankruptcyLawyer@aol.com

Exhibit B
1

## DEFINITIONS

Where applicable, the following words or terms shall be deemed to mean the following:

A.  The term "you" or "your" means the person(s) or entity(ies) to whom these Interrogatores are addressed, including all other persons or entities acting or purporting to act on behalf of same.

B.  All singular words include the plural, and all plural words include the singular.

C.  All words in the present tense include the past, and all words in the past tense include the present.

D.  "Communication" means any oral or written statement, dialogue, discussion, conversation, or agreement.

E.   "Person" means any natural person, individual, proprietorship, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

F.  As used herein, the singular and masculine form of noun and pronoun shall embrace and be read and applied as the plural or feminine or neuter, as circumstances may make appropriate.

G.  You may, in lieu of identifying any document, attach a true copy of such document or communication as an exhibit to the Answers to these Admissions, along with an explicit reference to the Admission to which each such attached documents or communication relates.

H.  The term "Red Reef" shall refer to Red Reef, Inc., a Florida corporation, FEIN 650650811.

I.   The term "Amtrust Bank IRA" shall refer to that certain account listed on the Schedules filed herein, DE 13, at Schedule B-12, and Schedule C, also at DE 349.

J.   The term "Fidelity Federal IRA" shall refer to that certain account listed on the Schedules filed herein, DE 13, at Schedule B-12, and Schedule C, also at DE 349.

K.  The term "Merrill Lynch IRA" shall refer to that certain account listed on the Schedules filed herein, DE 13, at Schedule B-12, and Schedule C, also at DE 349.

L.  The term "IRA Accounts" shall refer collectively to the Amtrust Bank IRA, the Fidelity Federal IRA, and the Merrill Lynch IRA.

M.   The term "Debtor" shall refer to Ernest Willis.

2

## ADMISSIONS

1.      As of July 30, 2007, Red Reef was not in possession of any evidence to support the allegation in DE 82 that "The IRA accounts are not exempt under 26 U.S.C. §408..."

2.      As of July 30, 2007, Red Reef was not in possession of any evidence that the IRA Accounts "violated the provisions of 26 U.S.C. §408(a)(1) including limitations on the amounts which can be deposited and withdrawn from the account."

3.      As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in the IRA Accounts "were not validly rolled over from otherwise exempt IRA accounts."

4.      As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in Ernest Willis' IRAs "were not timely rolled over from an otherwise exempt IRA."

3

5.    As of July 30, 2007, Red Reef was not in possession of any evidence that the IRA Accounts "existed or originated in accounts which were not IRS-qualified as IRA exempt accounts."

6.    As of July 30, 2007, Red Reef was not in possession of any evidence that funds from the IRA Accounts were "engaged in prohibited transactions."

7.    The Amtrust Bank IRA is not comprised of a rollover or rollovers from non-exempt assets.

8.    The Amtrust Bank IRA does not violate the provisions of 26 U.S.C. §§ 408(a)(1), 408(d)(3)(A), and/or 408(e)(2)(a).

9.     The Amtrust Bank IRA is a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.

10.    The Amtrust Bank IRA funds are presumed to be exempt from the estate pursuant to 11 U.S.C. § 522(b)(3)(C).

11.    If the Amtrust Bank IRA funds are in a retirement fund that has not received a favorable determination under such section 7805, no prior determination to the contrary has been made by a court or the Internal Revenue Service.

12.    The Amtrust Bank IRA fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

13.     The Debtor is not materially responsible for any failure of the Amtrust Bank IRA fund to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

14.     The Amtrust Bank IRA funds are the result of a direct transfer of retirement funds from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise.

15.     The Amtrust Bank IRA was funded by a distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986.

16.     The Amtrust Bank IRA was funded by a distribution which is an amount that has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

17.    The Amtrust Bank IRA was funded not later than 60 days after the distribution from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

18.    As of July 30, 2007, Red Reef was not in possession of any evidence to support the allegation in DE 82 that the Amtrust Bank IRA is "not exempt under 26 U.S.C. §408..."

19.    As of July 30, 2007, Red Reef was not in possession of any evidence that the Amtrust Bank IRA "violated the provisions of 26 U.S.C. §408(a)(1) including limitations on the amounts which can be deposited and withdrawn from the account."

20.    As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in the Amtrust Bank IRA "were not validly rolled over from otherwise exempt IRA account."

21.    As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in Ernest Willis'
       IRAs "were not timely rolled over from an otherwise exempt IRA."

22.    As of July 30, 2007, Red Reef was not in possession of any evidence that the Amtrust Bank IRA
       "existed or originated in accounts which were not IRS-qualified as IRA exempt accounts."

23.    As of July 30, 2007, Red Reef was not in possession of any evidence that funds from the Amtrust
       Bank IRA were "engaged in prohibited transactions."

24.    All funds in the Amtrust Bank IRA, excluding earnings within the account, are attributable entirely
       to rollover contributions under section 402(c), 402(e)(6), 403(a)(4), 403(a)(5), and 403(b)(8) of the
       Internal Revenue Code of 1986.

