1

1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF FLORIDA
2

3                       Judge Paul G. Hyman, Jr.

4

5
    In Re:
6
                                Case No. 07-11010-BKC-PGH
7

8   ERNEST W. WILLIS,

9            Debtor.

10  _____

11
    MOTION BY RED REEF FOR PROTECTIVE ORDER (410)
12  MOTION BY DEBTOR FOR LIMINE (416)

13

14

15                      September 16, 2008

16

17

18  The above entitled cause came on for hearing before
    the HONORABLE PAUL G. HYMAN, JR., the Chief Judge in
19  the UNITED STATES BANKRUPTCY COURT, in and for the
    SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler
20  Drive, West Palm Beach, Palm Beach County, Florida, on
    September 16, 2008, commencing on or about 9:30 a.m.,
21  and the following proceedings were had:

22

23

24

25       Reported by: Jacquelyn Ann Jones, Court Reporter

2

```
 1

 2    APPEARANCES:

 3
      EHRENSTEIN CHARBONNEAU CALDERIN
 4    By: ROBERT P. CHARBONNEAU, ESQUIRE
      On behalf of Red Reef
 5

 6    KEVIN GLEASON, P.A.
      By: KEVIN GLEASON, ESQUIRE
 7    On behalf of the Debtor

 8
      RUDEN McCLOSKY
 9    By:  MICHAEL R. BAKST, ESQUIRE
      On behalf of the Trustee
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1              THE COURT:  Willis.
 2              MR. CHARBONNEAU:  Good morning, Your Honor.
 3   Bob Charbonneau.  I'm with the firm, Ehrenstein,
 4   Charbonneau, Calderin.  We are counsel to creditor,
 5   Red Reef, Inc.
 6              MR. GLEASON:  Good morning, Your Honor.
 7   Kevin Gleason for Mr. Willis.
 8              MR. BAKST:  Good morning, Your Honor.
 9   Michael Bakst, attorney for the trustee.
10              MR. CHARBONNEAU:  Judge, there are two
11   matters on the calendar this morning.  There is
12   creditor Red Reef's motion for protective order, and
13   the debtor -- and response thereto filed by the
14   debtor, and a motion in limine by the debtor.
15              If it pleases the Court and the parties, if
16   we may take the motion for protective order first.
17              THE COURT:  Sure.
18              MR. CHARBONNEAU:  Judge, A little
19   background, because there is a fair amount of it in
20   this case.
21              THE COURT:  By the way, before you go any
22   further, there's no notice of hearing on the -- no
23   certificate of service rather, on the notice of
24   hearing on your motion for protective order.
25              MR. CHARBONNEAU:  I'll look into that, Your
```

4

1    Honor.  I'm positive it was served.

2          THE COURT:  That doesn't mean it was filed

3    with the court.  I want to tell you, that if there's

4    repeat violations of the local rules concerning filing

5    of certificates of service on notices of hearing, I

6    make people go back and retake the CMECF class.

7          MR. CHARBONNEAU:  Understood, Your Honor.

8    And I picked that up with respect to the RJ Gators

9    matter this morning and alerted Vivian yesterday.  I

10   did not know -- I did not pick it up on this one, so

11   my apologies.

12         THE COURT:  Make sure you take care of it.

13         MR. CHARBONNEAU:  I sure will, Your Honor.

14         THE COURT:  Okay.  Go ahead.

15         MR. CHARBONNEAU:  A little refresher

16   probably would never hurt.

17         Judge, we've been gathering documents on the

18   IRA exemption for some time now, either from the

19   debtor or from various third party institutions.

20   Compilation of documents has taken the better part

21   of a year.

22         In June of this year, Your Honor, the

23   parties, everyone, the debtor, trustee, and Red Reef

24   came before the Court on a pretrial that was set for

25   June, and said, this is a complex and large matter, we

1    need a scheduling order with some hard deadlines.  And

2    as a result, the Court entered, I believe it's court

3    paper 343, which was a pretrial order.

4         The order required -- and the order set

5    various hard deadlines, vis-a-vis our District's local

6    form pretrial order.

7         That order required the disclosure of either

8    a copy, or a description by category and location, of

9    all documents that either of the parties had in their

10   possession, custody or control that might support

11   claims or defenses as the case may be.

12        Red Reef and the trustee made the requisite

13   disclosures, actually going beyond the requirements of

14   726(a)(1)(A), and actually identifying the individual

15   documents, not just their category or general

16   description.

17        The disclosure was very large, because as

18   I've said, we've been amassing the factual record for

19   some time.  And the rule requires us to disclose any

20   documents that we believe may be relevant -- any and

21   all documents that we believe may be relevant.

22        At docket entry 377 we received a disclosure

23   pursuant to the pretrial order from the debtor,

24   consisting effectively, it's a one page disclosure

25   that said, all rebuttal exhibits, everything listed by

6

1    Red Reef, Mr. Willis' tax returns for a six or seven

2    year period, and all, and I'm quoting, "all records

3    and other documents produced by Mr. Willis or any

4    other source during this proceeding and all contested

5    matters and proceedings arising out of the above

6    styled main case".

7            Your Honor, I leave it to the Court to

8    decide, but it is my opinion that this disclosure

9    hardly complies with the rule.

10           When the time came to make a disclosure of

11   Red Reef and the trustee's joint expert, the trustee

12   and Red Reef filed again, a disclosure and report of

13   Sharon Quinn Dickson.

14           Red Reef and the trustee went to great

15   lengths to strictly adhere to the requirements of

16   7026(a)(2)(A) and (B).  Instead of making these

17   disclosures, the debtor moved to continue the trial on

18   this manner, complaining in his motion as he did, that

19   we disclosed too much information, and implying that

20   we should be doing the debtor's job of figuring out

21   which documents we disclosed were relevant to the IRA

22   objection.

23           In fact, Judge, that's one of the

24   extraordinary prayers for relief the debtor makes in

25   his response to our motion for protective order, that

1    we should be required to go back and amend our

2    disclosure more narrowly.

