UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:
ERNEST W. WILLIS,                                            CASE NO.: 07-11010-BKC-PGH
_____Debtor_____/                        Chapter 7
And
In re: ERNEST W. WILLIS,                                     CASE NO.: 07-11010-BKC-PGH
_____Debtor_____/
DEBORAH C. MENOTTE, Trustee,
              Plaintiff,
vs.                                                          Adv. Proc. No.: 08-01383-PGH-A
ERNEST W. WILLIS,
_____Defendant_____/

**BRIEF OF ERNEST W. WILLIS**
**IN OPPOSITION TO OBJECTIONS TO IRA EXEMPTION**

**KEVIN GLEASON, P.A.**
4121 N. 31st Avenue
Hollywood, Florida 33021-2011
Attorneys for Mr. Willis
(954) 893-7670

On the Brief
Kevin C. Gleason, Esquire

January 26, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
    NATURE OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
    PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

ARGUMENT AND CITATION TO AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . -20-
    BAPCPA Preempts State Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
    BAPCPA creates an irrebuttable presumption. . . . . . . . . . . . . . . . . . . . . . . . . . -22-
    BAPCPA provides the exclusive test for "qualification". . . . . . . . . . . . . . . . . . -22-
    Response to Memorandum of Law of Red Reef and the Trustee. . . . . . . . . . . . . -29-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

# TABLE OF AUTHORITIES

**Federal Cases**

Acosta Rivera v. Segarra Miranda, 376 B.R. 382 (D.P.R. 2007). . . . . . . . . . . . . . . . . . -27-

Clarke v. Commissioner, T.C. Memo. 1994-390 (1994). . . . . . . . . . . . . . . . . . . . . . . -30-

Cohen v. Mathews (In re Mathews), 2009 U.S. App. LEXIS 102 (11th Cir. 01/05/09)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

Coop v. Frederickson (In re Frederickson), 545 F.3d 652 (8th Cir. 10/27/08). . . . . . . -27-

Davis, In re, 108 Fed. Appx. 717(3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918). . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

Dzikowski v. N. Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.), 478
F.3d 1291 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

Englander v. Mills (In re Englander), 95 F.3d 1028 (11th Cir. Fla. 1996). . . . . . . . . . -25-

Glasgow Village Development Corp. v. Commissioner, 36 T.C. 691(1961). . . . . . . . . -28-

Grogan v. Garner, 498 U.S. 279 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-, -26-

Harris v. Commissioner, T.C. Memo. 194-22(1994). . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Havoco of Am. v. Hill, 790 So. 2d 1018 (Fla. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . -25-

Hockaden and Associates, Inc. v. Commissioner, 800 F.2d 70 (6th Cir. 1986). . . . . . -29-

Holden v. Stratton, 198 U.S. 202 (1905).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

Hughes, In re, 293 B.R. 528 (Bankr. M.D. Fla. 2003). . . . . . . . . . . . . . . . . . . . . . . . . -29-

Lichstrahl, In re, 750 F.2d 1488 (11th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

McGowan v. Ries (In re McGowan), 226 B.R. 13 (B.A.P. 8th Cir. Minn. 1998). . . . . -22-

ii

Owen v. Owen, 500 U.S. 305 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

Patrick, In re 2008 Bankr. LEXIS 3419 (Bankr. C.D. Cal. 11/03/08). . . . . . . . . . . . . -25-

Patterson v. Shumate, 504 U.S. 753 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

Retail Clerks International Asso. v. Schermerhorn, 375 U.S. 96 (1963). . . . . . . . . . . . -20-

Ross-Tousey v. Neary (In re Ross-Tousey), 549 F.3d 1148 (7th Cir. 12/17/08). . . . . . -27-

Shaw v. Aurgroup Fin. Credit Union, 2009 U.S. App. LEXIS 336 (6th Cir. 01/09/09)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

Southern Pacific Transp. Co. v. Commissioner, 75 T.C. 497(T.C. 1980). . . . . . . . . . . -28-

Soza v. Hill (In re Soza), 542 F.3d 1060 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . -26-

Swift, In re, 124 B.R. 475(Bankr W.D. Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . -27-

US v. Fleet, 498 F.3d 1225 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -24-

Williams, In re, 339 B.R. 794 (Bankr. M.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . -28-

Wood v. Commissioner, 955 F.2d 908 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . -29-

Youngblood, In re 29 F. 3d 225 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

**Federal Statutes**

11 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

11 U.S.C. § 522. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-, -22-, -25-, -29-, -30-

26 U.S.C. § 408(d)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

26 U.S.C. § 4975 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

26 U.S.C. § 7503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

28 U.S.C. § 1334. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

28 U.S.C. § 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

**Federal Rules**

Bankruptcy Rule 4003(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Bankruptcy Rule 9006(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

**State Statutes**

Florida Statutes § 673.3101(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

**Other Authorities**

Constitution of the United States, Article I, Section 8. . . . . . . . . . . . . . . . . . . . . .  vi

S.D. Fla. L.R. 87.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

## STATEMENT OF THE ISSUES

Does 11 U.S.C. §522(b)(3) preempt applicable non-bankruptcy law?

Is the presumption of 11 U.S.C. §522(b)(4)(A) irrebutable?

Does the test for "qualification" contained in 11 U.S.C. §522(b)(4) exclude

"applicable non-bankruptcy law"?

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to: The Constitution of the United States, Article I, Section 8; 28 U.S.C. § 1334; 28 U.S.C. § 157; S.D. Fla. L.R. 87.2; and 11 U.S.C. §101 *et seq*.  This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).

# STATEMENT OF THE CASE

## NATURE OF THE CASE

Mr. Willis filed a personal bankruptcy under Chapter 7, asserting an exemption as to, *inter alia*, his Individual Retirement Accounts.  Two objections were filed, covering virtually every exemption.  All objections to exemptions were either overruled or withdrawn except objections to the IRA exemptions.  The Bankruptcy Court tried the objections to the IRA exemptions, and has reserved ruling thereon pending the submission of briefs by the parties.

