

Tagged Opinion

**ORDERED in the Southern District of Florida on August 06, 2009.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**In re:**                                              CASE NO.:07-11010-BKC-PGH

**Ernest W. Willis,**                              Chapter 7

        **Debtor.**
_____/

**MEMORANDUM ORDER SUSTAINING IN PART AND OVERRULING IN PART**
**TRUSTEE AND CREDITOR'S OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS**

**THIS MATTER** came before the Court for trial on December 3,
2008 upon Deborah C. Menotte's ("Trustee") *Objection to Debtor's
Amended Exemptions* (D.E. 379) and Red Reef, Inc.'s ("Creditor")
*Objection to Debtor's Claimed Exemptions to Amended Schedule C*
(D.E. 378), which were filed on July 17, 2008.  Ernest Willis ("Mr.
Willis") filed for relief under Chapter 7 of the Bankruptcy Code on
February 16, 2007 ("Petition Date").   He claimed exemptions

pursuant to 11 U.S.C. § 522(b)(3)(C) in the full value of the following three individual retirement accounts ("IRAs") on Amended Schedule C (D.E. 349): 1) a Merrill Lynch IRA valued at $1,247,000, 2) an AmTrust Bank IRA ("AmTrust IRA") valued at $109,000, and 3) a Fidelity Federal IRA ("Fidelity IRA") valued at $143,000. The Trustee and Creditor (collectively, "Movants") objected to Mr. Willis' claimed exemptions in the Merrill Lynch IRA, AmTrust IRA, and Fidelity IRA. The Trustee, however, subsequently withdrew her objection to Mr. Willis' claimed exemptions in the AmTrust IRA and the Fidelity IRA. (D.E. 406.)

**FINDINGS OF FACT**

**I.  The Merrill Lynch IRA**

Movants' objections regarding the Merrill Lynch IRA primarily concern Mr. Willis' conduct with respect to the Merrill Lynch IRA on two occasions: 1) when Mr. Willis used funds from the Merrill Lynch IRA to purchase an assignment of mortgage, and 2) when Mr. Willis used funds from the Merrill Lynch IRA to cover a shortfall in a joint personal stock brokerage account at Merrill Lynch ("Joint Brokerage Account") owned by Mr. Willis and his spouse, Sunday Willis ("Mrs. Willis").

The parties agree that on March 30, 1993, Mr. Willis opened the Merrill Lynch IRA with a transfer of funds from an IRA at Smith Barney. The Merrill Lynch IRA's Disclosure and Custodial Agreement

2

("Merrill Lynch IRA Agreement") (Movs.' Ex. 1) provides that "(t]he Internal Revenue Service has approved the Merrill Lynch IRA Custodial Agreement.  Approval by the IRS is a determination as to the form, not the merits, of this IRA."  Additionally, the Merrill Lynch IRA Agreement indicates that "[t]he Tax Code prohibits you from using your IRA to engage in certain transactions under penalty of losing your IRA's tax-deferred status.  For example, you may not borrow from your account, sell property to it or buy property from it."  *Id.*   The Merrill Lynch IRA Agreement further states that "[y]our Merrill Lynch IRA is 'self-directed,' which means you are responsible for managing the investments in your account."  *Id.*

### A.  Mr. Willis' Purchase of the Assignment of Mortgage on the Ocean One Property

The parties concur that Mr. Willis and Mrs. Willis owned a fifty percent equity interest in Ocean One North, Inc. ("Ocean One") from about 1989 through the dissolution of the business. Matthew Giacomino ("Mr. Giacomino") and Carol Giacomino owned the other fifty percent equity interest.  Ocean One's sole valuable tangible asset was an improved parcel of real estate at the corner of A1A and Palmetto Park in Boca Raton, Florida ("Ocean One Property"), which was encumbered by a mortgage ("Ocean One Property Mortgage").  By 1993, Ocean One was delinquent on mortgage payments.  At that time, Peoples Southwest Limited Real Estate

3

Partnership ("Southwest") held the assignment of the Ocean One Property Mortgage.

The parties agree that initially, Mr. Giacomino and Mr. Willis entered into a settlement agreement with Southwest to purchase the assignment of the Ocean One Property Mortgage. Mr. Giacomino, however, failed to provide his share of the funds. (Willis' Dep. 23.) Thus, Mr. Willis and Southwest executed a settlement agreement dated December 8, 1993, under which Southwest would assign the Ocean One Property Mortgage to Mr. Willis for $792,500. (Movs.' Ex. 2.) Mr. Willis testified at trial that in order to fund the purchase of the assignment of the Ocean One Property Mortgage, he authorized a $700,000 wire transfer from the Merrill Lynch IRA to an account jointly owned by Mrs. Willis and Mr. Willis at Sun Bank ("Sun Bank Account") on or about December 20, 1993. (Trial Tr. vol. 1, 31; Movs.' Ex. 9; Pretrial Order, 5.) The $700,000 was subsequently transferred to Southwest's escrow agent. Thereafter, Southwest executed an assignment of mortgage naming Mr. Willis as the assignee. (Movs.' Ex. 8.)

At trial, Movants' counsel asked Mr. Willis, "So what you did was you borrowed $700,000 from your IRA in order to go ahead and acquire that mortgage and note from People's Southwest that was owed by Ocean One North, Inc.; isn't that true?" (Trial Tr. vol. 1, 32.) Mr. Willis replied, "Yes, I withdrew the money." *Id.* Mr. Willis further testified that he asked Harry Ross ("Mr. Ross"), his

attorney, "for an opinion whether I could use the money from my IRA to buy the mortgage and put the mortgage into my IRA account." (Trial Tr. vol. 2, 33.)  Mr. Ross testified that he declined to render the opinion because he was not qualified as a tax expert and he did not think the transaction would be correct.  (Trial Tr. vol. 1, 8-9.)  While Mr. Willis used the Merrill Lynch IRA funds to purchase the assignment of the Ocean One Property Mortgage, the parties agree that Mr. Willis did not place the mortgage into an IRA account.  The parties also agree that in order to repay the $700,000 to the Merrill Lynch IRA, Mr. Willis borrowed funds from five friends and family members.  On or about February 22, 1994, Mr. Willis made two deposits, $498,000 and $202,000, into the Merrill Lynch IRA.  (Trial Tr. vol. 2, 68; Movs.' Ex. 10.)