25.    All funds in the Amtrust Bank IRA, excluding earnings within the account, were originally withheld by an employer of Mr. Willis from the wages of Mr. Willis for payment as contributions to:

    a.    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974;

    b.    a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

    c.    a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986.

26.    The Fidelity Federal IRA is not comprised of a rollover or rollovers from non-exempt assets.

27.    The Fidelity Federal IRA does not violate the provisions of 26 U.S.C. §§ 408(a)(1), 408(d)(3)(A), and/or 408(e)(2)(a).

28.    The Fidelity Federal IRA is a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.

29.    The Fidelity Federal IRA funds are presumed to be exempt from the estate pursuant to 11 U.S.C. § 522(b)(3)(C).

30.    If the Fidelity Federal IRA funds are in a retirement fund that has not received a favorable determination under such section 7805,  no prior determination to the contrary has been made by a court or the Internal Revenue Service.

31.    The Fidelity Federal IRA fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

32.    The Debtor is not materially responsible for any failure of the Fidelity Federal IRA fund to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

33.     The Fidelity Federal IRA funds are the result of a direct transfer of retirement funds from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise.

34.     The Fidelity Federal IRA was funded by a distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986.

35.     The Fidelity Federal IRA was funded by a distribution which is an amount that has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

36.     The Fidelity Federal IRA was funded not later than 60 days after the distribution from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

37.    As of July 30, 2007, Red Reef was not in possession of any evidence to support the allegation in DE 82 that the Fidelity Federal IRA is "not exempt under 26 U.S.C. §408..."

38.    As of July 30, 2007, Red Reef was not in possession of any evidence that the Fidelity Federal IRA "violated the provisions of 26 U.S.C. §408(a)(1) including limitations on the amounts which can be deposited and withdrawn from the account."

39.    As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in the Fidelity Federal IRA "were not validly rolled over from otherwise exempt IRA account."

40.    As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in Ernest Willis' IRAs "were not timely rolled over from an otherwise exempt IRA."

41.     As of July 30, 2007, Red Reef was not in possession of any evidence that the Fidelity Federal IRA "existed or originated in accounts which were not IRS-qualified as IRA exempt accounts."

42.     As of July 30, 2007, Red Reef was not in possession of any evidence that funds from the Fidelity Federal IRA were "engaged in prohibited transactions."

43.     All funds in the Fidelity Federal IRA, excluding earnings within the account, are attributable entirely to rollover contributions under section 402(c), 402(e)(6), 403(a)(4), 403(a)(5), and 403(b)(8) of the Internal Revenue Code of 1986.

44.     All funds in the Fidelity Federal IRA, excluding earnings within the account, were originally withheld by an employer of Mr. Willis from the wages of Mr. Willis for payment as contributions to:

   a.      an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974;

   b.      a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

   c.      a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986.

45.    The Merrill Lynch IRA is not comprised of a rollover or rollovers from non-exempt assets.

46.    The Merrill Lynch IRA does not violate the provisions of 26 U.S.C. §§ 408(a)(1), 408(d)(3)(A), and/or 408(e)(2)(a).

47.    The Merrill Lynch IRA is a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination was in effect as of February 16, 2007.

48.    The Merrill Lynch IRA funds are presumed to be exempt from the estate pursuant to 11 U.S.C. § 522(b)(3)(C).

49.    If the Merrill Lynch IRA funds are in a retirement fund that has not received a favorable determination under such section 7805, no prior determination to the contrary has been made by a court or the Internal Revenue Service.

50.    The Merrill Lynch IRA fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

51.    The Debtor is not materially responsible for any failure of the Merrill Lynch IRA fund to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986.

52.    The Merrill Lynch IRA funds are the result of a direct transfer of retirement funds from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise.

53.     The Merrill Lynch IRA was funded by a distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986.

54.     The Merrill Lynch IRA was funded by a distribution which is an amount that has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

55.     The Merrill Lynch IRA was funded not later than 60 days after the distribution from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

56.     As of July 30, 2007, Red Reef was not in possession of any evidence to support the allegation in DE 82 that the Merrill Lynch IRA is "not exempt under 26 U.S.C. §408..."

57.     As of July 30, 2007, Red Reef was not in possession of any evidence that the Merrill Lynch IRA "violated the provisions of 26 U.S.C. §408(a)(1) including limitations on the amounts which can be deposited and withdrawn from the account."

58.     As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in the Merrill Lynch IRA "were not validly rolled over from otherwise exempt IRA account."

59.     As of July 30, 2007, Red Reef was not in possession of any evidence that the funds in Ernest Willis' IRAs "were not timely rolled over from an otherwise exempt IRA."

60.     As of July 30, 2007, Red Reef was not in possession of any evidence that the Merrill Lynch IRA "existed or originated in accounts which were not IRS-qualified as IRA exempt accounts."