3              7026 imposes no such burden whatsoever on us

4    in that regard.  I think it would be counterproductive

5    to the policy underlying 7026, and we don't believe

6    the Court should require that either.

7              The second -- the other matter that was

8    noteworthy about the second motion to continue, is

9    that on August 6th, it says on August 6th the debtor

10   served 85 requests for admissions upon Red Reef, and

11   that those requests for admissions would be

12   accompanied by an ex parte motion order to shorten

13   time for us to respond to those requests for

14   admissions.

15             The Court heard the second motion to

16   continue the pretrial conference.  As the Court may

17   recall, Mr. Bakst and I vigorously opposed the relief.

18   The Court granted the continuance with a pretrial

19   conference set for October 6th, 2008 at 9:30 a.m.

20             However, in granting the debtor's motion to

21   continue, and I can only presume in light of the

22   significant disclosures by Red Reef and the trustee,

23   the Court imposed certain proscriptions on what the

24   debtor could do by way of further discovery.

25             Those are memorialized, Your Honor, at court

8

1    paper 408.  Specifically, the Court ordered, any

2    discovery -- and I'm reading now from court paper 408,

3    paragraph 2A B.  "Any discovery that the debtor wishes

4    to conduct in connection with pending objections to

5    the claimed exemptions in the IRA accounts, may only

6    be done so with leave of court, and after filing the

7    appropriate motion, and after a notice and hearing".

8            Subparagraph E says, any discovery that the

9    debtor does wish to propound relating to the testimony

10   or conclusions of the joint expert of the trustee and

11   Red Reef, need not be responded to by either the

12   trustee or Red Reef until 15 days, or later, prior to

13   the scheduled pretrial conference.

14           Judge, the subject request for admissions,

15   as I said, I think they number 85, in a nutshell,

16   require responses from Red Reef's experts.  As the

17   Court knows, the objections to exemptions are very

18   technical in nature, implicate questions of tax and

19   employee benefit law.  And so other than several

20   requests for admissions relating to the homestead,

21   which I think may have been included in there by

22   accident, they almost entirely relate to Ms. Dickson's

23   expert opinions as they relate to the Am Trust,

24   Fidelity, and Merrill Lynch IRAs, or I guess I should

25   say now, Bank of America IRAs.

9

1          Judge, at the hearing I argued that those

2    requests for admissions should be subject to the

3    purview of this order, court paper 408.  The Court,

4    I think appropriately said, well, wait, I haven't seen

5    the request for admissions, I'm not going to rule on

6    that now, if you believe that's the case, go ahead and

7    file a motion, which I did.

8          Judge, there's a whole host of irrelevant

9    matters in the debtor's response that I can take up by

10   way of reply when Mr. Gleason makes his response, and

11   I'm not going to go ahead and clutter the record with

12   those now.

13         But Judge, Red Reef has gone to a tremendous

14   amount of time, effort, and expense in getting this

15   case ready for trial.  We have disclosed every

16   single -- the existence of every single scrap of paper

17   that we've obtained in connection with these IRA

18   exemptions, which I tell the Court again, as I did at

19   the second motion to continue the pretrial, the vast

20   majority of which were under the custody or control of

21   Mr. Willis himself.

22         The debtor -- excuse me, Red Reef and the

23   trustee have gone to tremendous length to present an

24   expert disclosure and expert report of Ms. Dickson

25   that, dare I say, slavishly complies with the rule,

1    the applicable Rule 7026(a)(2)(B).

2            Judge, in response we've seen nothing from

3    the debtor.  We've complied with discovery requests,

4    Judge, that were propounded upon us at court papers

5    191 and 192, in December, that's right, December, with

6    respect to the pending IRA objections.  Those were a

7    request for production of documents with 43

8    categories, and interrogatories with approximately 11

9    in number.

10            Finally, Judge --

11            THE COURT:  Let's go back to, your real

12    objection is that they filed them without permission

13    of the Court?

14            MR. CHARBONNEAU:  They were already on

15    file.

16            THE COURT:  Right.  That's what I'm trying

17    to --

18            MR. CHARBONNEAU:  Right.  And they -- if

19    they don't violate the letter of the order, because

20    they were already on file, they certainly violate the

21    spirit.

22            Judge, the expert report, their expert

23    report is due today.  And in the response you see,

24    I think, what the debtor is really angling at.

25            The response says, no request for admission

1   responses from Red Reef, well, we want more time now,

2   we want to continue the pretrial conference.  We want

3   delay in disclosing our expert report.  And Judge, one

4   has nothing to do with the other, particularly, Judge,

5   since the debtor said, in the second motion to

6   continue the pretrial conference, hey, we're going to

7   move to shorten time so that we can get a response.

8   They didn't do that, Judge.

9           And all we've been doing is disclosing and

10  disclosing and answering discovery requests, and Mr.

11  Gleason says in his response to my motion for

12  protective order, it's time for Red Reef to put its

13  cards on the table.  Judge, our cards have been on the

14  table for a long time.

15          THE COURT:  You've not answered -- you've

16  really not answered my question though.  What is your

17  real objection, other than the date of the pretrial,

18  and their response dealing with their expert?

19          MR. CHARBONNEAU:  We would like -- well,

20  Judge, separate and apart from the timing, which I

21  have a real issue with, we would like to see a little

22  cooperation on the debtor's side in terms of discovery

23  before we answer any more.

24          THE COURT:  Have you filed a motion to

25  compel?

Ouellette & Mauldin Court Reporters  (305)358-8875

12

1          MR. CHARBONNEAU:  I haven't, Judge, because

2    the expert report is due today.

3          THE COURT:  Okay.  I don't understand, you'd

4    like a little cooperation from the debtor, I don't

5    understand what you're saying.

6          MR. CHARBONNEAU:  Judge, I think at a

7    minimum, our responses to request for admissions

8    should not be responsive until much later in the

9    month, and after we've seen their expert report.

10         The response that I got from the debtor on

11   Friday seems to indicate that, based on our lack of

12   response to the request for admissions, they're not

13   going to file their expert report.

14         THE COURT:  Well, I'm anticipating what

15   they, because I've read the pleadings, anticipating

16   what Mr. Gleason is going to say.  He's going to say,

17   our expert can't give us a report until I know what

18   the basis of your objection is, and I can't figure

19   that out until I get the request for admissions.

20         MR. CHARBONNEAU:  I can hardly believe that,

21   Your Honor.  They have every single piece of

22   document --

23         THE COURT:  I've just asked -- you know, I

24   know what he's going to say.  So I don't understand

25   why you haven't just answered the request for

13

1   admissions and be done with it.

2          MR. CHARBONNEAU:  Judge, at a minimum, I'd

3   like the opportunity to answer the request, if that's

4   where the Court is going, after I've seen the expert

5   report.

6          THE COURT:  Why?

7          MR. CHARBONNEAU:  Because that was the

8   ruling of the Court.  Because the Court said in

9   paragraph 2 of this order that we don't have to comply

10  with any discovery as it relates to our expert report

11  until we've seen their expert report.

12         THE COURT:  What the order says is, any

13  discovery that debtor wishes -- does wish to propound

14  relating to the testimony, or conclusions of the joint

15  expert, need not be responded to by either the trustee

16  or Red Reef until 15 days or later prior to the

17  scheduled pretrial.

18         MR. CHARBONNEAU:  That's what (2)(B) says,

19  yes, Your Honor.

20         THE COURT:  So you want to respond 15 days

21  prior to the pretrial?

22         MR. CHARBONNEAU:  Candidly, I don't want to

23  respond at all, Your Honor.

24         THE COURT:  I'm trying to figure out why.

25         MR. CHARBONNEAU:  Well, (2)(A) says, any

14

1    discovery that the debtor wants to conduct in

2    connection with these pending objections has to be

3    done with leave of court.  And I want to know --

4            THE COURT:  And my recollection is, that was

5    for future discovery, and I did not deal with the

6    pending discovery.

7            MR. CHARBONNEAU:  You didn't.  You told me

8    to file a motion, which I did.

9            THE COURT:  Because that wasn't before me.

10   Your argument, as I recall, back on whatever date this

11   was --

12           MR. CHARBONNEAU:  It was August 8th, Your

13   Honor.

14           THE COURT:  August 8th was, they're getting

15   ready to propound a whole bunch more discovery, and we

16   shouldn't have to respond to it, and so that's the

17   reason there was that order.  And so I still don't

18   understand, frankly, the basis of your desire not to

19   respond to pending requests for admissions, other than

20   it does cause you work, obviously.

21           MR. CHARBONNEAU:  Well, and that causes the

22   client expense.  And at this point, Judge, we would

23   like to know what their expert, if they're going to

24   employ an expert, is going to say.  We're entitled to

25   that.  We were entitled to that, Judge, back in June

15

1    and July.

2            We've not heard what their expert is going

3    to say, what the expert's opinion would be.  They --

4            THE COURT:  What does it matter what they

5    say, vis-a-vis what your expert says?

6            MR. CHARBONNEAU:  I suppose it doesn't, Your

7    Honor, but by the same token, what I'm hearing is cart

8    and horse.  They want these requests for admissions,

9    the implication being so that they can go ahead and

10   promulgate their expert report.  They don't need these

11   request for admissions for that, Your Honor.

12           THE COURT:  I don't know that.

13           MR. CHARBONNEAU:  We didn't need any

14   requests for admissions, Judge, to promulgate our

15   report.  We had our expert look at the record that was

16   obtained through the debtor and various parties, apply

17   that record to the law, and came up with an expert

18   opinion, which has been of record for quite awhile

19   now.

20           THE COURT:  That I understand.  I just,

21   frankly, am trying to get a handle on what the real

22   objection is.  You say he's not cooperating.  I don't

23   understand really where you're coming from, vis-a-vis

24   cooperation.

25           It reminds me of depositions.  Where are you

16

1    going to take the deposition, his office or your

2    office, and who the heck cares.

3            MR. CHARBONNEAU:  I don't ordinarily engage

4    in those kinds of discovery disputes, Your Honor.  But

5    before we engage in hiring our expert, Judge, because

6    that's what it's going to take to answer 85 separate

7    requests for admissions, some of which have nothing to

8    do with this pending contested proceeding, I want to

9    see their expert report.

10            If the Court is going to order me to

11    ultimately respond to these requests for admissions,

12    which is where I see this going, then at a minimum,

13    Judge, I think we ought to respond to them within the

14    time provided in court paper 408, certainly after

15    we've seen the expert report.

16            THE COURT:  Is there any rule that says your

17    expert doesn't have to respond to discovery until you

18    see their report?

19            MR. CHARBONNEAU:  No, Judge.  I think what

20    the Court ordered in respect of 408, in making these

21    proscriptions, was a recognition that we've engaged in

22    quite a bit of discovery, we've engaged in a whole lot

23    of disclosure, and there hasn't been that quid from

24    the debtor.  And I think that's what the Court was

25    coming from when it ordered --

17

```
 1              THE COURT:  I guess my observation is,
 2   you're referring back to his disclosure of documents
 3   saying, anything I've given you is my disclosure.
 4              MR. CHARBONNEAU:  It was nothing.
 5              THE COURT:  Then you should have filed a
 6   motion to compel and I would have made him list it,
 7   frankly.  If you would have filed a motion to compel,
 8   and itemization, because that is clearly the intent of
 9   the Court, and what I believe the intent of the order
10   is.  I mean that rule.
11              And so, if you haven't done it, you can't
12   fault him for not having done it, if you've not asked
13   the Court to compel him to do it.  So that really
14   can't be an excuse.  I'm going to deny your motion in
15   limine.  Now, that's without prejudice --
16              MR. CHARBONNEAU:  Motion for protective
17   order, Your Honor.
18              THE COURT:  Motion for protective order, I'm
19   sorry.  He's filed a motion in limine.  Motion for
20   protective order.  Now that's without prejudice if
21   there are matters clearly not relevant.  That's not an
22   issue you've raised.
23              MR. CHARBONNEAU:  That's right.
24              THE COURT:  Is it?
25              MR. CHARBONNEAU:  No, it is not, Your
```

18

1    Honor.

2             THE COURT:  Okay.  I'm sorry, I didn't think

3    you had.

4             If there's matters clearly not relevant

5    then, meaning not reasonably calculated to lead to

6    discoverable evidence, then you can certainly raise

7    those objections, because I've not ruled on those.

8             MR. CHARBONNEAU:  Your Honor, until when --

9    it's 85 in number.  Until when may I have to respond?

10            THE COURT:  You have until 15 days before

11   the pretrial.  Isn't that the order?

12            MR. CHARBONNEAU:  It is.  Okay.  That's

13   fine, Your Honor.

14            MR. GLEASON:  Judge, I've not said a word,

15   but that is not what that order said.  That order did

16   not deal with pending discovery.  The time has come

17   and gone.

18            And Your Honor usually tells me when I've

19   won a motion I should sit down and be quiet, but --

20            THE COURT:  I don't understand the point

21   you're trying to make.

22            MR. GLEASON:  The point is, Judge, that

23   you're giving them an extension.  They didn't move for

24   an extension of time.  They had the full 30 days --

25            THE COURT:  Motion for protective order does

19

1    obligate them not -- I take it back.  It does away

2    with their requirement to respond until I resolve the

3    motion for protective order.  It does not mean they

4    admitted to all the answers.

5            MR. GLEASON:  No, but that order did not

6    give them an extension until 15 days before the

7    pretrial to answer that discovery.  That discovery

8    should be answered today, or tomorrow.  It took Mr.

9    Charbonneau longer to drive here --

10           THE COURT:  85 questions is not something

11    that I'm going to make them answer --

12           MR. GLEASON:  Your Honor --

13           THE COURT:  The pretrial is the 6th.  It

14    says Friday.  It's this Friday.

15           MR. CHARBONNEAU:  The 21st or the 22nd,

16    Your Honor.

17           THE COURT:  Would it be?

18           MR. CHARBONNEAU:  Yes, I believe.

19           THE COURT:  That's because I count backwards

20    instead of forwards maybe.  Anyway, the 22nd, which is

21    Monday.

22           MR. GLEASON:  Then Your Honor, I would need

23    the restrictions on the debtor's discovery to be

24    deleted.  I can't do anything until I get their

25    answers to request for admissions.

Ouellette & Mauldin Court Reporters  (305)358-8875

```
1              THE COURT:  I don't understand, what
2    restrictions?
3              MR. GLEASON:  I'm not allowed to propound
4    any additional discovery unless I get permission of
5    the Court first.  And they've delayed this into past
6    the time period where my expert report is due.
7              And Judge, the suggestion that the vast
8    majority of these questions need to be answered by
9    their expert is absolutely specious logic.  Out of the
10   85 questions, 15 are directed to the expert, 20 go to
11   Am Trust, 20 go to Fidelity Federal.
12             THE COURT:  Mr. Gleason, you're wasting your
13   time.  I don't think six days to respond to 85
14   questions is excessive.  Okay.  That's my ruling.
15             MR. GLEASON:  But Your Honor, then, what's
16   the debtor's response?  I still can't do anything
17   until I get their answers.  And I can't propound
18   discovery -- all I'm asking is, if they get until
19   Monday --
20             THE COURT:  You're not going to propound any
21   more discovery, I don't think, that's my intent, that
22   discovery is done.  If you haven't propounded any
23   other discovery, then as far as I'm concerned, the
24   deadline is gone.
25             Now, let's deal with the motion for in
```

1    limine.  And I guess reading that, I don't understand

2    why these are not evidentiary issues raised at trial

3    when the witness tries to testify.

4                MR. GLEASON:  Because the expense involved

5    of competing experts, when it is, to me, patently

6    clear that there is no fact in evidence here, or

7    potentially in evidence here, that requires an expert

8    witness.

9                Judge, the expert witness is, "testifying to

10   16 pieces of paper that are Merrill Lynch statements

11   that show" --

12               THE COURT:  Then you can object when she

13   testifies.  What you want me to do is make a factual

14   determination today that much of her testimony is

15   incorrect based on other documents.

16               MR. GLEASON:  No.

17               THE COURT:  That's your argument.

18               MR. GLEASON:  I've asked that the Court

19   determine that this Court does not need an expert on

20   the law.  Ms. Dickson's only expertise is on tax law.

21   This Court has over a dozen -- well, about eight

22   reported opinions on tax law.  I don't know how many

23   unreported, probably dozens.  This Court is perfectly

24   capable of reading the Internal Revenue Code and

25   applying that to a bank statement.  That's all Ms.

1    Dickson did, was call out 16 dates, half of which are

2    wrong, and say, these are the dates these things

3    happened.

4          Well, she didn't even look at the deposit

5    slips, which have been in the record here since

6    February.

7          THE COURT:  Those are factual issues to be

8    raised at trial.

9          MR. GLEASON:  Exactly.  But factual issues

10   are what this expert is offered for.  And this Court

11   is perfectly capable of looking at a bank statement,

12   seeing the date, looking at a deposit ticket, see the

13   date, calculating the number of days.  There's no

14   expert implicated in that exercise.

15         THE COURT:  It's real simple then to raise

16   the objections at trial.

17         MR. GLEASON:  Well, that's what a motion in

18   limine is for, to avoid having to do that at trial.

19         THE COURT:  I think this is -- your motion

20   in limine is outside of what I think is appropriate

21   for a motion in limine.  You want me to make a factual

22   determination that she is -- her oral testimony is

23   incorrect, based on documents.

24         MR. GLEASON:  That's not what I've asked,

25   Judge.  I've said, her testimony, her expert

Ouellette & Mauldin Court Reporters  (305)358-8875

1    testimony, is only as a lawyer of American law.  This

2    Court decides American law without an expert.  People

3    file briefs to establish their positions.  That's what

4    Ms. Dickson's affidavit is, it's a brief, it cites the

5    Court to legal authority.

6                She is not a fact witness.  She doesn't

7    claim to be a fact witness.  She's only here to

8    explain tax law to this Court.  This Court doesn't

9    need Ms. Dickson to explain tax law.  This Court

10   explains tax law to us.

11               THE COURT:  Then why do you argue all these

12   factual inconsistencies in your motion in limine?

13               MR. GLEASON:  It's to demonstrate the -- her

14   lack of ability to be a fact witness.  She's not a

15   fact witness.  But her -- I'll just pull out the

16   motion, because what I asked for in the motion is to

17   exclude her as an expert.

18               And I say in the memorandum of law, that an

19   expert -- I go through why one needs an expert, an

20   expert is one who falls within the definition of the

21   rule.  The rule permits an expert where there is some

22   sort of fact that requires testimony, or requires

23   interpretation that the Court is not capable of

24   without someone who is schooled in that, you know,

25   discipline.

1          The case that Red Reef cites in opposition

2     to my motion is a criminal case dealing with gambling

3     where an expert had to listen to transcripts of deals

4     between bookies to determine whether the bookies are

5     working together, or whether they were part of the

6     same enterprise.  You know, completely not what we're

7     about here.

8          The only thing Ms. Dickson can do is cite

9     the Court to Internal Revenue Code cases and you know,

10    rules.  That's all.  So I've said, you don't need her

11    for that.

12         THE COURT:  Mr. Charbonneau, is that all

13    she's going to do?

14         MR. CHARBONNEAU:  Not at all, Your Honor.

15         Judge, a couple of things.  First, let's get

16    back to the rules that are applicable to this

17    particular controversy.

18         THE COURT:  Answer my question.

19         MR. CHARBONNEAU:  Yes, sir.

20         THE COURT:  What is she going to testify to,

21    is she going to give me a recitation of what the tax

22    laws provide?

23         MR. CHARBONNEAU:  Judge, not entirely.  What

24    Ms. Dickson is going to do, Your Honor, is, by way of

25    summary, explain to the Court what documents she

1    reviewed, and they are considerable.  When you get

2    down to the actual documents and controversy, Mr.

3    Gleason is right, there's not that many, but she had

4    to parse through a tremendous amount of documentation

5    to get there.  This issue of timing of transactions is

6    a tiny, tiny part of Ms. Dickson's expert opinion.

7            What Ms. Dickson is going to tell the Court

8    is, notwithstanding -- Ms. Dickson would tell the

9    Court a few things.  One, notwithstanding the

10   favorable determination letter that Merrill Lynch had

11   received with respect to the IRA, such a letter is

12   custom in practice, goes to the form of the IRA, not

13   the operation, and that the tax exempt status of the

14   IRA depends on how it is operated.

15           Ms. Dickson will then testify --

16           THE COURT:  Why is that not within the

17   purview of an expert?

18           MR. GLEASON:  Judge, that's not what they

19   disclosed, number one, and number two, that's still

20   arguing the law.  Your Honor has already decided cases

21   on the proper operation of otherwise qualified tax

22   exempt shelters.  That's not an expert testimony.

23           An expert is someone who is going to take

24   a -- is going to take a disciplined, not within the

25   realm of a lay person, or within the realm of the

1    Court, and is going to apply the facts as they discern

2    them, to the discipline that is without the expertise

3    of the Court, and arrive at an opinion.

4            Well, this "expert's opinion" can only be

5    whether the law applies to the facts, the facts

6    which 90 --

7            THE COURT:  No.  What he just said is, she's

8    going to testify that the practice of the IRS is to

9    send these type of letters, which I've seen in other

10   cases, only as to the form of the IRA, not as to the

11   operation of the IRA, and that letter is not

12   dispositive according to the practice.

13           Why is that not within the purview of

14   someone who is an expert dealing with these type of

15   matters?

16           MR. GLEASON:  It might be, but that's not

17   what's been disclosed as her opinion.  Her opinion is

18   disclosed in --

19           THE COURT:  Mr. Charbonneau, is that what

20   she's --

21           MR. CHARBONNEAU:  Judge, I have the expert

22   report here.

23           THE COURT:  I just asked a direct question,

24   is that what she's going to say?

25           MR. CHARBONNEAU:  It's a long report, Judge.

27

1     That would be certainly one of her -- one of the

2     things she would testify to.

3                THE COURT:  As to that, I'll deny the motion

4     in limine, because that narrow issue, I think may be

5     within the purview.

6                What's the next general topic?

7                MR. CHARBONNEAU:  Judge, the next general

8     topic is the nature of the transactions.

9                THE COURT:  What does that mean?

10               MR. CHARBONNEAU:  I'm about to tell you.

11    The Internal Revenue Code, Section 408, is not the

12    only Internal Revenue Code Section applicable to

13    IRAs.

14               Internal Revenue Code Section 4975 goes into

15    what kinds of transactions are prohibited with respect

16    to tax exempt vehicles such as this, and there is

17    no -- there does not appear to be a real bright line

18    of what's a prohibited transaction and what isn't.

19               THE COURT:  Are there cases that describe

20    what is prohibited and what is not?

21               MR. CHARBONNEAU:  There probably are, Judge,

22    and you can probably find them in the motion for

23    summary judgment, which we filed back in November or

24    December.

25               But what Ms. Dickson is going to testify to

1    is the number and the character of the transactions,

2    because some of the transactions were between the IRA

3    and Mr. Willis, some of the transactions were between

4    the IRA and another vehicle that Mr. Willis set up

5    because the IRA was going to hold a mortgage.

6                  702, Judge, of the Federal Rules of

7    Evidence --

8                  THE COURT:  Wait.  Wait.  You sort of

9    started to say a sentence and didn't finish it.  You

10   said she's going to testify that the nature of the

11   transactions, and then you sort of described --

12                 MR. CHARBONNEAU:  Are prohibited.  And I'm

13   having a hard time getting my arms around her

14   testimony, Judge, because it is very technical in

15   nature.

16                 She's going to testify that based on her

17   review of the records, based on the nature and

18   character of the transactions, she would testify that

19   certain transactions in which the debtor engaged in

20   pre-petition were prohibited, and those --

21                 THE COURT:  Based on what?

22                 MR. CHARBONNEAU:  Based on the nature of the

23   transacting party with the IRA.  Judge, the --

24                 THE COURT:  Is she doing it based on a case,

25   on a regulation, on a statute?

29

1          MR. CHARBONNEAU:  I think, Judge, she is

2     basing it on a -- she would be testifying based on

3     Revenue rulings, letter opinions, probably some cases,

4     a whole host of things.  Because as the Court may be

5     familiar --

6          THE COURT:  So why can't you just cite those

7     instead of having her testify to those?

8          MR. CHARBONNEAU:  We did in our motion for

9     summary judgment, Judge, and --

10          THE COURT:  I understand.

11          MR. CHARBONNEAU:  -- the motion was

12     denied.

13          THE COURT:  Why did I deny it?  Because

14     there were so many material facts in dispute

15     concerning this issue, not the law.

16          MR. CHARBONNEAU:  That's right.  But Judge,

17     the argument that Mr. Gleason is making, ignores

18     Federal Rule of Evidence 704.  Federal Rule of

19     Evidence 704 abolishes the very objection that Mr.

20     Gleason is making, which is called the ultimate issue

21     objection.  Lawyers used to say all the time, you

22     can't offer that expert testimony because it

23     encompasses the ultimate issue to be decided by the

24     trier of fact.

25          And 704 of the Federal Rules of Evidence

1    say, except as provided in subdivision (b), testimony

2    in the form of an opinion or inference otherwise

3    admissible is not objectionable because it embraces an

4    ultimate issue to be decided by the trier of fact.

5          And so, Judge, the ultimate issue to be

6    decided by the trier of fact, that's you, is whether

7    these IRAs are exempt under 522(b)(3), I think it's

8    (C) is the exemption he's traveling under.

9          And Ms. Dickson is never going to testify to

10   that.  She's not qualified to testify about that.

11   That's your province, Judge, not Ms. Dickson's.

12         What Ms. Dickson is going to testify is that

13   these IRAs, over the years, were used in such a manner

14   and infected with tainted cash as money was rolled

15   over into the various IRAs, that the various

16   transactions were prohibited under, I think I said IRC

17   4975, which rendered them taxable under 408.

18         The ultimate issue, Judge, of whether

19   they're exempt or not, is still yours.  And so really,

20   Judge --

21         THE COURT:  I'm still trying to figure out

22   why that's any different than her laying it out in a

23   brief for me, or you laying it out in a brief for

24   me.

25         MR. CHARBONNEAU:  I suppose we could, if we

1    could get a fact stipulation, Judge.  Actually,

2    Judge --

3              THE COURT:  That's not the issue.  There's

4    going to be a trial where the evidence is put in, and

5    so my question is, why can you then just not lay it

6    out in a brief, based on the regs, the Code, meaning

7    the IRS Code, and any case that interprets either or

8    both?

9              MR. CHARBONNEAU:  I suppose we could, Your

10   Honor, but what Ms. Dickson is --

11             THE COURT:  That's his objection right

12   there.

13             MR. CHARBONNEAU:  Right.  Okay.  But what

14   Ms. Dickson is here to do, Judge, is to assist the

15   trier of fact, as I'm sure their expert would assist

16   the trier of fact, in laying out facts from the

17   documents that have been obtained, most of which have

18   been stipulated to, Mr. Gleason signed a stipulation

19   with me right before the hearing on the injunction

20   provided where Mr. Bakst was representing Ms. Menotte,

21   and then applying those facts to a very complex set of

22   laws, rules, regulations and revenue letters.

23             Because Judge, the law, the tax law doesn't

24   evolve like the law in the Bankruptcy Court, or the

25   law in the State Court.  I don't even pretend to

1    understand, Your Honor, how the law evolves in the tax

2    arena, but in addition to District Court opinions,

3    which are the trial court for the tax code, you have

4    Code of Federal Regulations, you have revenue rulings,

5    you have letter opinions, you have --

6              THE COURT:  Is there any question, Mr.

7    Gleason, that the Court can consider all those type of

8    rulings as authority to base this Court's opinion?

9              MR. GLEASON:  Fortunately, Judge, that's

10   your job.  You're supposed to call out the sources of

11   law and apply them to the facts.  The facts here are

12   very simple.  It's outdates and indates.

13             THE COURT:  Mr. Charbonneau, I'm just trying

14   to figure out why this lady's expert testimony is any

15   different than what she or you would put in a brief to

16   me.  Here are the facts, here are the rulings, here's

17   the Code, and this is the conclusion the Court should

18   reach.

19             MR. CHARBONNEAU:  I'm going to answer that

20   by first paraphrasing.  Putting aside for a moment,

21   704, which I think should put this debate to rest.

22             THE COURT:  I think 704 is a red herring in

23   this regard.  But anyway.

24             MR. CHARBONNEAU:  I had excerpt 702, which

25   says, if scientific, technical, or other specialized

1    knowledge will assist the trier of fact to understand

2    the evidence, or to determine a fact in issue, a

3    witness qualified as an expert by knowledge, skill,

4    experience, training, or education, may testify

5    thereto in the form of an opinion otherwise.  And then

6    it that goes into various numbers.

7             Judge, Ms. Dickson has specialized

8    knowledge, based on the curriculum vitae, which is

9    part of our expert disclosure, that will assist the

10   trier of fact, that's you, in rendering an opinion.

11   Judge, otherwise --

12            THE COURT:  I asked the question, how is her

13   testimony going to be any different than if you

14   offered Mr. Bakst's testimony as a bankruptcy lawyer

15   and expert, vis-a-vis whether the debtor's discharge

16   should be granted?

17            MR. CHARBONNEAU:  I'm glad you asked that

18   question, Your Honor.  Because the Court, in the

19   United States of America versus Yagman (phonetic),

20   which is a Central District of California case, was

21   presented with a very, very similar issue.  In that

22   case, Your Honor, the United States was prosecuting

23   Mr. Yagman for bankruptcy crimes.  And the United

24   States was offering the testimony, the expert

25   testimony of a gentleman by the name of Jeffrey

34

1    Goldman, who is a bankruptcy lawyer.

2          Mr. Goldman was going to testify on one, the

3    bankruptcy process generally and specialized

4    bankruptcy terms, two, the kinds of information

5    debtors disclose in Chapter 7 proceedings and the

6    purposes of those disclosures, three, the role of the

7    bankruptcy trustee in the bankruptcy process and the

8    various outcomes of a Chapter 7 bankruptcy, and four,

9    the significance of various false statements,

10   omissions, and concealments alleged in the first

11   superceding indictment.

12         The debtor/defendant's lawyer objected,

13   saying that these were easily discoverable by the

14   Court, issues of ultimate fact, and the testimony

15   should be excluded.

16         The District Court denied what was, in

17   effect, a motion in limine, and said, although -- in

18   part, and I'm quoting now, "Although the opinion on

19   the deductibility of the interest was intimately

20   related to the question of" -- I'm sorry, Judge,

21   excuse me --

22         THE COURT:  Wrong paragraph?

23         MR. CHARBONNEAU:  Yes, wrong paragraph.  The

24   Court -- I have a whole bunch of stuff highlighted

25   here.  The Court ultimately denied the motion in

1    limine and said, "It is well established that an

2    expert may answer questions based on facts offered

3    in the form of a hypothetical question, and that the

4    expert could otherwise opine on these fact issues and

5    give his testimony".

6          Judge, were those the ultimate issues of

7    fact that --

8          THE COURT:  I don't think that's the issue.

9    To me that case, I would agree one hundred percent

10    with that, because that's similar to the first issue

11    raised by Mr. Gleason, dealing with general practices,

12    and what have you, through the bankruptcy system.  I

13    didn't hear you say the witness stood up and testified

14    that this is bankruptcy law and Court, Judge,

15    whomever, you should rule ultimately because this is

16    what the law requires.

17          I agree that a bankruptcy lawyer or trustee

18    could come in and testify, generally my experience as

19    an expert bankruptcy lawyer or trustee would indicate

20    that a debtor should do X, Y, Z, or if they don't,

21    this is the effect.

22          If they fail to disclose -- a case that I

23    just had with Mr. Bakst, the debtor failed to disclose

24    an asset, and this is why it has an adverse effect on

25    the bankruptcy estate or the system.  That I agree

1    with.  Which is why I denied the motion in limine as

2    to the first issue.

3            The second sounds to me like it's just case

4    law.  So I'm going to grant the motion in limine as to

5    that issue, that type of testimony, where she just

6    takes the facts and says, based on those facts, the

7    law says X, Y, Z, and it's not because of 704 that

8    she's testifying to the ultimate conclusion, but that

9    she's just testifying as to the law, and that's the

10   Court's purview to determine what the law should

11   require, based on the specific facts.

12           Frankly, that's without prejudice to you

13   arguing, or you parroting what the expert would say,

14   these are the cases, these are the regs, this is the

15   code provisions, and this is the facts we've proven,

16   and therefore, Judge Hyman, you should rule such and

17   such.  And that's why I think that that's

18   inappropriate for an expert, but can be argued through

19   briefs or appropriate submissions to the Court.

20           MR. CHARBONNEAU:  Your Honor, let me ask

21   this.  We have to, as part of the pretrial order,

22   disclose direct testimony of either fact or expert

23   witnesses by a date certain.  Might I suggest, Your

24   Honor, that we have the ability to disclose what would

25   be Ms. Dickson's direct testimony, and at that time

1    Mr. Gleason can renew very simply with a one page, you

2    know, I reiterate my prior motion in limine, and at

3    that time have the Court rule on the propriety of the

4    motion in limine?  Because at this point --

5              THE COURT:  I can tell you where -- I

6    believe I know where Mr. Gleason is going, and that

7    is, if I rule for him on this particular issue, he may

8    not have an expert, so he needs a ruling.  Mr.

9    Gleason.

10             MR. GLEASON:  Judge, that is exactly why I

11   need the answers to the request for admissions,

12   because I won't need an expert if they answer one

13   request for admission on each of the IRA issue,

14   there's only three, that there was a qualification

15   letter in effect as of the date of filing.

16             THE COURT:  That's why I'm letting her

17   testify as to the practice concerning these letters,

18   and whether that is dispositive, despite the actual

19   treatment or practices of the debtor.

20             MR. GLEASON:  Right.  And I don't have any

21   problem with that.  I tried to write that down as best

22   I could.

23             But the point being, Judge, that the statute

24   that we're traveling under says, if there's a

25   qualification letter in effect on the date of filing,

Ouellette & Mauldin Court Reporters  (305)358-8875

1    there's a presumption --

2              THE COURT:  Different issue.

3              MR. GLEASON:  Right.

4              MR. CHARBONNEAU:  But, Judge --

5              THE COURT:  But see, I don't need her to

6    say, these are the facts that have been proven.

7    Because you have to put in -- the expert, the way it

8    has to work is, you have to put in the underlying

9    facts, which I assume you're going to do, either

10   through stipulation, documents, or other witnesses,

11   and then she would say, based on those facts, the law

12   says, not a valid IRA.

13             MR. CHARBONNEAU:  Judge, the motion in

14   limine is being granted on an expert disclosure.

15   There is no testimony that's been proffered.

16             THE COURT:  I understand.  I'm just giving

17   you -- I guess I'm giving you fair warning, that's my

18   ruling if it doesn't.

19             I agree, the motion in limine dealt with, I

20   shouldn't let her testify because she's misstating the

21   facts.

22             MR. CHARBONNEAU:  She hasn't stated

23   anything, Judge.

24             THE COURT:  I understand.  And I'm not

25   denying it -- I'm not granting the motion in limine

Ouellette & Mauldin Court Reporters  (305)358-8875

39

1    based on that, I'm just granting it purely on, I guess

2    I'm telling you, I'm not going to permit her to

3    testify as to the law, I will allow her to testify as

4    to the practices, the general implication of, as an

5    expert in her field, of one of these letters, and the

6    effect of the letter in light of practices of the

7    debtor, transactions of the debtor, or any third

8    party.

9           MR. CHARBONNEAU:  Judge, would that --

10    I think if I understand the ruling correctly, and I

11    want to make sure I understand it, because it's

12    important.

13           THE COURT:  I understand.

14           MR. CHARBONNEAU:  Is not having proffered

15    any testimony of Ms. Dickson yet, you're not

16    precluding her as an expert, you're just precluding

17    her as an expert on telling you what the law is.

18           THE COURT:  Yes, sir, that's what I'm

19    telling you.

20           MR. CHARBONNEAU:  I can live with that.

21           THE COURT:  Okay.  I'm not precluding her

22    from testifying at all.  I thought I made that clear.

23    On that one first topic you raised that she's going to

24    testify to, she can testify as an expert.  I don't

25    need her to testify as to the law, assuming that law

1    is based on regs, opinion letters by the IRS, whatever

2    you call them, statutes, cases, all those things that

3    the Court considers in making a ruling.

4            MR. CHARBONNEAU:  Very good.  I appreciate

5    your time, Judge.

6            MR. GLEASON:  Judge, I'd ask for fees on the

7    motion for protective order.

8            THE COURT:  Denied.  I don't think it was

9    made in bad faith.

10            MR. GLEASON:  It's not -- bad faith isn't

11    the test, Judge.  If Your Honor denies it, we're

12    entitled to fees under the applicable rules.

13            THE COURT:  Well, I'm denying them.  You're

14    telling me the local rules say if I deny a motion for

15    protective order there's an automatic award of fees?

16            MR. GLEASON:  Federal Rules.  Would you like

17    me to walk through them with Your Honor?

18            THE COURT:  No.  You can file a motion to

19    reconsider.  I can't imagine that the rules say --

20            MR. GLEASON:  It says shall.  I'll file a

21    motion.

22            THE COURT:  Which Federal Rule?

23            MR. CHARBONNEAU:  I would imagine it's 7026,

24    Judge.

25            THE COURT:  Protective order, (c)?

1          MR. BAKST:  I think it refers under 7037.

2          THE COURT:  37(a)(1).  First of all, that

3    deals with expenses.

4          MR. GLEASON:  7026 requires that a party

5    from whom discovery is sought has to accompany a

6    motion for protective order, that the movant has, in

7    good faith, conferred or attempted to confer with the

8    other affected parties.  That did not happen here.

9          THE COURT:  That's a different issue.

10         MR. GLEASON:  I'm getting there.  If the

11   motion for protective order is denied in whole or in

12   part, the Court --

13         THE COURT:  Let's take it step by step.  Did

14   you consult with Mr. Gleason before you filed the

15   motion?

16         MR. CHARBONNEAU:  Judge, I didn't, and there

17   were several paragraphs in his response which related

18   to that.

19         And the reason why I didn't is, I didn't

20   think to, because the motion to continue the second

21   pretrial, said, I'm going to file an ex parte motion

22   and order.  I said at the pretrial, hey, I don't think

23   this discovery should be answered, and you said, file

24   a motion.  So Judge, I kind of didn't even think to

25   consult, because I figured it was an issue of which

1    the parties disagreed.

2              Ordinarily I would comply with the local

3    rule in all instances and do that, but in that

4    instance, I didn't think it was really necessary under

5    the circumstances.

6              7037-5 talks about the award of fees and

7    expenses, but it says that the Court doesn't have to

8    do it, if it's, i, the movant filed a motion before

9    attempting in good faith to obtain disclosure.  I

10   think that was obviated under the circumstances.  And

11   ii, the opposing party's non-disclosure, response, or

12   objection was substantially justified, or iii, other

13   circumstances make an award of expenses unjust.

14             THE COURT:  In this case I find that it

15   would make the circumstances unjust.

16             MR. CHARBONNEAU:  Thank you, Your Honor.

17             MR. GLEASON:  I'll file a motion, Judge,

18   that's not what the rule says.

19             THE COURT:  Thanks.

20        (The proceedings were concluded at 11:00 a.m.)

21

22

23

24

25

43

```
 1              C E R T I F I C A T E

 2

 3    The State of Florida     )

 4    County of Palm Beach     )

 5

 6              I, JACQUELYN ANN JONES, Court Reporter,

 7    certify that I was authorized to and did

 8    stenographically report the foregoing hearing; and

 9    that the transcript is a true record of my

10    stenographic notes.

11              I further certify that I am not a relative,

12    employee, attorney or counsel of any of the parties,

13    nor am I a relative or employee of any of the parties'

14    attorney or counsel connected with the action, nor am

15    I financially interested in the action.

16

17              In witness whereof I have hereunto set my

18    hand and seal this  29th  day of  September, 2008.

19

20                   _____

21                        JACQUELYN ANN JONES

22                        Commission No. CC 995956

23                        Expires Feb 18, 2009

24

25
```

Ouellette & Mauldin Court Reporters  (305)358-8875