## PROCEDURAL HISTORY

Mr. Willis adopts the Procedural History as stated by the Trustee and Red Reef in their Brief at Section A, paragraphs 1 through 7, and 9.  The "testimony" Sharon Quinn Dixon, Esq. [DE # 509] cannot be relied upon in any manner because such "testimony" was excluded by this Court's Order Granting Renewed Motion in Limine. [DE 518]. Further, the "testimony" of Sharon Quinn Dixon has nothing to do with the procedural history of this case.

## STATEMENT OF THE FACTS[1]

Mr. Willis adopts the facts as stated by the Trustee and Red Reef in their Brief except as otherwise noted below.  The following paragraphs correspond to the enumerated paragraphs in the Brief of the Trustee and Red Reef.

12.    As Red Reef and the Trustee noted at paragraph 32 the CMA account was joint with the late Mrs. Willis.  See ¶¶ 32, 59, 60, 61, 63, 65, 68, and 70 of the Pretrial Order

13.    The assertion that "Ocean One North, Inc. ("Ocean One") was a corporation was owned by Willis and his wife Sunday Willis" is incorrect.  In  ¶ 16 of the Pretrial Order, the parties stipulated that "Mr. Willis and his wife, Sunday Willis ("Mrs. Willis") held a 50% shareholder interest in Ocean One North, Inc. from and after 1989 or 1990 through dissolution of the company. Mr. Matthew Giacomino and his wife held the other 50% interest in Ocean One North, Inc."

14.    Mr. Willis testified that all advances to Ocean One through Beacon were made from the joint CMA account.

15.    The assertion that "Mr. Willis was embroiled in a stockholder derivative action, concerning Ocean One North, Inc., with Mr. Giacomino" places the dispute in an

---

[1] The trial transcripts are not available until February 2, 2009.  As a consequence, precise citations to the page and line number of testimony is not possible until after that date.  An Amended Brief of Ernest Willis will be filed in which the page and line numbers of relevant testimony will be included.

incorrect chronology and relates this dispute with the Settlement Agreement with Peoples Southwest.  The Settlement Agreement with Peoples Southwest preceded the stockholder derivative action between Mr Willis and Mr. Giacomino.  See ¶ 18 of the Pretrial Order.

16.    The description of the transaction through which Mr. Willis acquired the Peoples Mortgage is vague and confusing.  See ¶¶ 16 through 26 of the Pretrial Order for a clear, concise statement of the facts related to the Peoples Mortgage acquisition.  Mr. Ross and Mr. Willis both testified that the Peoples Mortgage closing was a "dry" closing where documents were executed, but no money changed hands.  Merrill Lynch records show that the withdrawal from Mr. Willis' IRA account did not occur until December 21, 1993. See Red Reef's Ex. 9, page 2, entry of 12/21/1993.  John A Coniglio testified that the correct date for transfer out of the IRA account is December 21, 1993.

17.    Again Red Reef and the Trustee demonstrate confusion about the Peoples Mortgage acquisition by stating that "Willis testified that in 1993, he was having trouble obtaining the money to *payoff* the mortgage since he had not anticipated *paying* the entire Peoples Southwest mortgage." All documentation and testimony regarding the Peoples Mortgage transaction reveals that it was an assignment, not a payoff.  Again, See ¶ 20 of the Pretrial Order for the correct presentation of the facts surrounding the Peoples Mortgage acquisition.

19.    And again Red Reef and the Trustee are not clear about the Peoples Mortgage acquisition by stating that "By December of 1993, Ernest Willis had finally accumulated enough funds in his IRA account to *pay off* the Peoples Southwest mortgage." It was an acquisition, not a pay-off. Twisting words is the only way that one could possibly contend that "Willis admitted that he borrowed $700,000 from the Merrill Lynch IRA in order to acquire the People's Southwest mortgage and note owed by Ocean One North, Inc." Not only did Mr. Willis correct the leading question quoted[2], he later testified that he never borrowed from his IRA. Irving Silver, the sole witness presented by Red Reef and the Trustee to attempt to establish relevant transaction dates testified as follows.

Q.  Mr. Silver, does Merrill Lynch permit borrowing from IRA accounts?

A.  No.

Q.  Does Merrill Lynch only permit withdrawals and deposits?

A.  Yes.

Silver Depo, Page 21, lines 7-12.

20.    The assertions in paragraph 20 are true, but deceptive, and obviously

---

[2] Q.    So what you did was you borrowed $700,000 from your IRA in order to go ahead and acquire the mortgage and note from People's Southwest that was owed by Ocean One North, Inc., isn't that true?
A.    Yes, I withdrew the money.
See E. Willis Test. I, Page 31, lines 12-18; Page 32, lines 13-18.

-4-

intended to mislead the Court into finding that the withdrawal from Mr. Willis' IRA

account occurred before December 21, 1993, the date reflected on the relevant Merrill

Lynch account statement.  See Red Reef's Ex. 9, page 2, entry of 12/21/1993.  John A

Coniglio testified that the correct date for transfer out of the IRA account is December

21, 1993.

21.    Again attempting to blur a very clear transaction, Red Reef and the Trustee

assert the half-truth that "On Monday, December 13, 1993, there was a loan closing in

escrow pursuant to the Settlement Agreement."  As stated above, both Mr. Ross and Mr.

Willis testified that the closing was "dry" and was not funded until later.  See Red Reef's

Ex. 9, page 2, entry of 12/21/1993.  John A Coniglio testified that the correct date for

transfer out of the IRA account is December 21, 1993.  In a refreshing moment of

candor, Red Reef and the Trustee admit that "Mr. Willis personally received assignment

of the Peoples Southwest mortgage from Peoples Southwest Mortgage Limited

Partnership."  In the Pretrial Order, at ¶ 21, it was stipulated that "Mr. Willis did not

actually assign the Peoples Southwest Mortgage to his Merrill Lynch IRA."

22.    While it is true that "Mr. Willis testified that he began to investigate the

possibility of putting the People's mortgage into his IRA in the early part of December

1993." Mr. Ross testified that he thought the transaction was not in compliance with IRS

requirements.  Mr. Willis testified that he knew he could not assign the Peoples

-5-

Mortgage to his IRA before he funded the transaction. The assertion that "After the closing, Ernest Willis attempted to place the mortgage and note directly into his IRA" is not followed by any citation to the record, because the assertion is complete fiction.

23. Mr. Willis agrees that "Harry Ross, Mr. Willis' personal attorney since 1992 (hereinafter "Mr. Ross") testified that Mr. Willis asked him to render an opinion addressing whether the People's mortgage could be put into the Merrill Lynch IRA." Mr. Ross' testimony is mis-characterized. Mr. Ross testified that he would not render an opinion that the Peoples Mortgage could go into the IRA because he thought it was an improper transaction. Again, Red Reef and the Trustee concede that "at no time were the mortgage and note placed in the Merrill Lynch IRA."

24. This paragraph is unnecessarily vague and argumentative when the Pretrial Order provides, at ¶ 27, as follows, "On Tuesday, February 22, 1994, Mr. Willis returned to the Merrill Lynch IRA the funds used in connection with an assignment of the People's Mortgage by borrowing from friends, including: Joan Pison, who took a mortgage on his homestead for $100,000; The Estate of James A Sawyer, $200,000 another mortgage; Nancy Willis, his sister, for $100,000 unsecured; Richard Willis, his late brother, for $100,000 unsecured; Robert Sirotek, a friend, for $100,000, unsecured." Since the funds for the Peoples Mortgage acquisition were withdrawn from Mr. Willis' IRA on December 21, 1993, the sixtieth day thereafter was Saturday, February 19, 1994, a holiday weekend following

which the first banking day was February 22, 1994.  Red Reef and the Trustee concede that

"The Merrill Lynch records and the public records of Palm Beach County, Florida, reflect

that the loan monies were rolled over within sixty (60) days of December 20, 1993."  Red

Reef and the Trustee continue to mis-characterize the withdrawal from the IRA as a loan,

but concede that the corresponding deposit occurred timely.

27.    The deposit tickets unequivocally prove the deposit date was February 22,

1994.  See Willis' Ex. I.

29.    It is true that "Mr. Willis admitted that the number of days between

December 20, 1993 and February 23, 1994 is 64 days."  That is irrelevant since the

withdrawal from his IRA occurred on December 21, 1993, and his deposit was made on

February 22, 1994, which is the 60th day under either 26 USC § 7503[3] or Bankruptcy

Rule 9006(a).  Mr. Willis did not admit "that he did not return the $700,000 to the IRA

within 60 days..."  The testimony quoted clearly shows that Mr. Willis responded to a

hypothetical question, not one based upon predicate facts in the record, i.e a withdrawal

date of December 21, 1993, followed by a deposit date of February 22, 1994.

30.    Mr. Willis did not testify "that he had borrowed from the IRA."  Mr. Willis

---

[3] 26 USC § 7503 provides, in pertinent part,

When the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday.

consistently responded to leading questions, correcting the persistent inquisitor each time, as noted in the testimony quoted by Red Reef and the Trustee.

32.     The fictional account, unsupported by fact or law continues as Red Reef and the Trustee assert that "The borrowing from the IRA started ..."

34.     No expert testimony, or any other testimony was introduced to support the assertion that "By January 31, 1997, the overall Merrill Lynch brokerage statement for the CMA account reflected that it had a negative value of minus $112,395.00."  The balance as of January 31, 1997 is not shown on Red Reef's Ex. "24" Vol. I Tab 2 (VL 0606080000623).  Rather, the cited pages shows the "Long Market Value", a term which is unexplained in the record.

35.     Mr. Willis never testified to the impossible asserted "borrowing" to "cover the shortfall in the CMA account..."   The redemption of cash from the IRA account in the amount of $230,000.00 occurred on February 10, 1997.  See Red Reef's 24 Vol. I Tab 2 (VL 0606080000621).

36.     Again, Mr. Willis never testified that he took a "loan from the IRA account..."

37.     It is true that "On Wednesday, February 5, 1997, Willis requested that Merrill Lynch transfer $230,000.00 from the Merrill Lynch IRA account to the CMA account."  However, it is undisputed, and un-refuted, that the withdrawal from the IRA

-8-

account did not occur until February 10, 1997.   See Red Reef's 24 Vol. I Tab 2 (VL

0606080000621) and the testimony of John A Coniglio, CPA.  Indeed, Mr. Silver did

testify that, according to the statements, Mr. Willis made a $230,000 withdrawal from

the IRA which was posted on February 7, 1997.  Silver Depo, Page 14, lines 9-14; Page

14, line 18 to Page 15, line 8.  Mr. Silver also testified that he was not qualified to

interpret the Merrill Lynch statements, and he could not testify as to the accuracy of

dates reflected thereon.

> Q.   Mr. Silver, does Merrill Lynch permit borrowing from IRA accounts?
> A.   No.
> Q.   Does Merrill Lynch only permit withdrawals and deposits?
> A.   Yes.
> Q.   When an account holder makes a deposit before February of 2008, if an
> account holder made a deposit after 1:00 p.m., wasn't it credited the next business
> day?
> A.   I don't know the policy on the deposits. It doesn't come to me.
> Q.   So, in other words, when you testified that the statements are accurate as to
> the deposit dates, you're not sure about it, right?
> A.   No, I'm not.
> Q.   So if you see a deposit ticket that has a date stamp from Merrill Lynch on it
> and the statement has a different date, which one is the actual deposit date?
> WITNESS.  I don't know.
> Q.   Okay.  Have you ever seen a sign near the cashier at Merrill Lynch which
> indicates that the deposits made after 1:00 p.m. are credited the next business day?
> A.   We have lots of signs.  So I can't say yes or no.
> THE WITNESS:  We have had signs that say -- I can't testify to time.  But we have
> had signs that have said if it comes in after a certain time, it will be credited the
> next day.
> Q.   Okay.  You're just not sure of the time of day?
> A.   No.
> Q.   Okay.  Now, do you have a law degree?
> A.   No.

Q.  Are you qualified to give legal opinions?

A.  No.

Q.  Do you have a certificate as a CPA?

A.  No.

Q.  Are you qualified to give opinions as to whether or not a particular transaction causes an IRA to become not exempt?

A.  No.

Q.  When a account holder requests a transfer from one account to the other, is that request carried out instantly?

A.  If we get the document, we carry it out.

Q.  Is it done instantly?

THE WITNESS:  It is usually done the same day.

Q.  If there were insufficient funds in the account at the time the request was made but subsequently additional funds came in, wouldn't the transfer be done after the funds became available?

THE WITNESS:  If the clients still put in the request.

Q.  In referring to the IRA statements, do you know what the difference between a debit and a credit is?

A.  Yes.

Q.  Do you know what it means when it says "redeemed"?

A.  Yes.

Q.  What does "redeemed" mean?

A.  "Redeemed" -- well, my interpretation of "redeemed" is when one of our money funds is redeemed into cash.

Q.  Okay.  It would not, then, be possible to transfer from one account to another until a  redemption had occurred, correct?

THE WITNESS:  Depending upon the nature of the cash.

Q.  So you're not sure?

A.  No.

Q.  What is a credit?

A.  A credit in an account -- in ours is when money or proceeds is put into the account.

A.  Debit is when we are -- when money is taken out of our account.

Q.  What does "funds delivery" mean?

A.  I have no idea.

Q.  What is a subscription?

A.  A subscription, as far as I am concerned, that I see is when we subscribe to a money fund.

-10-

Q.  Where do you derive that definition?

A.  That is just my understanding.

Silver Depo, page 21, lines 7 - 9; page 22 lines 14 - 23; page 23, lines 1 - 5, 7, 9 - 14, 24

- 25; page 24 lines 1 - 2, 4 - 21, 23 - 24; page 25 lines 2 - 5, 7 - 8, 10 - 23, 25; page 26,

lines 1, 3 - 17.

Mr. Silver was simply not the right witness to call if Red Reef and the Trustee were

attempting to have someone interpret the Merrill Lynch statements and ascertain the

dates of deposit, withdrawals, transfers, or redemptions.  He does not know how to do so.

As a matter of law, the CMA account is presumed to be held as tenants-by-

entireties, meaning that Mr. Willis "unfettered control" was only with the joinder and

consent of his late wife.[4]

38.  As to Mr. Silver's competence to testify, see paragraph 37 above.  The only

---

[4]     [T]he Florida Supreme Court has recently detailed what a court
should consider in determining whether property is owned as a
tenancy by the entireties, as opposed to a joint tenancy with right of
survivorship. See Beal Bank, SSB v. Almand & Assocs., 780 So. 2d
45 (Fla. 2001). The *Beal Bank* court recognized that "strong[] policy
considerations favor allowing [a] presumption in favor of a tenancy
by the entireties when a married couple jointly owns personal
property." *Id.* at 57, 62. ...[I]t held, "if a signature card does not
expressly disclaim a tenancy by the entireties form of ownership, a
rebuttable presumption arises that a tenancy by the entireties exists
provided that all the other unities necessary for a tenancy by the
entireties are established." *Id.*

*Cohen v. Mathews (In re Mathews)*, 2009 U.S. App. LEXIS 102 (11th Cir. Fla.
Jan. 5, 2009)

competent evidence of the date of the deposit of $230,000 into the IRA account was the deposit ticket, dated Thursday, April 10, 1997. See Exhibit J.

39.    Red Reef and the Trustee concede that on Exhibit J, "the time stamp on the Merrill Lynch deposit form shows 1:21PM on Thursday, April 10, 1997" which was the 59th day after the redemption date of February 10, 1997.

40.    Again, As to Mr. Silver's competence to testify, see paragraph 37 above.

42.    The redemption date, the date on which an investment of the IRA was converted into cash, was April 14, 1997, reflecting the amount of $240,000.00.  See Red Reef's Comp. Ex. "12" (VL 0606080000 594); Mr. Silver could not testify[5] to any other date, see paragraph 37 above.

43.    Mr. Silver's testimony was not competent, see paragraph 37 above.

44.    Red Reef and the Trustee concede that a deposit in the amount of $240,000.00 was made into the IRA account "at 1:51PM on June 6, 1997."  That date and time are consistent with Exhibit K.  Mr. Silver's testimony is not competent as to the date on which funds in the amount of $180,000 were withdrawn from the IRA.  John A Coniglio, CPA, testified that the redemption date, the earliest date on which funds could have been withdrawn from the IRA, was June 6, 1997.

---

[5]  While Red Reef and the Trustee define Mr. Silver's deposition of October 17, 2008 as "Silver Depo II", there is no Silver Depo I.  There is only one deposition of Irving Silver in this record, the earlier one having been excluded.

46.    John A Coniglio, CPA, testified that the redemption date, the earliest date on which funds could have been withdrawn from the IRA, was June 9, 1997.  See Red Reef's Comp. Ex. 13 (VL 060608000557 and VL 0606080000566).

47.    Mr. Silver's testimony is not competent as to the date on which funds in the amount of $180,000 were withdrawn from the IRA.  See ¶ 37 above.  John A Coniglio, CPA, testified that the redemption date, the earliest date on which funds could have been withdrawn from the IRA, was June 9, 1997.

48.    Mr. Silver's testimony is not competent as to the date on which funds in the amount of $180,000 were withdrawn from the IRA.  See ¶ 37 above.  John A Coniglio, CPA, testified that the redemption date, the earliest date on which funds could have been withdrawn from the IRA, was June 9, 1997.

49.    Mr. Silver's testimony is not competent as to the date on which funds in the amount of $180,000 were deposited into the IRA.  See ¶ 37 above.

50.    Red Reef and the Trustee concede that "On Wednesday, August 6, 1997, Willis prepared a deposit slip to provide $180,000.00 by check to the IRA account... dated August 6, 1997..." Red Reef and the Trustee mis-state the date of the Merrill Lynch stamp, which the Court noted on the record  was stamped on August 6, 1997.  See Debtor's Exhibit L.

51.     The deposit ticket for the $180,000.00 deposit indicates a date of August 6[6], 1997, not August 8 as continually claimed by Red Reef and the Trustee.  There is no evidence that " It was not credited due to an insufficient cash balance."

52.     The date of the redemption and therefore the withdrawal from the IRA account was August 11, 1997.  No matter how many time Mr. Silver is quoted, it does not make him competent to have testified.   See ¶37 above.  The Merrill Lynch statements show that the funds did not come out of the IRA account until August 11, 1997. See Red Reef's Ex."14" (VL 0606080000537).   The testimony of John A Coniglio, CPA is that the transfer out of the IRA was on August 11, 1997.

53.     According to the deposit slip, Exhibit M, the $252,000.00 was returned to the IRA account on Tuesday, October 7, 1997.  Red Reef and the Trustee concede that "The Court read into the record the IRA deposit ticket dated Tuesday, October 7, 1997 in the amount of $252,000 and stamped at 2:56 p.m.   Mr. Silver testified that he could not tell the actual deposit date where the deposit ticket had a different date than the statement.  See ¶37 above.  57 days elapsed between the redemption of funds from the IRA and the return of those funds to the IRA.

57.     The $270,000.00 distribution from Mr. Willis's IRA occurred on October 9, 1997, the date on which the funds were redeemed and transferred from the IRA account.

---

[6] Might reflect August 7, will need to refer to the transcript, but either way, the deposit was timely, either 59 or 60 days after redemption.

Thus is the testimony of John A Coniglio, CPA. See Red Reef's Ex. "15" (IS 72307-00098). Mr. Silver was not competent to interpret the Merrill Lynch statements. See ¶37 above. See Red Reef's Comp. Ex. 15 (VL 0606080000466).

58. The date on which a form is filled out is irrelevant. Mr. Silver cannot interpret the Merrill Lynch statements. See ¶ 37 above.

59. $282,000 was redeemed and withdrawn from the IRA on December 9, 1997 as testified to by John A Coniglio, CPA. See Red Reef's Comp. Ex. "15" (VL 0606080000466). Red Reef and the Trustee concede that "The Court read into the record the IRA deposit ticket dated December 8, 1997 in the amount of $270,000 and stamped December 8, 1997 at 1:41 p.m. The money was returned on the 60th day after being withdrawn.

63. The withdrawal of $282,000.00 from the IRA occurred on Tuesday, December 9, 1997. Red Reef and the Trustee concede that "The Court read into the record the IRA deposit ticket dated December 8, 1997 in the amount of $270,000 and stamped December 8, 1997 at 1:41 p.m."

64. Again, the paperwork, when it was completed, and which boxes were checked, is irrelevant. Mr. Silver is still not competent to interpret the Merrill Lynch statements. Red Reef's own exhibits prove the point. (IS 70307-00104); See Red Reef's Ex."15" (VL 0606080000465-66; VL 0606080000474); Silver Depo, Page 40, lines

2-16; Page 43, lines 1-20.

65.    Mr. Silver's testimony does not change the fact that Mr. Willis made a deposit into his IRA account on February 6, 1998 in the amount of $282,000.  Red Reef and the Trustee concede that "The Court read into the record the IRA deposit ticket dated February 6, 1998 in the amount of $282,000 and stamped February 6, 1998 at 2:12 p.m." This was 59 days after the redemption date of December 9, 1997.

67.    Mr. Silver cannot confirm anything.   He is not a designated records custodian.  He is not familiar with the policies of Merrill Lynch regarding deposits.  He cannot verify that the Merrill Lynch statements reflect the actual dates of the relevant transactions.  See ¶37 above.

68.    Mr. Silver can only read what is written on the Merrill Lynch statements. He has no personal knowledge of any transactions.  See ¶37 above.  Red Reef and the Trustee concede that "Debtor's Ex. P.  Is a true and correct copy of the deposit ticket for $282,000.00."

69.    The date on which the funds were redeemed from Mr. Willis' IRA to fulfill his distribution request for $285,000.00 was Monday,  February 9, 1998.

70.    Red Reef and the Trustee concede that "The Court read into the record the IRA deposit ticket dated April 7, 1998 in the amount of $295,000 [sic] and stamped February, 1998 [sic] at 1:37 p.m." (Should be $285,000 stamped on April 7, 1998).  The inquiry

-16-

should end there.

71.    The rollover monies were redeposited to the IRA 57 days after the
redemption.   See Red Reef's Ex."18" (VL 0606080000405)

72.    Mr. Willis agrees that "The deposit ticket is time stamped for 1:37PM on
April 7, 1998.  See Debtor's Exhibit "Q".  Debtor's Exhibit Q is a true and correct copy of
the deposit ticket for $285,000.00."  This was 57 days after the redemption from the IRA
account.

73.    Mr. Silver's  testimony is not useful.  See ¶37 above.

74.    The parties agree on at least one date. "On Wednesday, April 8, 1998,
Ernest Willis filled out a transfer form which directed that $283,000.00 be withdrawn
from the IRA and transferred to the CMA account.  See Red Reef's Ex. 18 (VL 060608
0000405).   The funds were replaced by deposits made on May 4, 1998 and June 4, 1998,
26 and 57 days later respectively.

75.    Mrs. Willis did not receive any funds from the sale of the Ocean One
Property.  See the Pretrial Order at paragraph 29 where Red Reef and the Trustee
stipulated

> "On or after April 30, 1998, Mr. Willis received in excess of $1,000,000.00 in
> proceeds from the sale of the Ocean One North, Inc. property. The proceeds were
> not made payable to Mr. and Mrs. Willis jointly."

76.    Mr. Willis' new IRA account at SunTrust was opened 26 days after the withdrawal of $283,000 from the Merrill Lynch IRA, and qualifies as an eligible rollover.  Instead of putting the money back into Merrill Lynch, Mr. Willis opened the new SunTrust account.  The total of all deposits into existing or new IRA accounts was exactly $283,000.

77.    Willis identified a request for a rollover/conversion in the amount of $90,000 from Southern Community Bank.  See Willis Exam II, page 69, lines 2 to 13. Willis testified that it was a transfer from Merrill Lynch to Southern Community Bank, on June 4, 2002. See Willis Exam II, page 69, lines 14 to 24.

78.    On Thursday, June 4, 1998, Mr. Willis made a deposit in the amount of $96,500.00.  See Exhibit T.

79.    Exhibit T is a deposit ticket in the amount of  $96,500.00 time stamped on June 4, 1998 at 3:25PM.

81.    Rather than return all the funds redeemed from the Merrill Lynch account on April 8, 1998, Mr. Willis opened a new IRA account at AmTrust Bank in  May of 1998, with a deposit of $96,500.00, well within 60 days of April 8.

87.    Mr. Willis testified as follows regarding his tax returns.

> 32.    For whatever reason, Red Reef makes much of the fact that I have not filed federal income tax returns since 1995.   Actually, the last year for which I filed federal income taxes was 1993, filed in 1996.
> 33.    The transactions which resulted in the transfer of most of my IRA

accounts to Merrill Lynch occurred in 1993, a year for which I did file a tax return.  I was audited by the IRS for 1993.  I provided all documentation requested, and was found to have no tax consequences from any IRA transactions.  There were no tax consequences resulting from the transfers into, or out of, the Merrill Lynch IRA.  Red Reef has not requested any documents regarding my 1993 taxes.

34.    In 1994, within 60 days of the withdrawal of funds from my Merrill Lynch IRA, I returned the funds used to take an assignment of the People's Mortgage.

35.    For 1995, I filed for an automatic extension, paid the amounts I calculated as due, and never filed a formal return.  My complete tax records for 1995, 1996, 1997, 1998, and 1999 were made available to Red Reef in December of 2007.  With all of the experts they have engaged, apparently none have determined that there was any reason for me to file a federal tax return in those years.

36.    I elected to forego filing returns after 1993 after consulting with Weinberg & Company, a firm of certified public accountants, who charged me for the consultation in July of 1997.

37.    My analysis of my taxable household income, my estimated and withheld tax payments, and my deductible expenses has yielded the conclusion that I have no tax liability for the years 1994 through 2006.  With no liability there is no reason for me to file a return.s

38.    As to my Merrill Lynch IRA, I received an annual statement each year indicating that there were no taxable events related to any withdrawals or contributions.  These documents were provided to counsel for Red Reef on December17 of 2007, as requested in my deposition of December 11, 2007.  I am sure that Red Reef's counsel noted the Merrill Lynch statements because a green "sticky note" was attached to the 1997 statement, and I did not put it there.

See Direct Testimony of Ernest W. Willis

   In addition to the facts stated above, the record also confirms that the Merrill

Lynch IRA account received a favorable determination under section 7805 of the

Internal Revenue Code of 1986.  See Red Reef's Exhibit 1.  There is no evidence that the

determination was not still in effect as of Mr. Willis' petition date.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter BAPCPA) is the most significant revision to the Bankruptcy Code (11 U.S.C. §101 *et seq.*) since its passage in 1978. BAPCPA is remedial in nature, primarily a reaction to the perceived expansive and inconsistent exercise of judicial discretion by the bankruptcy courts on numerous issues, including the invasion of otherwise exempt property by bankruptcy courts who examined the details of how tax deferred accounts were operated or maintained.

BAPCPA includes a provision, which preempts all other law, and excludes from the bankruptcy estate any property maintained in a qualified tax-deferred account, tested exclusively under bankruptcy law. The test for qualified status in BAPCPA is not the same as that used by bankruptcy courts prior to enactment of BAPCPA.

## ARGUMENT AND CITATION TO AUTHORITY

### *BAPCPA Preempts State Law*

"The purpose of Congress is the ultimate touchstone" in determining whether federal law precludes enforcement of state laws. *Retail Clerks International Asso. v. Schermerhorn*, 375 U.S. 96, 103 (1963). "[I]f Congress intended for federal law to preempt state law, it does." *United States v. Fleet*, 498 F.3d 1225, 1227 (11th Cir. Fla.

-20-

2007).

Insofar as it is relevant in this case, 11 U.S.C. § 522 (hereinafter Sec 522)

provides,

> (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in ... paragraph (3) of this subsection.
>
> ***
>
> (3) Property listed in this paragraph is—
>
> ***
>
> (C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.
>
> ***
>
> (4) For purposes of paragraph (3)(C) ..., the following shall apply:
> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.
>
> ***
>
> (C) A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) ... by reason of such direct transfer.
> (D) (i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) ... by reason of such distribution.
> (ii) A distribution described in this clause is an amount that—
> (I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and
> (II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

By the clear language of Sec 522, Congress has made IRA accounts exempt, even if a debtor resides in a State which has chosen not to exempt such accounts Since Congress has Constitutional authority to enact uniform bankruptcy laws, any State law contrary to the provisions of Sec 522 has been preempted.

### *BAPCPA creates an irrebuttable presumption*

Sec 522 (b) (4) provides, in pertinent part,

> For purposes of paragraph (3)(C) ..., the following shall apply:
>> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds *shall be presumed* to be exempt from the estate. (emphasis added)

"It is well established in federal law that the language 'deemed' or 'shall be deemed' in a regulation or statute creates a conclusive presumption and not a rebuttable presumption." *McGowan v. Ries (In re McGowan)*, 226 B.R. 13, 20 (B.A.P. 8th Cir. Minn. 1998)(citations omitted).

### *BAPCPA provides the exclusive test for "qualification"*

Once the irrebuttable presumption of Sec 522(b)(4)(A) is established by proving prior favorable determination, Sec 522(b)(4) provides the exclusive test for examination of specific transactions related to a "conclusively presumed exempt" account, as follows,

> (4) For purposes of paragraph (3)(C) ..., the following shall apply:
>
> ***
>
> (C) A direct transfer of retirement funds from 1 fund or account that is exempt

from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the
Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue
Code of 1986, or otherwise, shall not cease to qualify for exemption under
paragraph (3)(C) ... by reason of such direct transfer.

(D) (i) Any distribution that qualifies as an eligible rollover distribution within the
meaning of section 402(c) of the Internal Revenue Code of 1986 or that is
described in clause (ii) shall not cease to qualify for exemption under paragraph
(3)(C) ... by reason of such distribution.

(ii) A distribution described in this clause is an amount that—

(I) has been distributed from a fund or account that is exempt from taxation under
section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of
1986; and

(II) to the extent allowed by law, is deposited in such a fund or account not later
than 60 days after the distribution of such amount.

Notably absent from the foregoing formulation is the phrase "applicable non-bankruptcy law", replaced instead with the phrase "to the extent allowed by law..." Where the Bankruptcy Code incorporates tax law, such limitation or inclusion is expressed in terms of "applicable non-bankruptcy law."  See *Patterson v. Shumate*, 504 U.S. 753, 758-759 (1992)(§ 541(c)(2) excludes property from the debtor's bankruptcy estate by application of ERISA)(overruling, *inter alia*, *In re Lichstrahl*, 750 F.2d 1488 (11th Cir. Fla. 1985)).

There are numerous examples of the incorporation of "applicable non-bankruptcy law" into the Code.  *Dzikowski v. N. Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.)*, 478 F.3d 1291, 1297 (11th Cir. Fla. 2007)(citations omitted)("[T]he Bankruptcy Code does not create any setoff right; it merely preserves certain rights of setoff that exist under applicable non-bankruptcy law.")

-23-

A definition used in the tax code is not automatically presumed to apply to the Bankruptcy Code.  See *In re Davis*, 108 Fed. Appx. 717, 720 (3d Cir. 2004)("Further, neither the Bankruptcy Court nor the District Court explained why a definition found in the IRC would be controlling for purposes of the Bankruptcy Code.")

The United States Supreme Court has recognized that bankruptcy law does not automatically incorporate "applicable non-bankruptcy law" unless same is specifically so incorporated into the language of the Code.  *Grogan v. Garner*, 498 U.S. 279, 288 (1991)("[T]he fact that most States required fraud claims to be proved by clear and convincing evidence would not support the conclusion that Congress intended to adopt the clear-and-convincing standard for the fraud discharge exception.").

The United States Supreme Court has also held that where applicable non-bankruptcy law conflicts with specific provisions of the Code, the Code prevails. *Owen v. Owen*, 500 U.S. 305, 314 (1991)("Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.").

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Fleet*, 498 F.3d 1225, 1228 (11th Cir. Fla. 2007).

-24-

For the foregoing reasons, the phrase "to the extent allowed by law" must be read to mean something other than "under applicable non-bankruptcy law." [7]  For example, a debtor could not make a fraudulent transfer into an IRA, or place the proceeds of crime into an IRA, both of which would be violations of bankruptcy law.  Read more expansively, the phrase "to the extent allowed by law" might constitute a limitation on the amount of such rollovers, which can not exceed the amount of the corresponding withdrawal.

Exemption laws are interpreted liberally in favor of debtors.  *Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1031 (11th Cir. Fla. 1996). (Accord, *Holden v. Stratton*, 198 U.S. 202 (1905)). "Forfeitures are considered harsh penalties that are historically disfavored in law and equity, and courts have long followed a policy of strictly construing such statutes." *Havoco of Am. v. Hill*, 790 So. 2d 1018, 1022 (Fla. 2001).

Red Reef and the Trustee seek to strictly apply "applicable non-bankruptcy law", specifically, the tax code, to a determination of the exempt status of Mr. Willis's IRA account.  Under Sec 522, the only time a bankruptcy court is authorized to examine the level of detail suggested by Red Reef and the Trustee, is under Sec 522(b)(4)(B), which provides,

---

[7]Contra, and in dicta, *In re Patrick*, 2008 Bankr. LEXIS 3419 (Bankr. C.D. Cal. November 3, 2008).

> *If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805*, those funds are exempt from the estate if the debtor demonstrates that—
> (i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and
> (ii)
> (I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or
> (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure. (emphasis added).

"[I]t is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1066 (5th Cir. Tex. 2008)(Citations omitted). The absence of permissible inquiry as to the "substantial compliance with the applicable requirements of the Internal Revenue Code of 1986" is indicative of Congress' intent that bankruptcy judges cease scrutinizing debtor's exemptions under a microscope. *Grogan v. Garner*, 498 U.S. 279, 288 n.13 (1991)("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy")("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole")(citations omitted).

Prior to the enactment of BAPCPA, bankruptcy courts often examined the

substantial compliance of retirement plans to determine whether those plans qualified as exempt assets.  Contrast *In re Swift*, 124 B. R. 475, 484 (Bankr W.D. Tex. 1991)("The Movants' assertion that the plan does not conform to certain provision of the Tax Reform Act of 1986 is supported by the record.")with *In re Youngblood*, 29 F. 3d 225, 229 (5th Cir. 1994)("We are persuaded that the legislature intended for its own state courts (or bankruptcy courts applying Texas law) to defer to the IRS in determining whether a retirement plan is 'qualified' under the Internal Revenue Code.")

BAPCPA was passed largely in reaction to the disparate results achieved in similar cases due to the liberal exercise of discretion by bankruptcy judges.  *Shaw v. Aurgroup Fin. Credit Union*, 2009 U.S. App. LEXIS 336 (6th Cir. Ohio January 9, 2009) ("Congress enacted BAPCPA precisely so that judges would have less, not more, discretion under the Bankruptcy Code."); *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148 (7th Cir. 12/17/08)("It was clearly Congress's intent to eliminate ... discretion when it enacted BAPCPA."); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 10/27/08)("In enacting BAPCPA, Congress reduced the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses...").

"Moreover, a major goal of Congress in enacting the BAPCPA was to replace judicial discretion with specific statutory standards and formulas." *Acosta Rivera v.*

*Segarra Miranda*, 376 B.R. 382 (D.P.R. 2007)(citations omitted). "Unlike cases filed before BAPCPA became effective, the Court has less -- and sometimes no -- discretion to grant relief in BAPCPA cases under certain circumstances." *In re Williams*, 339 B.R. 794, 795 (Bankr. M.D. Fla. 2006).

Under the analysis presented by Mr. Willis' expert, John A Coniglio, CPA, the beginning date for measuring the 60 day permissible period for a rollover is the date on which funds were actually removed from the IRA account, in this case, the redemption date. The ending date for the period is the actual date of deposit. Book entries do not necessarily represent the reality of a transaction. See *Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 187 (1918); *Glasgow Village Development Corp. v. Commissioner*, 36 T.C. 691, 703 (1961); and *Southern Pacific Transp. Co. v. Commissioner*, 75 T.C. 497, 832-833 (T.C. 1980). The reality here is that the dates on which funds were removed from the IRA are known, and the dates on which deposits were made are known. Mr. Silver had no personal knowledge, and lacked the expertise to introduce any evidence deviant from the known facts.

Regarding the position of Red Reef and the Trustee that the CMA account lacked sufficient funds to cover some deposit checks, there is no evidence of any deposits into the IRA being dishonored. Florida Statutes § 673.3101(2) provides, in pertinent part,

> [I]f ... an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money

-28-

equal to the amount of the instrument were taken, and the following rules apply: (a)  In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check.

While Red Reef and the Trustee do not like the result prescribed by law, the availability of funds in an account when a check is presented is irrelevant so long as the check is honored.

### Response to Memorandum of Law of Red Reef and the Trustee

If "applicable non-bankruptcy law" was incorporated into Sec 522(b)(3), and if BAPCPA had not included an exclusive test for exemption under bankruptcy law, this Court would be obliged to follow the majority of cases (and its own precedent) in which the bankruptcy court closely examined the substantial compliance of various tax exempt accounts prior to October 17, 2005[8]. Mr. Willis' IRA would be found to be not in substantial compliance due to his multiple rollovers in a single year.

26 U.S.C.A. § 4975 (c) is not incorporated by reference into the test for exemption under Sec 522(b)(3).  Under the facts of this case, Mr. Willis did not violate that section. *In re Hughes*, 293 B.R. 528 (Bankr. M.D. Fla. 2003) is a pre BAPCPA case.  *Wood v. Commissioner*, 955 F.2d 908 (4th Cir. 1992) involved the actual transfer of notes into a pension trust.  *Hockaden and Associates, Inc. v. Commissioner*, 800 F.2d 70 (6th Cir.

---

[8] The effective date of BAPCPA.

1986) involved loans which predated ERISA and were still outstanding on the effective date of ERISA and has nothing to do with our fact pattern. *Harris v. Commissioner*, T.C. Memo. 194-22(1994) and *Clarke v. Commissioner*, T.C. Memo. 1994-390 (1994) have no relevance here as the taxpayers there withdrew funds to purchase personal residences, and did not return the funds to their plans..

26 U.S.C. §408(d)(3)(B) is not incorporated by reference into the test for exemption under Sec 522(b)(3).

Red Reef and the Trustee cite no cases regarding timing the 60 day permissible "rollover" period from any date sooner than when the custodian actually withdrew the funds from the IRA, or later than the date the taxpayer made the actual deposit into the account. To find that any of Mr. Willis' deposits did not occur within 60 days of the custodian's withdrawal from the IRA account, the Court would have to adopt the testimony of Irv Silver, who admitted that he had no knowledge regarding the policies of Merrill Lynch regarding deposits, and who admitted that his lack of knowledge countered his earlier testimony as to the accuracy of the Merrill Lynch account statements.

If the Merrill Lynch IRA is exempt under the test required by the Bankruptcy Code, then transfers from Merrill Lynch to other IRA accounts does not disqualify such accounts. The only ground cited by Red Reef and the Trustee for objecting to the

Amtrust and Fidelity Federal IRA accounts was the alleged transfer into those accounts of rollover deposits either directly from Merrill Lynch, or that were made as rollover deposits within 60 days of a withdrawal from Merrill Lynch. Since there is no issue as to whether the Fidelity Federal or Amtrust accounts had received favorable determination letters, those accounts are also exempt. The burden of proof has always been on Red Reef and the Trustee to sustain precisely the objections they have detailed in writing. Bankruptcy Rule 4003(c).

## CONCLUSION

BAPCPA preempts any "applicable non-bankruptcy law" and establishes a test under the Bankruptcy Code for the exempt status of tax-qualified accounts. The transactions of which the Trustee and Red Reef complain are not recognized by the bankruptcy test as disqualifying events. Mr. Willis requests the entry of an order overruling the objections of the Trustee and Red Reef to his claimed exemptions in his IRA accounts, and dismissal of the adversary proceeding.

## CERTIFICATE OF SERVICE

The following parties were served via the Notice of Electric Filing on January 26, 2009: all parties receiving electronic mail, including: • Michael R. Bakst efile2565@ruden.com, efile2558@ruden.com;FL65@ecfcbis.com
• Robert P. Charbonneau rpc@ECCcounsel.com, scunningham@ECCcounsel.com; phomia@ecccounsel.com
• Deborah Menotte menottetrustee@bellsouth.net, FL43@ecfcbis.com
• Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Respectfully submitted,

**KEVIN GLEASON, P.A.**
4121 N. 31st Ave.
Hollywood, FL 33021-2011
Attorneys for Mr. Willis
954 893 7670/954 893 7675 Fax

By: _s/Kevin C. Gleason___
     FBN 369500
     BankruptcyLawyer@aol.com