Mr. Willis testified at trial that in late April or early May of 1998, he sold the Ocean One Property for approximately $1,200,000 (Trial Tr. vol. 1, 30) and deposited the sum into his personal account at SunTrust Bank ("SunTrust Account").  *Id.*

**B.   Shortfall in Mr. Willis' Stock Brokerage Account**

The Joint Brokerage Account contained Mercury Finance securities whose value dropped about $320,000, thereby creating a negative value of $112,395 in the account as of January 31, 1997. (Movs.' Ex. 24.)  In order to cover the loss caused by the drop in value of the Mercury Finance stock, Mr. Willis engaged in what

appears to be a check-swapping process[1] between the Joint Brokerage Account and the Merrill Lynch IRA beginning in early 1997. Mr. Willis testified at his deposition that through this process, he also attempted to avoid taxation on the Merrill Lynch IRA withdrawals by returning funds to the Merrill Lynch IRA within sixty days. (Willis' Dep. 62-63, Dec. 11, 2007.) Mr. Willis repeatedly engaged in transactions where he simultaneously transferred funds from his Merrill Lynch IRA to his Joint Brokerage Account, and transferred funds from the Joint Brokerage Account to his Merrill Lynch IRA.[2] At trial, Movants' counsel posed the following question to Mr. Willis:

> You walked in with an IRA withdrawal form, and you walked in with an IRA deposit, and you handed them to the tellers, and you waited for them to clear the withdrawal so that money could get into your [Joint Brokerage Account], so the [Joint Brokerage Account] could then credit back the check you're swapping into the IRA; isn't that true?

(Trial Tr. vol. 2, 60-61.) Mr. Willis responded, "It was done simultaneously, yes." *Id.*

Movants' counsel also asked Mr. Willis, "Now, sir, isn't it true that effectively what you did is every time you went to make a rollover return, you actually borrowed from the IRA every single time?" (Trial Tr. vol. 1, 29.) Mr. Willis replied, "I made a withdrawal from the IRA, yes." *Id.* Movants' counsel next asked, "You borrowed the money from the IRA to put into your [Joint Brokerage Account], so you could then write another check to your

6

IRA, correct?" *Id.* Mr. Willis responded, "I withdrew the money, yes." *Id.* at 30.

Mr. Willis made total deposits of $2,022,000 into the Joint Brokerage Account and total deposits of $1,835,500 into the Merrill Lynch IRA during 1997 and 1998. The net effect of these transactions results in a positive sum of $186,500 in the Joint Brokerage Account.

## II. The AmTrust IRA

Mr. Willis claimed an exemption in an AmTrust IRA valued at $109,000 on Amended Schedule C. The Creditor and Mr. Willis presented evidence that Mr. Willis owned three AmTrust IRAs without indicating which AmTrust IRA Mr. Willis claimed as exempt, or which AmTrust IRA the Creditor asserted its objections against. Therefore, on June 22, 2009, the Court entered an *Order Requiring Creditor and Debtor to Clarify Key Material Facts* (D.E. 554), which directed the Creditor and Mr. Willis to clarify material facts as to the AmTrust IRAs, with support of evidence in the record. As a result of certain inadequacies in the Creditor and Mr. Willis' responses (D.E. 556; D.E. 564), the Court was then required to set the matter for evidentiary hearing on July 13, 2009. Prior to the hearing, on July 12, 2009, Mr. Willis and the Creditor filed a *Stipulation in Response to Order Requiring Creditor and Debtor to Clarify Key Material Facts* ("Stipulation"). (D.E. 572.) Because

material facts remained unclear, the Court re-set the matter for evidentiary hearing on July 14, 2009.

In their responses, Mr. Willis and the Creditor were able to clarify that Mr. Willis claimed an exemption in an AmTrust IRA ending in 8629. (D.E. 564; D.E. 556.)  Pursuant to the Stipulation, Mr. Willis and the Creditor agreed that Mr. Willis funded the AmTrust IRA ending in 8629 with Merrill Lynch IRA funds.  (D.E. 572.)  However, the Merrill Lynch IRA funds were not transferred directly to the AmTrust IRA ending in 8629.

On or about June 6, 2002, Mr. Willis withdrew $90,000 from the Merrill Lynch IRA and deposited that sum with Southern Community Bank, which Fifth Third Bank acquired.  (Movs.' Ex. 25; D.E. 572.) On or about June 12, 2002, Mr. Willis deposited the $90,000 into a Fifth Third Bank IRA ending in 5140.  (Movs'. Ex. 23; D.E. 572.) On or about June 20, 2005, Mr. Willis authorized Fifth Third Bank to issue a check to "Amtrust Bank FBO Ernest W Willis" for $102,714.28, which notes "Closed Acct: . . . 5140." (Movs.' Ex. 23.)  About the same time, Mr. Willis used the $102,714.28 to purchase a twenty-four month certificate of deposit for the AmTrust IRA ending in 0412.

With respect to the AmTrust IRA ending in 0412, on or about October 27, 2006, Mr. Willis completed a retirement account withdrawal slip indicating $108,433 as the amount withdrawn, and authorized AmTrust Bank to issue a check payable to himself, in the amount of $108,433.60, noting "IRA CLOSED . . . 0412." (Movs.' Ex.

23; D.E. 572.)  On or about October 27, 2006, Mr. Willis deposited the funds into a checking account with Fidelity Federal Bank & Trust ("Fidelity Bank").  *Id.*  On or about December 27, 2006, Mr. Willis: 1) issued a check to himself for $108,433.60 against the Fidelity Bank checking account, 2) completed an IRA Contribution/Investment form for an AmTrust IRA ending in 8629 for a nine month certificate of deposit maturing on September 27, 2007, and 3) completed an IRA Rollover Certification form for the AmTrust IRA ending in 8629, which indicates a contribution of $108,433.60. (Movs.' Ex. 23.)

## III. The Fidelity IRA

Mr. Willis testified at his deposition that the Fidelity IRA was funded by monies from the Merrill Lynch IRA.  (Willis' Dep. 72; Movs.' Ex. 38.)  In particular, on or about August 16, 2002, Mr. Willis completed an IRA Transfer Request Form with Fidelity Bank, which authorized a transfer of $50,000 from the Merrill Lynch IRA to the Fidelity IRA.  (Movs.' Ex. 19.)  Mr. Willis' Merrill Lynch IRA statement for the relevant period indicates a $50,000 withdrawal to Fidelity Bank.  (Movs.' Ex. 21.)  On or about November 8, 2002, Mr. Willis completed another IRA Transfer Request Form with Fidelity Bank, which authorized a transfer of $10,000 from the Merrill Lynch IRA to the Fidelity IRA.  (Movs.' Ex. 20.) Mr. Willis' Merrill Lynch IRA statement for the relevant period reflects a $10,000 withdrawal to Fidelity Bank.  (Movs.' Ex. 22.)

Thus, the evidence showed that $60,000 in the Fidelity IRA came from the Merrill Lynch IRA.

Despite numerous opportunities to clarify the record, the record remains unclear as to certain factual issues involving the remaining balance of funds in the Fidelity IRA. These inadequacies, however, do not prevent the Court from rendering a decision. In the Stipulation, Mr. Willis and the Creditor agreed that an IRA with Fidelity Bank contains funds from an AmTrust IRA ending in 0440 (D.E. 572), which Mr. Willis opened on May 28, 1998 with a deposit of $96,500. (Willis' Ex. S.) However, neither the Creditor nor Mr. Willis were able to establish: 1) whether the funds were deposited into the same Fidelity IRA that Mr. Willis claimed as exempt, and 2) the source of the funds in the AmTrust IRA ending in 0440.

As to whether Mr. Willis deposited the funds into the same Fidelity IRA that he claimed as exempt, Mr. Willis and the Creditor stipulated that the "same money in the AmTrust IRA account ending in 0440 was rolled in and out of the different banks and was in the Fidelity Federal IRA account 9754, together with accumulated interest, at the time Mr. Willis filed his Bankruptcy Petition in 2007." (D.E. 572.) It remains unclear, however, whether the "Fidelity Federal IRA account 9754" is the same Fidelity IRA that Mr. Willis claimed as exempt. The record does not include evidence of the transfer into the IRA with Fidelity Bank.

10

At the July 14, 2009 hearing, Mr. Willis clarified that the "Fidelity Federal IRA account 9754" identified in the Stipulation is the same Fidelity IRA he claimed as exempt. He explained that the Stipulation erroneously identified the IRA as the "Fidelity IRA account 9754," and that the proper identification is "Fidelity Federal IRA plan 0100." The Creditor, however, refused to agree that the Fidelity IRA account 9754 is the same Fidelity IRA plan 0100, which Mr. Willis claimed as exempt. On July 21, 2009, the Creditor filed a memorandum of law addressing, in part, evidence relating to the Fidelity IRA (D.E. 582), though it did not address whether the Fidelity Federal IRA account 9754 is the IRA Mr. Willis claimed as exempt.

As to the source of those funds, Mr. Willis asserts that the AmTrust IRA ending in 0440 was funded by a rollover from the Merrill Lynch IRA. (D.E. 572.) The Creditor contends that the AmTrust IRA ending in 0440 was funded by a non-IRA account at SunTrust Bank. *Id.* Neither party cited evidence on the record to substantiate their respective assertions.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding pursuant to § 157(b)(2)(B).

11

I.   **Mr. Willis' Claimed Exemptions in the IRAs Pursuant to § 522(b)(3)(C)**

The issue before the Court is the propriety of Mr. Willis' claims of exemptions for the full value of the Merrill Lynch IRA, the Fidelity IRA, and the AmTrust IRA pursuant to § 522(b)(3)(C).

Section 522(b)(3)(C) provides that:

(b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

(3) Property listed in this paragraph is -

(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

11 U.S.C. § 522(b)(3)(C)(2007).

Sections 522(b)(4)(A) and (B) provide two different analyses to determine whether an IRA qualifies for exempt status under § 522(b)(3)(C). *See In re Patrick*, 2008 WL 5521181, at *3 (Bankr. C.D. Cal. Oct. 31, 2008). Section 522(b)(4)(A) applies when an IRA has received an IRS favorable determination. Section 522(b)(4)(B) applies when an IRA has not received an IRS favorable determination.

In this matter, it is undisputed that the Merrill Lynch IRA received a favorable determination under § 7805 of the Internal Revenue Code ("IRC")[3] and that the favorable determination was in effect on the Petition Date. The Merrill Lynch IRA Agreement provides that "[t]he Internal Revenue Service has approved the

12

Merrill Lynch IRA Custodial Agreement.  Approval by the IRS is a determination as to the form, not the merits, of this IRA."

As to the AmTrust IRA and the Fidelity IRA, the Creditor neither alleged, nor presented evidence to establish, that the IRAs had not receive an IRS favorable determination.  Therefore, the Court presumes that the AmTrust IRA and the Fidelity IRA received an IRS favorable determination, and further finds that the Creditor waived any objection to the AmTrust IRA and Fidelity IRA based upon the lack of a favorable ruling by the IRS.  *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992)(holding that failure to assert valid objection to claimed exemption prevents later challenges to validity of exemption).  Accordingly, in determining whether the subject IRAs are exempt, the operative section is § 522(b)(4)(A) which applies when an IRA has received an IRS favorable determination.

**A. Section 522(b)(4)(A) Creates a Rebuttable Presumption of Exemption**

Section 522(b)(4)(A) provides that:

(4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:

> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, *those funds shall be presumed to be exempt from the estate*.

13

11 U.S.C. § 522(b)(4)(A)(2007)(emphasis added).

Mr. Willis maintains that the presumption of exemption arising under § 522(b)(4)(A) is irrebuttable. However, based upon the plain language of the statute, the Court finds that the presumption is subject to rebuttal.

"The plain meaning of legislation should be conclusive, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242-43 (1989)(*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). The plain meaning of § 522(b)(4)(A) provides that where a retirement fund has received an IRS favorable determination that is in effect as of the petition date, the funds in the retirement funds "*shall be presumed* to be exempt from the estate." 11 U.S.C. § 522(b)(4)(A) (emphasis added). "Presume" is defined as "[t]o assume beforehand; to suppose to be true in the absence of proof." BLACK'S LAW DICTIONARY, 1223 (8th ed. 2004). The plain meaning suggests rebuttal evidence is appropriate. Moreover, courts have interpreted the words "presumed" or "presume" in the bankruptcy code to create a rebuttable presumption. *See, e.g., In re Tauter*, 402 B.R. 903, 905-06 (Bankr. M.D. Fla. 2009) (interpreting the language of § 707(b)(2)(A)(I) - "the court shall presume abuse exists" - to create a rebuttable presumption); *In re Larisey*, 185 B.R. 877, 881 (Bankr. M.D. Fla. 1995)(interpreting the

14

language of § 523(a)(2)(C) - "presumed to be nondischargable" - to create a rebuttable presumption); *FIA Card v. George (In re George)*, 381 B.R. 911, 916 (Bankr. M.D. Fla. 2007).

Additionally, statutory interpretation should not "be employed to render general words meaningless, since that would be to disregard the primary rules, that effect should be given to every part of a statute, if legitimately possible, and that the words of a statute or other document are to be taken according to their natural meaning." *Mason v. United States*, 260 U.S. 545, 554 (1923). "All words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751-52 (1st Cir. 1985)(citations omitted). Mr. Willis' interpretation of § 522(b)(4)(A) would render meaningless the words "presumed to be." Had Congress intended to create an irrebuttable presumption, it could have easily effectuated its intent by omitting "presumed to be" from § 522(b)(4)(A).

Therefore, the Court finds that while an IRS favorable determination, in effect as of the petition date, creates a presumption that the funds are exempt from the estate, parties may present rebuttal evidence to establish that the IRA was improperly operated under applicable IRC provisions, thereby disqualifying the IRA funds from exempt status under § 522(b)(3)(C). *See Plunk v.*

*Yaquinto (In re Plunk)*, 481 F.3d 302 (5th Cir. 2007); *Dzikowski v. Blais (In re Blais)*, 220 B.R. 485 (S.D. Fla. 1997).

In *In re Plunk*, the Fifth Circuit held that "the bankruptcy court and district court were permitted to reach an independent decision regarding the Plan's qualified status and were not bound by the previous IRS determination . . . ." 481 F.3d at 307. Because the IRS determined only whether the plan's structure was qualified, and not whether certain alleged misconduct disqualified the plan, there was no risk of conflicting decisions between the IRS and the court. *Id*. Similarly, in *In re Blais*, the district court reasoned that a bankruptcy court "would not have been 'second guessing' the IRS had it ruled on the qualification of the Profit Sharing Plan, but would have been making the initial inquiry into the operational aspects of such Plan." 220 B.R. at 489. Consequently, the *Blais* court found that the bankruptcy court committed reversible error by only relying upon an IRS favorable determination letter and failing to consider evidence regarding operational aspects of the plan. *Id.* at 490.

Mr. Willis' arguments that § 522(b)(4)(A) creates an irrebuttable presumption are unpersuasive. Generally, irrebuttable presumptions are disfavored in the law. *In re Wimmer*, 121 B.R. 539, 543 (Bankr. C.D. Ill. 1990). The Court also notes that Mr. Willis' reliance on *McGowan v. Ries* for the proposition that the language in § 522(b)(4)(A) creates an irrebuttable presumption is misplaced. *In re McGowan*, 226 B.R. 13 (B.A.P. 8th Cir. 1998). The

16

*McGowan* court did not find that the language at issue - "shall be presumed to be" - created an irrebuttable presumption. Instead, the *McGowan* court determined that "the language 'deemed' or 'shall be deemed' in a regulation or statute creates a conclusive presumption and not a rebuttable presumption." *Id.* at 20.

Also, Mr. Willis argues that Congress' enactment of BAPCPA intended, in part, to restrict bankruptcy courts' discretion to determine the exempt status of IRAs and promote deference to the IRS. However, the cases cited by Mr. Willis do not address a bankruptcy court's discretion when adjudicating objections to claimed exemptions in IRAs.[4] Moreover, as discussed above, deference to an IRS favorable determination as to the form of an IRA is unwarranted when the Court is assessing alleged improper operations of an IRA.

Lastly, Mr. Willis argues that once the irrebuttable presumption is established by proving prior favorable determination, § 522(b)(4) provides the exclusive test for examination of specific transactions related to a "conclusively presumed exempt" account. (Willis' Am. Opp'n Br.) The Court finds Mr. Willis' argument without merit. First, the Court finds that the presumption is rebuttable. Second, § 522(b)(3)(C) would be rendered meaningless if the Court accepted Mr. Willis' contention that § 522(b)(4) is the exclusive test. Section 522(b)(3)(C) permits a debtor to exempt retirement funds to the extent that those funds are in a fund or account that is exempt from taxation

17

under the IRC.  11 U.S.C. § 522(b)(3)(C); *see In re Patrick*, 2008 WL 5521181, at *5 ("[I]t is clear from the language of § 522(b) that funds from an IRA are exempt from the bankruptcy estate under federal law to the extent that they are exempt from taxation under the applicable sections of the IRC.").

### B. Rebutting the Presumption - Prohibited Transactions in the Merrill Lynch IRA

To rebut the presumption established under § 522(b)(4)(A), Movants argue that Mr. Willis is a disqualified person who engaged in prohibited transactions, the effect of which was to disqualify the Merrill Lynch IRA for exemption from taxation, and consequently disqualify the IRA from bankruptcy estate exemption under § 522(b)(3)(C).  Section 408 of the IRC governs the tax treatment of IRAs.  Section 408(e)(1)(2) provides in part that:

(1) Any individual retirement account is exempt from taxation under this subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3).

(2) If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in *any transaction prohibited by section 4975 with respect to such account*, such account ceases to be an individual retirement account as of the first day of such taxable year.  For the purposes of this paragraph -

(i) the individual for whose benefit any account was established is treated as a creator of such account, and

(ii) the separate account for any individual within an individual retirement account maintained by an

18

employer or association of employees is treated as
a separate individual retirement account.

26 U.S.C.A. § 408(e)(1)(2)(2008)(emphasis added).

By enacting the Employee Retirement Income Security Act of
1974, under which § 408 was enacted, "Congress intended that funds
contributed to an individual retirement account . . . be used for
retirement purposes." *Griswold v. Comm'r*, 85 T.C. 869, 873
(1985)(citations omitted). "Accordingly, it sought to discourage
certain transactions which would circumvent this statutory
purpose." *Id.*

Pursuant to § 408(e)(1)(2), an account ceases to be a
qualified IRA as of the first day of such taxable year where an
individual engages in any § 4975 prohibited transaction. Section
4975(c) of the IRC provides in relevant part:

(1) For purposes of this section, the term "prohibited
transaction" means any direct or indirect -

(A) sale or exchange, or leasing, of any property
between a plan and a disqualified person;

(B) lending of money or other extension of credit
between a plan and a disqualified person;

(C) furnishing of goods, services, or facilities
between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a
disqualified person of the income or assets of a
plan;

(E) act by a disqualified person who is a fiduciary
whereby he deals with the income or assets of a
plan in his own interest or for his own account; or

19

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C.A. § 4975(c).

Congress' goal in enacting § 4975 "was to bar categorically a transaction that was likely to injure the pension plan." *Comm'r v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160 (1993). "The structure of [section] 4975 reflects Congress' purpose not just to tax abusive transactions, but to eliminate the 'potentialities for abuse.'" *Janpol v. Comm'r,* 101 T.C. 518, 527 (1993) (*quoting* S. REP. No. 93-383 (1974)).

Movants contend that Mr. Willis engaged in prohibited transactions under § 4975 when: 1) Mr. Willis borrowed and used funds from the Merrill Lynch IRA to acquire assignment of the Ocean One Property Mortgage from Southwest, 2) Mr. Willis borrowed funds from the Merrill Lynch IRA in order to engage in a check-swapping scheme to cover a shortfall in the Joint Brokerage Account, and 3) Ocean One borrowed funds from the Merrill Lynch IRA to acquire the Ocean One Property Mortgage from Southwest. Movants failed to present evidence to establish their allegation that the Merrill Lynch IRA loaned funds to Ocean One to purchase the assignment of the Ocean One Property Mortgage. However, as more fully discussed below, Movants did present sufficient evidence to rebut the presumption of exemption for the Merrill Lynch IRA based upon Mr. Willis engaging in certain prohibited transactions.

20

### 1. Mr. Willis is a Disqualified Person

As an initial matter, in order for an act to constitute a prohibited transaction under § 4975(c), the act must be taken with respect to or by a disqualified person.  Therefore, the Court must determine whether Mr. Willis falls within the IRC's definition of a "disqualified person."  Section 4975(e)(2) defines "disqualified person" as, *inter alia*, a fiduciary.  26 U.S.C.A. § 4975(e)(2)(A).  Section 4975(e)(3)(A) defines a "fiduciary" to include any person who:

> (A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]

26 U.S.C.A. § 4975(e)(3)(A).

Mr. Willis falls within § 4975(e)(3)(A)'s definition because he exercises discretionary authority and control both with respect to the management of the Merrill Lynch IRA, and the management and disposition of the plan's assets.  The Merrill Lynch IRA Agreement provides that "[y]our Merrill Lynch IRA is 'self-directed,' which means you are responsible for managing the investments in your account."  Furthermore, Mr. Willis transferred funds from and to the Merrill Lynch IRA without obstruction.  Consequently, Mr. Willis, as a fiduciary, is a disqualified person under § 4975(e)(2).  *Flahertys Arden Bowl, Inc. v. Comm'r*, 115 T.C. 269, 273 (2000)(stating that an individual is a fiduciary because "he directs the management of the plans' assets . . . ."); *Harris v.*

*Comm'r*, 1994 WL 12316, at \*1 (T.C. Jan. 19, 1994)("[t]he owner of
an IRA account is considered a 'disqualified person . . . .'").

### 2. Mr. Willis' Prohibited Transaction Under § 4975(c)(1)(D)

Under § 4975(c)(1)(D), any direct or indirect transfer to, or
use by or for the benefit of, a disqualified person of the income
or assets of a plan constitutes a prohibited transaction. 26
U.S.C.A. § 4975(c)(1)(D). In December 1993, Mr. Willis transferred
$700,000 from the Merrill Lynch IRA to the Sun Bank Account. Mr.
Willis then used the Merrill Lynch IRA funds to purchase the
assignment of the Ocean One Property Mortgage from Southwest. Mr.
Willis benefitted from the use of Merrill Lynch IRA funds because
the use of funds enabled Mr. Willis to later sell the Ocean One
Property for approximately $1,200,000. Thus, the Court finds that
Movants proved that Mr. Willis' conduct constituted a prohibited
transaction under § 4975(c)(1)(D). *See id.* (finding that IRA
owner's use of IRA funds to acquire a personal residence
constituted a § 4975(c)(1)(D) prohibited transaction); *Rollins v.
Comm'r*, 2004 WL 2580602 (T.C. Nov. 15, 2004)(determining a
§ 4975(c)(1)(D) prohibited transaction occurred when use of plan
assets benefitted disqualified person who caused the plan to lend
money to three entities in which he owned a minority interest).
Therefore, as a result of Mr. Willis' prohibited transaction under
§ 4975(c)(1)(D), the Merrill Lynch IRA ceased to be an exempt IRA

under § 408 of the IRC as of January 1, 1993.[5]

### 3. Mr. Willis' Prohibited Transactions Under § 4975(c)(1)(B)

Under § 4975(c)(1)(B), any direct or indirect lending of money or other extension of credit between a plan and a disqualified person constitutes a prohibited transaction. 26 U.S.C.A. § 4975(c)(1)(B). In this case, Movants presented evidence at trial that Mr. Willis borrowed funds from the Merrill Lynch IRA to purchase the assignment of the Ocean One Property Mortgage from Southwest. In December 1993, Mr. Willis withdrew $700,000 from the Merrill Lynch IRA to purchase the assignment of the Ocean One Property Mortgage. On or about February 22, 1994, Mr. Willis returned $700,000 into the Merrill Lynch IRA. At trial, Movants' attorney asked Mr. Willis, "So what you did was you borrowed $700,000 from your IRA in order to go ahead and acquire the mortgage and note from People's Southwest that was owed by [Ocean One] isn't that true?" (Trial Tr. vol. 1, 32.) Mr. Willis replied, "Yes, I withdrew the money." *Id.*

Consequently, the Court finds that Mr. Willis engaged in a prohibited transaction under § 4975(c)(1)(B) by borrowing $700,000 from the Merrill Lynch IRA to acquire the assignment of the Ocean One Property Mortgage from Southwest. *See In re Hughes*, 293 B.R. 528 (Bankr. M.D. Fla. 2003)(concluding that debtor's IRA was not exempt from the bankruptcy estate because debtor engaged in a

§ 4975(c)(1)(B) prohibited transaction by withdrawing $27,000 from his IRA to lend to a corporation for which he was the principal and subsequently returning the funds to the IRA); *Zacky v. Comm'r*, 2004 WL 1172874 (T.C. May 27, 2004)(determining that a § 4975(c)(1)(B) prohibited transaction occurred when disqualified person caused plan to loan funds to companies for which he was the president and sole shareholder).    Therefore, as a result of Mr. Willis' prohibited transaction under § 4975(c)(1)(B), the Merrill Lynch IRA ceased to be an exempt IRA under § 408 of the IRC as of January 1, 1993.

In addition, beginning in February 1997, Mr. Willis engaged in a series of transfers from and to the Merrill Lynch IRA in order to cover a shortfall in the Joint Brokerage Account. *See infra* 32-34 n.2.  At trial, Movants' counsel asked Mr. Willis, "Now, sir, isn't it true that effectively what you did is every time you went to make a rollover return, you actually borrowed from the IRA every single time?" (Trial Tr. vol. 1, 29.)  Mr. Willis replied, "I made a withdrawal from the IRA, yes." *Id.*  Movants' counsel next asked, "You borrowed the money from the IRA to put into your [Joint Brokerage Account), so you could then write another check to your IRA." *Id.*  Mr. Willis responded, "I withdrew the money, yes." *Id.* at 30.

This series of transactions had the effect of providing an extension of credit between the Merrill Lynch IRA and Mr. Willis. Thus, the Court finds that Mr. Willis also engaged in prohibited

transactions under § 4975(c)(1)(B) as a result of the various transactions made with respect to the Merrill Lynch IRA beginning in February 1997 in an attempt to cover the shortfall in the Joint Brokerage Account.  Consequently, had the Merrill Lynch IRA not already ceased to be exempt in 1993, these prohibited transactions would have rendered the Merrill Lynch IRA non-exempt as of January 1, 1997 under § 408 of the IRC.

Thus, Movants established that Mr. Willis engaged in a prohibited transaction under § 4975(c)(1)(D) when he transferred Merrill Lynch IRA funds to the Sun Bank Account and then to Southwest's escrow agent, used the funds to acquire assignment of the Ocean One Property Mortgage from Southwest, and subsequently sold the property for approximately $1,200,000.  The Movants also proved that Mr. Willis engaged in prohibited transactions under § 4975(c)(1)(B) when he borrowed Merrill Lynch IRA funds to acquire the assignment of the Ocean One Property Mortgage from Southwest, and when he authorized a series of transactions with respect to the Merrill Lynch IRA and Joint Brokerage Account to cover a shortfall in the Joint Brokerage Account.  Thus, Movants have successfully rebutted the presumption created by the IRS favorable determination by establishing that Mr. Willis engaged in prohibited transactions. Accordingly, the Merrill Lynch IRA funds do not qualify for exempt status under § 522(b)(3)(C).

**C. Rebutting the Presumption - The AmTrust IRA was Funded by Funds From the Merrill Lynch IRA.**

To rebut the presumption established under § 522(b)(4)(A), the Creditor argues that because Mr. Willis funded the AmTrust IRA ending in 8629 with non-exempt Merrill Lynch IRA funds, the AmTrust IRA ending in 8629 is disqualified from bankruptcy estate exemption under § 522(b)(3)(C).

Under § 522(b)(3)(C), retirement funds are exempt from the bankruptcy estate to the extent that the funds are exempt from taxation under § 408. Under the IRC, IRA funds rolled over from a non-qualified account retain non-qualified status. *See In re Swift*, 124 B.R. 475, 485 (Bankr. W.D. Tex. 1991)(*citing* 26 U.S.C. § 408(d)(3)(A)(ii)); *In re Banderas*, 236 B.R. 837, 840 (Bankr. M.D. Fla. 1998)(*citing Baetens v. Comm'r*, 777 F.2d 1160, 1167 (6th Cir. 1985)).

In Movants' trial brief (D.E. 546) and reply brief (D.E. 547), the Creditor incorrectly quotes *Beardsley v. Admiral Ins. Co.* for the proposition that "the commingling of a non-exempt deposit with an exempt account will automatically cause the entire account to lose its exempt status." 647 So.2d 327, 329 (3d Fla. Dist. Ct. App. 1994). The complete sentence provides: "In keeping with the principles just stated, it is <u>not</u> <u>correct</u> to say that the commingling of a non-exempt deposit with an exempt account will automatically cause the entire account to lose its exempt status." *Id.* (emphasis added). "If the evidence shows that there has been

26

a commingling of exempt and non-exempt funds, then there should be an allocation if possible." *Id.* Because the presumption of exemption arises under § 522(b)(4)(A), the burden is on the Creditor to present rebuttal evidence to establish that the funds deposited into the AmTrust IRA ending in 8629 constitute non-exempt Merrill Lynch IRA funds.

The funds in the AmTrust IRA ending in 8629 can be traced to funds from the Merrill Lynch IRA after it ceased to be exempt as a result of Mr. Willis' prohibited transactions. On or about June 6, 2002, Mr. Willis withdrew $90,000 from the Merrill Lynch IRA and deposited that sum into an account with Southern Community Bank. On or about June 12, 2002, Mr. Willis applied the $90,000 towards obtaining a Fifth Third Bank IRA ending in 5140. On or about June 20, 2005, Mr. Willis withdrew $102,714.28 from the Fifth Third Bank IRA ending in 5140, closed the account, and applied the $102,714.28 towards the opening deposit of AmTrust IRA ending in 0412. On or about October 27, 2006, Mr. Willis withdrew $108,433 from AmTrust IRA ending in 0412 and deposited the funds into a Fidelity Federal checking account. On or about December 27, 2006, Mr. Willis withdrew $108,433.60 from the Fidelity Federal checking account and applied the sum towards an opening deposit for the AmTrust IRA ending in 8629.

Based on the above, the Court finds that the Creditor successfully rebutted the § 522(b)(4)(A) presumption of exemption by proving that the funds in the AmTrust IRA constitute non-exempt

27

Merrill Lynch IRA funds and therefore, the Court concludes that the funds in the AmTrust IRA do not qualify for exempt status under § 522(b)(3)(C).

### D. Rebutting the Presumption - The Fidelity IRA was Funded by Funds From the Merrill Lynch IRA.

To rebut the presumption arising under § 522(b)(4)(A), the Creditor argues that the Fidelity IRA was funded with non-exempt Merrill Lynch IRA funds, and therefore the Fidelity IRA is disqualified from bankruptcy estate exemption under § 522(b)(3)(C). As discussed above, IRA funds rolled over from a non-qualified account retain non-qualified status. The burden is on the Creditor to present rebuttal evidence to establish that the funds deposited into the Fidelity IRA constitute non-exempt Merrill Lynch IRA funds.

The Creditor presented evidence to establish that Mr. Willis funded the Fidelity IRA with $60,000 from the Merrill Lynch IRA after the Merrill Lynch IRA ceased to be exempt as a result of Mr. Willis' prohibited transactions. Specifically, on or about August 16, 2002, Mr. Willis transferred $50,000 from the Merrill Lynch IRA to the Fidelity IRA. Also, on or about November 8, 2002, Mr. Willis transferred $10,000 from the Merrill Lynch IRA to the Fidelity IRA.

Therefore, the Court finds that the Creditor successfully rebutted the § 522(b)(4)(A) presumption of exemption by proving

28

that $60,000 in the Fidelity IRA constitute non-exempt Merrill Lynch IRA funds, and concludes that those Fidelity IRA funds do not qualify for exempt status under § 522(b)(3)(C). As for the remaining balance in the Fidelity IRA, the Creditor failed to present rebuttal evidence to establish that those funds do not qualify for exemption under § 522(b)(3)(C).[6]

## II.   Transfers and Disbursements from the Merrill Lynch IRA

The IRC and the Bankruptcy Code distinguish between an exempt account, and an exempt transfer or distribution from an account. *See In re Patrick*, 2008 WL 5521181, at * 3. Having determined that the Merrill Lynch IRA funds are not exempt from the bankruptcy estate, the Court nevertheless addresses Movants' two additional arguments that certain Merrill Lynch IRA transfers and disbursements are not exempt.

### A.   Transfers

Under § 522(b)(4)(C),[7] "a direct transfer of retirement funds between tax exempt accounts does not affect the exemption under subsection (b)(3)(C) and (d)(12)." *In re Patrick*, 2008 WL 5521181, at * 4. Consequently, "[a]n individual will be treated as receiving a distribution if a check is made payable and received by the individual, as opposed to the funds being transferred directly from trustee of one IRA to trustee of another IRA." *Id.* (*citing*

*Martin v. Comm'r.*, 1992 WL 122468 (T.C. June 8, 1992), *aff'd*, 987 F.2d 770 (5th Cir. 1993)).

Movants argue that Mr. Willis' Merrill Lynch IRA transfers are not exempt because the transfers were transferred directly to Mr. Willis, rather than to an exempt account. Movants are correct in contending that Mr. Willis' Merrill Lynch IRA transfers were not received by an exempt account,[8] however Movants fail to note that § 522(b)(4)(C) also requires a "direct transfer of retirement funds from 1 fund or account that is exempt from taxation." 11 U.S.C. § 522(b)(4)(C). Because the Merrill Lynch IRA ceased to be exempt under § 408 of the IRC as of January 1, 1993, the transfers of funds were not from an account exempt from taxation. For this reason, § 522(b)(4)(C) is inapplicable to the disputed Merrill Lynch IRA transfers.

### B. Disbursements

Pursuant to § 522(b)(4)(D), distributions are exempt as long as they are disbursed from an account exempt from taxation and, within sixty days, rolled over into an account exempt from taxation.[9] *See In re Patrick,* 2008 WL 5521181, at *5; *In re Crum*, 2009 WL 426098, at *4 (Bankr. N.D. Tex. Feb. 20, 2009). Additionally, under § 408(d)(3)(B) of the IRC, "tax exempt rollovers may only occur once per year from the time of receipt of the distribution and any additional rollovers made during that year

30

are taxable." *In re Patrick*, 2008 WL 5521181, at *4. This once per year rule is "incorporated by the phrase 'to the extent allowed by law,' which indicates intent to include any other requirements and limitations that may exist in the IRC." *Id.* at *6 (footnote omitted).

Movants argue that Mr. Willis' Merrill Lynch IRA distributions are not exempt from the bankruptcy estate because: 1) the funds were not rolled over into the Merrill Lynch IRA within sixty days, and 2) Mr. Willis violated the one rollover per year rule. While Movants are correct to the extent they assert that Mr. Willis' disbursements must be rolled over within sixty days to qualify for exempt status under § 522(b)(4)(D), and that Mr. Willis would be permitted only one rollover per year, § 522(b)(4)(D) applies only where the funds are distributed "from a fund or account that is exempt from taxation" and "deposited in such a fund or account." 11 U.S.C. § 522(b)(4)(D). Because the Merrill Lynch IRA ceased to qualify as exempt as of January 1, 1993, the funds could neither be distributed from nor deposited to an account exempt from taxation. Thus, § 522(b)(4)(D) is inapplicable to Mr. Willis' Merrill Lynch IRA disbursements. *See Griswold*, 85 T.C. at 874 (concluding that sixty-day rollover rule had no application to taxpayer's annuity contract because it ceased to qualify as an individual retirement annuity when taxpayer borrowed against the annuity contract).

31

**CONCLUSION**

For the reasons stated above, the Court determines that the following funds are not exempt from the bankruptcy estate under § 522(b)(3)(C): 1) all funds in the Merrill Lynch IRA, 2) all funds in the AmTrust IRA, and 3) $60,000 in the Fidelity IRA.


**ORDER**

The Court, having considered the evidence presented at trial, the testimony of the witnesses, the argument of counsel, the applicable law, the submissions of the parties, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1.    The Movants' objection to Mr. Willis' claimed exemption in the full value of the Merrill Lynch IRA is **SUSTAINED.**

2.    The Creditor's objection to Mr. Willis' claimed exemption in the full value of the AmTrust IRA ending in 8629 is **SUSTAINED.**

3.    The Creditor's objection to Mr. Willis' claimed exemption in the full value of the Fidelity IRA is **SUSTAINED** as to $60,000 and **OVERRULED** as to any remaining amount.


1. Check-swapping generally involves a circular financing scheme, involving self-cancelling transactions. *See Transpac Drilling Venture v. United States*, 32 Fed. Cl. 810 (1995); Karen Nelson Moore, *The Sham Transaction Doctrine: An Outmoded and Unnecessary Approach to Combating Tax Avoidance*, 41 FLA. L. REV. 659 (1989).

2. Mr. Willis engaged in the following transactions:

    A.  On or about February 7, 1997, Mr. Willis withdrew $230,000 from his Merrill Lynch IRA, and deposited this sum into the Joint

Brokerage Account to cover the initial shortfall.  (Trial Tr. vol. 1, 24; Movs.' Ex. 11.)

B.  In an attempt to return the $230,000 within sixty days, on or about April 11, 1997, Mr. Willis withdrew $240,000 from the Merrill Lynch IRA (Movs.' Ex. 12), and deposited the funds in the Joint Brokerage Account.  (Movs.' Ex. 11.)  On or about April 11, 1997, Mr. Willis withdrew $230,000 from the Joint Brokerage Account (Movs.' Ex. 11), and deposited the sum in the Merrill Lynch IRA. (Movs.' Ex. 12; Willis' Ex. J.)

C.  In an attempt to return the $240,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about June 6, 1997, Mr. Willis withdrew $180,000 from the Merrill Lynch IRA (Movs.' Ex. 13), and deposited the funds in the Joint Brokerage Account.  (Movs.' Ex. 12.)  On or about June 6, 1997, Mr. Willis withdrew $240,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA.  (Willis' Ex. K.)

D.  In an attempt to return the $180,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about August 8, 1997, Mr. Willis withdrew $252,000 from the Merrill Lynch IRA, and deposited the sum into the Joint Brokerage Account.  (Movs.' Ex. 14.)  On or about August 8, 1997, Mr. Willis withdrew $180,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA. (Trial Tr. vol. 2, 40.)

E.  In an attempt to return the $252,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about October 8, 1997, Mr. Willis withdrew $270,000 from the Merrill Lynch IRA, and deposited the sum into the Joint Brokerage Account.  (Movs.' Ex. 15; Trial Tr. vol. 1, 27.)  On or about October 8, 1997, Mr. Willis withdrew $252,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA.  (Movs.' Ex. 15; Trial Tr. vol. 2, 40.)

F.  In an attempt to return the $270,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about December 8, 1997, Mr. Willis withdrew $282,000 from the Merrill Lynch IRA, and deposited the sum into the Joint Brokerage Account.  (Movs.' Ex. 16.)  On or about December 8, 1997, Mr. Willis withdrew $270,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA. (Movs.' Ex. 15; Willis' Ex. O.)

G.  In an attempt to return the $282,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about February 6, 1998, Mr. Willis withdrew $285,000 from the Merrill Lynch IRA, and deposited the sum into the Joint Brokerage Account.  (Movs.' Ex. 17.)  On or about February 6, 1998, Mr. Willis withdrew $282,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA. (Movs.' Ex. 16.)

H.  In an attempt to return the $285,000 withdrawal from the Merrill Lynch IRA within sixty days, on or about April 8, 1998, Mr. Willis withdrew $283,000 from the Merrill Lynch IRA, and deposited the sum into the Joint Brokerage Account.  (Movs.' Ex. 18.)  On or about April 8, 1998, Mr. Willis withdrew $285,000 from the Joint Brokerage Account, and deposited the sum into the Merrill Lynch IRA.  (Movs.' Ex. 17.)

I.  On or about June 4, 1998, Mr. Willis deposited $96,500 into the Merrill Lynch IRA.  (Movs.' Ex. 24; Trial Tr. vol. 1, 30.)

The above listed transactions are graphically illustrated in the following chart:

<u>TRANSFERS BETWEEN THE MERRILL LYNCH IRA AND THE JOINT BROKERAGE ACCOUNT FROM FEBRUARY 1997 - JUNE 1998</u>



\* Dates are approximations

3. The Movants state in their reply brief "[t]he Internal Revenue Service issued a letter qualifying the Merrill Lynch IRA Custodial Agreement in accordance with U.S.C. § 408." (D.E. 547.)

4. The following cases cited by Mr. Willis are not on point.  *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 462 (6th Cir. 2009)(holding that a bankruptcy court lacks discretion to confirm a Chapter 13 plan not in compliance with § 1325(a) requirements); *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148, 1160 (7th Cir. 2008)(concluding that § 707(b)(2)(A)(ii)(I) should not be interpreted as incorporating highly discretionary procedures under the Internal Revenue Manual when applying the means test); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658 (8th Cir. 2008)("In enacting BAPCPA, Congress reduced the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses."); *Rivera v. Miranda*, 376 B.R. 382, 385-86 (D.P.R. 2007)(concluding that courts have no discretion to avoid the automatic dismissal consequence of non-compliance with the § 521(i) 45-day deadline), *rev'd*, 557 F.3d 8, 13 (1st Cir. 2009)("[W]e

believe that it is possible to give effect to all of section 521, preserving the bankruptcy court's discretion to forgive compliance with disclosure requirements after the fact while at the same time preserving the authentic value of automatic dismissal.").


5. Unless the taxpayer elected to use a fiscal year or an annual accounting period, the calendar year is generally used to determine the first day of the taxable year.  *See* 26 U.S.C. § 441.  Because no evidence shows that Mr. Willis elected to use a fiscal year or an annual accounting period, the Court presumes the calendar year applies.


6. Had the Creditor agreed that the Fidelity Federal IRA account 9754 was the same Fidelity IRA in which Mr. Willis claimed an exemption, the Court could have addressed whether the funds transferred into the Fidelity IRA from the AmTrust IRA ending in 0440 were either: 1) non-exempt Merrill Lynch IRA funds, or 2) funds from a non-IRA SunTrust Bank account subject to the contribution cap under § 408(a)(1) of the IRC.  However, even in this situation, the Creditor may have failed to sustain its burden because the record contains no evidence to substantiate the claim that the AmTrust IRA ending in 0440 was funded by the Merrill Lynch IRA, or a non-IRA SunTrust Bank account.

    The Court agrees with Mr. Willis that the Creditor failed to carry its burden to establish that all funds in the Fidelity IRA are not exempt from the estate. The Court, however, bases its conclusion on the Creditor's failure to meet its burden under the § 522(b)(4)(A) favorable determination analysis.  Mr. Willis, on the other hand, argues that the Creditor, as the party objecting to the claimed exemption failed to meet its burden of proof that Mr. Willis is not entitled to the claimed exemption. *See Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)("Once an exemption has been claimed, it is the objecting party's burden . . . to prove that the exemption is not properly claimed"(*citing* Fed. R. Bankr. P. 4003(c))).  The Court notes that while in this case, the Rule 4003(c) burden-shifting analysis comports with the § 522(b)(4)(A) favorable determination analysis, it would be at odds with the § 522(b)(4)(B) no favorable determination analysis, which placed the burden on the debtor to show substantial compliance with IRC provisions or lack of responsibility for failure to be in substantial compliance.  Resolution of this issue, however, is not required for full adjudication of matters before the Court.  Therefore, the Court leaves the issue for another day.


7. Section 522(b)(4)(C) provides that:

> A direct transfer of retirement funds from 1 fund or account *that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986*, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such direct transfer.

11 U.S.C. § 522(b)(4)(C)(2005)(emphasis added).

8. As indicated in the findings of fact, Mr. Willis authorized various non-qualified transfers of funds from the Merrill Lynch IRA to either the Sun Trust Account or Joint Brokerage Account. *See supra* 32-34 n.2.


9. Section 522(b)(4)(D) provides that:

   (i)   Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.

   (ii)  A distribution described in this clause is an amount that –

        (I)   has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and

        (II)  to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

11 U.S.C. § 522(b)(4)(D)(2007).


###

Copies furnished to:

Kevin C. Gleason, Esq
4121 N 31 Ave
Hollywood, FL 33021

Heather L. Ries, Esq.
222 Lakeview Ave # 1330
West Palm Beach, FL 33401

Robert P. Charbonneau, Esq.
1111 Brickell Ave #2915
Miami, FL 33131

Heather L. Ries is directed to serve a copy of this order on all unlisted parties and to file a certificate of service with the Court.