61.    As of July 30, 2007, Red Reef was not in possession of any evidence that funds from the Merrill Lynch IRA were "engaged in prohibited transactions."

62.    All funds in the Merrill Lynch IRA, excluding earnings within the account, are attributable entirely to rollover contributions under section 402(c), 402(e)(6), 403(a)(4), 403(a)(5), and 403(b)(8) of the Internal Revenue Code of 1986.

63.    All funds in the Merrill Lynch IRA, excluding earnings within the account, were originally withheld by an employer of Mr. Willis from the wages of Mr. Willis for payment as contributions to:

a.    an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974;

b.    a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

c.    a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986.

64.  The following transactions constituted valid "rollovers" from the indicated account directly into the Debtor's Merrill Lynch IRA:

   a.  on September 24, 1993, the Debtor caused a transfer from his IRA account at Home Federal Trust in the amount of $79,612.03;

   b.  on October 27, 1993, the Debtor caused a transfer from his IRA account at Sun Bank in the amount of $103,957.18;

   c.  on November 26, 1993, the Debtor caused a transfer from his IRA account at Euro Bank in the amount of $71,654.56;

   d.  on November 30, 1993, the Debtor caused a transfer from his IRA account at Pointe Federal Savings Bank in the amount of $55,978.06;

   e.  on December 1, 1993, the Debtor caused a transfer from his IRA account at Pointe Federal Savings Bank in the amount of $31,551.04;

   f.  on December 1, 1993, the Debtor caused a transfer from his IRA account at Barnett Bank in the amount of I requested the transfer of $30,624.94;

   g.  on December 2, 1993, the Debtor caused a transfer from his IRA account at Stifel Nicolaus in the amount of $4,000.00;

   h.  on December 10, 1993, the Debtor caused a transfer from his IRA account at AmTrust in the amount of $34,277.92;

   i.  in December of 1993, the Debtor caused a transfer from his IRA account at Great Western Bank in the amount of $138,372.73.

65.  There exists no factual basis for Red Reef to continue to object to the Debtor's exemption in the Amtrust Bank IRA.

66.     There exists no factual basis for Red Reef to continue to object to the Debtor's exemption in the Fidelity Federal IRA.

67.     The Debtor's residence at 590 Silver Lane, Boca Raton, Florida 33432 was owned by the Debtor and his non-debtor spouse as tenants-by-entireties as of February 16, 2007, and at all material times from and after October 9, 1987.

68.     From and after October 9, 1987 through February 16, 2007, the Debtor's residence at 590 Silver Lane, Boca Raton, Florida 33432 was exempt from process under applicable non-bankruptcy law against all the Debtor's general unsecured creditors, including such creditors who held a joint claim against the Debtor's non-debtor spouse.

69.     From and after October 9, 1987 through February 16, 2007, the Debtor's residence at 590 Silver Lane, Boca Raton, Florida 33432 was exempt from process under applicable non-bankruptcy law as against Red Reef.

70.    Regarding DE 190, para. 23, the withdrawal referred to therein was made on June 9, 1997.

71.    Regarding DE 190, para. 23, the deposit referred to therein was made on August 6, 1997.

72.    Regarding DE 190, para. 23, the number of days between the withdrawal and the deposit was 58.

73.    Regarding DE 190, para 24, the withdrawal referred to therein was made on August 9, 1997.

74.     Regarding DE 190, para 24, the deposit referred to therein was made on October 7, 1997.

75.     Regarding DE 190, para. 24, the number of days between the withdrawal and the deposit was 59.

76.     Regarding DE 190, para 25, the transfer referred to therein as having been "directed" on October 8, 1997 was made at a later date.

77.     Regarding DE 190, para 25, the deposit referred to therein was made on December 8, 1997 on first business day following the 60th day after Mr. Willis "directed" the transfer.

78.    Regarding DE 190, para. 25, the number of days between the withdrawal and the deposit was fewer than 60.

79.    Pursuant to Bankruptcy Rule 9006(a) the deposit referred to in the immediately preceding paragraph was made within 60 days of the date on which Mr. Willis "directed" the withdrawal.

80.    Regarding DE 190, para. 26, the withdrawal referred to therein was made on December 10, 1997 in the amount of $270,000.

81.    Regarding DE 190, para 26, the deposit referred to therein was made on February 6, 1998.

82.    Regarding DE 190, para. 26, the number of days between the withdrawal and the deposit was 58.

83.    Regarding DE 190, para 27, the withdrawal referred to therein was made after February 6, 1998.

84.    Regarding DE 190, para 27, the deposit referred to therein was made on April 7, 1998 on the 60th day after the date on which Mr. Willis "directed" the withdrawal.

85.    Regarding DE 190, para. 27, the number of days between the withdrawal and the deposit was fewer than 60.

I hereby certify, under penalty of perjury, that the foregoing responses to requests for admissions are true and correct.

Dated: July ___, 2008          By:_____

Print Name:

Print Title: